**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.* | Case No. 1:18-cv-00112-JEB |
| *Plaintiffs*, | |
| v. | |
| WILBUR ROSS, *et al.*, | |
| *Defendants*, | Case No. 1:18-cv-00283-JEB |
| --- | |
| CONSERVATION LAW FOUNDATION, | |
| *Plaintiff*, | |
| v. | |
| WILBUR ROSS, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' JOINT MOTION ON THE SCOPE OF REVIEW**

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

STATUTORY BACKGROUND ........................................................................................ 3

PLAINTIFFS' CLAIMS AT ISSUE ................................................................................. 5

ARGUMENT ...................................................................................................................... 7

    I.    PLAINTIFFS ARE ENTITLED TO DISCOVERY ON THEIR SECOND
    AND THIRD CLAIMS BECAUSE THE APA'S SCOPE OF REVIEW
    DOES NOT GOVERN ESA CITIZEN SUIT CLAIMS ........................................ 7

        A.    Plaintiffs Are Entitled To Discovery On Their ESA Section 9
        Claim to Meet Their Evidentiary Burden to Establish Defendants
        Are In Ongoing Violation Of The Prohibition Against
        Unauthorized Take And That Plaintiffs Are Entitled To Injunctive
        Relief ............................................................................................................ 10

                1.    Because They Are Forward-Looking, ESA Section 9
                Claims Typically Involve Discovery ............................................... 11

                2.    Plaintiffs Are Entitled to Discovery to Meet Their Burden
                to Establish Defendants' Liability and Plaintiffs' Right to
                Injunctive Relief by a Preponderance of the Evidence ................. 13

        B.    Because the APA Does Not Govern the Scope of Review for
        Plaintiffs' Substantive ESA Section 7 Claim, Plaintiffs Are
        Entitled To Discovery ............................................................................... 15

    II.    FAIRNESS AND DUE PROCESS FAVOR ALLOWING PLAINTIFFS
    TO DISCOVER RELEVANT EVIDENCE ......................................................... 17

    III.    INTERVENORS' PARTICIPATION IN DISCOVERY SHOULD BE
    LIMITED ............................................................................................................... 18

CONCLUSION ................................................................................................................. 21

## TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Airlie Found. v. IRS*,
　283 F. Supp. 2d 58 (D.D.C. 2003) .........................................................7

*Am. Forest Res. Council v. Ashe*,
　946 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................16

*\*Animal Welfare Inst. v. Beech Ridge Energy LLC*,
　675 F. Supp. 2d 540 (D. Md. 2009) ..........................................12, 13, 14

*\*Beauregard, Inc. v. Sword Servs., LLC*,
　107 F.3d 351 (5th Cir. 1997) ..............................................................18

*\*Bennett v. Spear*,
　520 U.S. 154 (1997).......................................................................5, 7, 8

*British Airways Bd. v. Port Auth. of New York and New Jersey*,
　71 F.R.D. 583 (S.D.N.Y. 1976) ...........................................................20

*Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson*,
　685 F.2d 678 (D.C. Cir. 1982) .............................................................15

*Chem. Weapons Working Group v. U.S. Dept. of Def.*,
　2007 WL 7713916 (D.D.C. Mar. 8, 2007).............................................9

*Citizens to Preserve Overton Park, Inc., v. Volpe*,
　401 U.S. 402 (1971).............................................................................18

*City of Tacoma, Wash. v. FERC*,
　460 F.3d 53 (D.C. Cir. 2006).................................................................4

*Conservation Cong. v. Finley*,
　No. C 11–04752 SC LB, 2012 WL 1564946 (N.D. Cal. May 2, 2012) ...................7

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*,
　789 F.3d 1075 (9th Cir. 2015) ....................................................8, 15, 16

*Ctr. for Biological Diversity v. Brennan*,
　571 F. Supp. 2d 1105 (N.D. Cal. 2007) ...............................................19

*\*Defenders of Wildlife v. Bernal*,
　204 F.3d 920 (9th Cir. 1999) .........................................................12, 14

\* Authorities upon which we chiefly rely are marked with an asterisk

*Defenders of Wildlife v. EPA*,
420 F.3d 946 (9th Cir. 2005) .................................................................................4

*\*Defenders. of Wildlife v. U.S. Dept. of Navy*,
733 F.3d 1106 (11th Cir. 2013) ............................................................................16

*Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the
Performing Arts, Inc. v. United States*,
904 F. Supp. 2d 95 (D.D.C. 2012) ........................................................................7

*Envtl. Def. Fund, Inc. v. Costle*,
657 F.2d 275 (D.C. Cir. 1981) ...............................................................................7

*Envtl. Prot. Info. Ctr. v. Timber Co.*,
255 F.3d 1073 (9th Cir. 2001) ...............................................................................8

*\*Forest Conservation Council v. Rosboro Lumber Co.*,
50 F.3d 781 (9th Cir. 1995) .........................................................................8, 10, 11

*Franklin Sav. Ass'n v. Office of Thrift Supervision*,
934 F.2d 1127 (10th Cir. 1991) .............................................................................7

*Fund for Animals v. Norton*,
322 F.3d 728 (D.C. Cir. 2003) .............................................................................19

*Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*,
378 F.3d 1059 (9th Cir.) ........................................................................................3

*Hawksbill Sea Turtle v. FEMA*,
126 F.3d 461 (3d Cir. 1997)..................................................................................12

*Hill v. Coggins*,
867 F.3d 499 (4th Cir. 2017) ................................................................................12

*Hill v. Coggins*,
No.2:13-CV-00047-MR-DLH, 2016 WL 1251190 (W.D.N.C. Mar. 30, 2016) ....................14

*Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*,
230 F. Supp. 3d 1106 (N.D. Cal. 2017) ...............................................................21

*Humane Soc'y of the U.S. v. Kienzle*,
No. 2:16-cv-0724-WJ/SMV, 2017 WL 5151305 .................................................13

*Jack in the Box Inc. v. Mehta*,
No. 13-04444-EJD, 2014 U.S. Dist. LEXIS 50575 (N.D. Cal. Apr. 9, 2014).........................20

*Kuehl v. Sellner*,
161 F. Supp. 3d 678 (N.D. Iowa 2016)..................................................................12

*Loggerhead Turtle v. County Council of Volusia County, Fla.*,
  896 F. Supp. 1170 (M.D. Fla. 1995) ...................................................................... 13

*Marbled Murrelet v. Babbitt*,
  83 F.3d 1060 (9th Cir. 1996) .................................................................................. 13

*Marbled Murrelet v. Pac. Lumber Co.*,
  880 F. Supp. 1343 (N.D. Cal. 1995) ....................................................................... 12

*Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dept. of Veterans Affairs*,
  842 F. Supp. 2d 127 (D.D.C. 2012) .......................................................................... 9

*Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*,
  205 F.R.D. 1 (D.D.C. 2000) ................................................................................... 19

*Nw. Coal. For Alternatives to Pesticides v. E.P.A*,
  920 F. Supp. 2d 1168 (W.D. WA 2013) .................................................................. 17

*\*Or. Nat. Desert Ass'n v. Kimbell*,
  593 F. Supp. 2d 1217 (D. Or. 2009) ............................................................... 8, 11, 16

*Palila v. Haw. Dep't of Land & Natural Res.*,
  471 F. Supp. 985 (D. Haw. 1979), ........................................................................ 12

*Palila v. Haw. Dep't of Land & Natural Res.*,
  649 F. Supp. 1070 (D. Haw. 1986) ......................................................................... 13

*Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*,
  210 F. Supp. 3d 796 (E.D.N.C. 2016) ...................................................................... 9

*Saginaw Chippewa Indian Tribe v. Granholm*,
  No. 05-102960BC, 2007 U.S. Dist. LEXIS 84853 (E.D. Mich. Nov. 16, 2007) ............... 20

*San Carlos Apache Tribe v. United State*s,
  272 F. Supp. 2d 860 (D. Ariz. 2003) ...................................................................... 13

*Sierra Club v. Yuetter*,
  926 F.2d 429 (5th Cir. 1991) ................................................................................. 12

*\*Stout v. U.S. Forest Serv.*,
  869 F. Supp.2d 1271 (D. Or. 2012) ......................................................................... 11

*Strahan v. Coxe*,
  127 F.3d 155 (1st Cir. 1997) ................................................................................. 10

*Strahan v. Roughead*,
  910 F. Supp. 2d 358 (D. Mass. 2012) ..................................................................... 13

*Stringfellow v. Concerned Neighbors in Action*,
  480 U.S. 370 (1987)........................................................................................................19

*United States v. City of Dayton*,
  No. 08-00348, 2009 U.S. Dist. LEXIS 37213 (S.D. Ohio Apr. 14, 2009) ..............................19

*United States v. Duke Energy Corp.*,
  171 F. Supp. 2d 560 (M.D.N.C. 2001) ...................................................................................19

*United States v. Town of Plymouth, Massachusetts*,
  6 F. Supp. 2d 81 (D. Mass. 1998) ...........................................................................................13

*W. Watersheds Project v. Pool*,
  942 F. Supp. 2d 93 (D.D.C. 2013) .............................................................................................9

*Wash. Toxics Coal. v. Envtl. Prot. Agency*,
  413 F.3d 1024 ........................................................................................................................8, 16

*Wild Fish Conservancy v. Nat'l Park Serv.*,
  No. C12-5109 BHS, 2012 WL 5384896 (W.D. Wash. 2012) ................................................17

*Wild Fish Conservancy v. Salazar*,
  628 F.3d 513 (9th Cir. 2010) ...............................................................................................4, 16

*WildEarth Guardians v. Salazar*,
  272 F.R.D. 4 (D.D.C. 2010).......................................................................................................18

*Wishtoyo Foundation v. United Water Conservation Dist.*,
  No. 16-3869-DOC, 2017 U.S. Dist. LEXIS 153184 (C.D. Cal. Sept. 7, 2017).......................20

**Statutes**

5 U.S.C. § 701-706(1)...................................................................................................................1

5 U.S.C. § 706(1) ..........................................................................................................................9

5 U.S.C. § 706(2) .......................................................................................................................5, 6

5 U.S.C. § 706(2)(A).....................................................................................................................14

16 U.S.C. § 1361-1389 ..................................................................................................................1

16 U.S.C. § 1531-1544 ..................................................................................................................1

16 U.S.C. § 1531(b) .......................................................................................................................3

16 U.S.C. § 1532(3) .......................................................................................................................3

16 U.S.C. § 1532(13) .....................................................................................................................5

16 U.S.C. § 1532(19) ...................................................................................................................10

16 U.S.C. § 1536(a)(2) .....................................................................................................3, 4, 5, 15

16 U.S.C. § 1536(b)(3)(A) ...........................................................................................................4

16 U.S.C. § 1536(b)(4) .................................................................................................................5

16 U.S.C. § 1536(o)(2) .................................................................................................................5

16 U.S.C. § 1538 ......................................................................................................................6, 10

16 U.S.C. § 1538(a)(1) ............................................................................................................5, 10

16 U.S.C. § 1539(a)(1)(B) ..........................................................................................................10

16 U.S.C. § 1540(g) ......................................................................................................................8

16 U.S.C. § 1540(g)(1) .................................................................................................................5

16 U.S.C. § 1540(g)(1)(A) ...................................................................................................5, 7, 16

16 U.S.C. § 1540(g)(1)(C) ..........................................................................................................16

**Regulations**

50 C.F.R. § 402.02 .....................................................................................................................3, 4

50 C.F.R. § 402.14(a) ...................................................................................................................4

50 C.F.R. § 402.14(g) ...................................................................................................................4

50 C.F.R. § 402.14(h) ...................................................................................................................4

50 C.F.R. § 402.14(i) ....................................................................................................................5

50 C.F.R. §§ 402.14(i)(4) ...........................................................................................................16

50 C.F.R. § 402.15(a) ...................................................................................................................4

50 C.F.R. § 402.16(a) .................................................................................................................16

**Federal Register Notices**

62 Fed. Reg. 33 (Jan. 2, 1997) ...................................................................................................10

82 Fed. Reg. 3655 (Jan. 12, 2017) ...............................................................................................6

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ....................................................................................................9

Pursuant to the Initial Scheduling Conference and this Court's May 25, 2018 Scheduling

Order, Plaintiffs in consolidated Case Nos. 18-00112 and 18-00283 hereby submit this Joint

Motion on the Scope of Review. The focus of this motion is on the scope of review, and whether

Plaintiffs have the right to discovery on their Second and Third Claims. For the reasons

discussed below, the Court should grant Plaintiffs' proposed order providing Plaintiffs with

discovery on these claims.

## INTRODUCTION

These consolidated cases arise from Defendants' failure to comply with their duties under

the Endangered Species Act, 16 U.S.C. §§ 1531–1544 ("ESA"), Marine Mammal Protection Act,

16 U.S.C. §§ 1361–1389 ("MMPA"), and Administrative Procedure Act, 5 U.S.C. §§ 701–706

("APA"), in authorizing and managing the American lobster fishery given ongoing harm to

critically endangered North Atlantic right whales. While many environmental cases challenging

federal agency actions are brought under the APA, only two of Plaintiffs' four claims involve

APA review of specific final agency decisions.

Plaintiffs' other two claims relate to mandatory substantive obligations under the ESA

that Defendants are violating in the course of authorizing and managing the lobster fishery.

Specifically, Plaintiffs' second claim alleges that Defendants are violating their ongoing duty

under ESA Section 7 to ensure against jeopardy of endangered right whales, while Plaintiffs'

third claim alleges that Defendants' ongoing authorization and management of the lobster fishery

is resulting in violations of the ESA Section 9 prohibition against unauthorized "take" of

endangered right whales. Both claims arise directly under the citizen suit provision of the ESA

and not under the APA. Plaintiffs' claims for relief seek to compel Defendants to comply with

their substantive duties to avoid jeopardy and refrain from committing or improperly causing

others to commit unauthorized incidental take. Plaintiffs seek declaratory and injunctive relief,

1

including an order from the Court directing Defendants to implement mitigation measures to protect right whales from deadly entanglements in lobster gear. Numerous courts have found that such ESA citizen suit claims are not governed by the APA's restriction of the scope of review to the administrative record for cases arising under the APA challenging discrete final agency actions. Rather, courts have determined that the plaintiffs in ESA citizen suit cases are obligated to produce evidence to prove their claims, and that they are accordingly entitled to discovery.

Here, allowing Defendants to construct a "record" for Plaintiffs' ESA citizen suit claims would inappropriately permit Defendants to determine what evidence they deem relevant to these non-APA claims challenging their ongoing violations of law, turning the normal course of judicial procedure on its head. There is no reason to justify limiting the relevant evidence to a "record" created by Defendants where these claims do not challenge a specific final agency action, where judicial review arises directly under the ESA and not the APA, and where Plaintiffs bear the burden of proving that Defendants are violating their substantive ESA obligations. Fairness and due process dictate that Plaintiffs are entitled to prove their case with any relevant evidence they can put before this Court.[1]

---

[1]     Defendants' position on the scope of the administrative record is internally inconsistent, illogical, and outside the bounds of accepted principles of APA or ESA citizen suit review. See ECF No. 23 (Joint Meet and Confer). On page 7, Defendants appear to assert the record should end with documents relied upon for the 2014 Biological Opinion. However, on page 14, Defendants assert the record should include documents related to the forthcoming October 2018 Atlantic Large Whale Take Reduction Team meeting, because the team's efforts "will guide NMFS in the types of management measures to address fisheries impacts on North Atlantic right whales, and such measures may then be considered part of the agency action to be analyzed as part of the agency's reinitiated Section 7 consultation" and because "[t]he work of the TRT will assist the Court in understanding where the agency's Section 7 process and fishery management is heading." Until and unless Defendants actually take final agency action based on the TRT meeting results, however, there will be no APA-reviewable action with an administrative record. Moreover, Defendants ignore that the MMPA claim administrative record is that pertaining to Defendants' decision to authorize the American lobster fishery under the MMPA as reflected in

## STATUTORY BACKGROUND[2]

The ESA is intended to serve as a safety net for species at risk of extinction and to facilitate the recovery of imperiled species. *See Gifford Pinchot Task Force v. U.S. Fish & Wildlife Serv.*, 378 F.3d 1059, 1070 (9th Cir.), *amended on other grounds*, 387 F.3d 968 (9th Cir. 2004) ("[t]he ESA was enacted not merely to forestall the extinction of a species (i.e., promote a species' survival), but to allow a species to recover to the point where it may be delisted"). Indeed, Congress enacted the ESA "to provide a program for the conservation of … endangered species" and "to provide a means whereby the ecosystems upon which [such] … species depend may be conserved." 16 U.S.C. § 1531(b). "Conservation" and "conserve" mean "to use and the use of all methods and procedures which are necessary to bring an endangered species … to the point at which the measures provided pursuant to [the ESA] are no longer necessary"—i.e., to recover such species from imperiled status. 16 U.S.C. § 1532(3); *see also* 50 C.F.R. § 402.02 (defining recovery).

As part of the ESA's mandate both to provide this safety net and promote recovery, ESA Section 7(a)(2) prohibits federal agencies from taking actions that are "likely to jeopardize the continued existence of any endangered species." 16 U.S.C. § 1536(a)(2). Jeopardy results when it is reasonable to expect that the action would "reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02.

---

the publication of the January 2017 List of Fisheries, not the record for the July 2014 Biological Opinion.

[2]     Because Plaintiffs' second and third claims arise under the ESA citizen suit provision and challenge Defendants' ongoing violations of Sections 7 and 9 of that statute, it is not necessary for the purposes of this motion to address the MMPA.

To meet this substantive standard, the ESA requires an action agency to consult with and obtain the opinion of the appropriate wildlife consulting agency (either the U.S. Fish and Wildlife Service ("FWS"), which has jurisdiction over most terrestrial species, or the National Marine Fisheries Service ("NMFS"), which has jurisdiction over most marine species) before it takes any discretionary action that may affect a listed species. *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a). At the conclusion of the consultation process, the wildlife agency provides the action agency with a biological opinion detailing whether the action is likely to cause jeopardy, and, if so, identifying reasonable and prudent alternatives that avoid this violation. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(g), (h). NMFS may be both the action agency and the wildlife agency, with separate and distinct legal obligations for each role. Where its discretionary agency actions taken pursuant to authorities such as the MMPA may affect listed species, it must engage in intra-agency consultation.

An action agency may not delegate its ESA obligation to ensure against jeopardy to FWS or NMFS. As a result, even when the action agency satisfies its *procedural* responsibilities via formal consultation, it may not solely rely on a biological opinion to establish conclusively its compliance with its *substantive* duty to avoid jeopardy. *See* 50 C.F.R. § 402.15(a). Courts have rejected an action agency's reliance on a biological opinion where the biological opinion itself was legally flawed. *City of Tacoma, Wash. v. FERC*, 460 F.3d 53, 75–76 (D.C. Cir. 2006); *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 532 (9th Cir. 2010). Where a biological opinion's flaws are legal, "[d]iscerning them requires no technical or scientific expertise," and the action agency cannot rely on the biological opinion to satisfy its duty to ensure against jeopardy. *Defenders of Wildlife v. EPA*, 420 F.3d 946, 976 (9th Cir. 2005), *rev'd on other grounds*; *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).

Section 9 of the ESA prohibits any person, including federal agencies, from "taking" individual members of an endangered species of fish or wildlife. 16 U.S.C. § 1532(13) (defining person); *id*. § 1538(a)(1). Notwithstanding this prohibition, following consultation, the wildlife agency may permit a federal agency action that may take individual members of endangered species, provided the action does not jeopardize the species. *Id.* § 1536(b)(4), (o)(2); 50 C.F.R. § 402.14(i). Typically, this occurs through the issuance of an incidental take statement attached to a biological opinion. *See Bennett v. Spear,* 520 U.S. 154, 170 (1997) (an "Incidental Take Statement constitutes a permit authorizing the agency action to 'take' the endangered or threatened species").

Section 10(g)(1)(A) in the ESA's citizen suit provision permits any person to commence a civil suit "to enjoin any person, including the United States and any other governmental instrumentality or agency. . . who is alleged to be in violation of any provision of this Act or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). "The district courts shall have jurisdiction . . . to enforce any such provision or regulation[.]" *Id.* § 1540(g)(1).

## PLAINTIFFS' CLAIMS AT ISSUE

Plaintiffs' Complaints each assert four claims for relief. First, Plaintiffs allege that Defendants' Biological Opinion on their continued authorization and management of the American lobster fishery, issued on July 31, 2014, is arbitrary, capricious, and not in accordance with the ESA, in violation of the APA, 5 U.S.C. § 706(2). *Center for Biological Diversity v. Ross*, Case No. 18-00112, ECF No. 1 ("CBD Compl."), ¶¶ 117–125; *Conservation Law Foundation v. Ross*, Case No. 18-00283, ECF No. 1 ("CLF Compl."), ¶¶ 118–126. Second, Plaintiffs allege that Defendants' authorization and management of this fishery violates Defendants' substantive duty under Section 7 of the ESA, 16 U.S.C. § 1536(a)(2), to ensure their actions do not jeopardize the continued existence of right whales. CBD Compl. ¶¶ 126–129; CLF

Compl. ¶¶ 128–132. Third, Plaintiffs allege that Defendants' authorization and management of this fishery is causing unauthorized take of right whales, in violation of Section 9 of the ESA, 16 U.S.C. § 1538. CBD Compl. ¶¶ 130–134; CLF Compl. ¶¶ 134–139. Fourth, Plaintiffs allege that Defendants' authorization and management of the lobster fishery, including through issuance of the 2017 List of Fisheries under the MMPA, that results in unauthorized levels of take of right whales is arbitrary, capricious, and not in accordance with the MMPA, in violation of the APA, 5 U.S.C. § 706(2). CBD Compl. ¶¶ 135–139; CLF Compl. ¶¶ 140–148. *See* 2017 List of Authorized Fisheries under the MMPA, 82 Fed. Reg. 3655 (Jan. 12, 2017).

Although Plaintiffs' first and fourth claims are brought pursuant to the APA, and thus that statute's scope and standard of review apply to this Court's review of the July 2014 Biological Opinion and January 2017 List of Fisheries decisions, Plaintiffs are nevertheless entitled to discovery on their second and third claims, brought pursuant to the ESA citizen suit provision. For their citizen suit claims, Plaintiffs seek declaratory and injunctive relief requiring Defendants, *inter alia*, to implement mitigation measures to protect critically endangered North Atlantic right whales from suffering further painful and deadly entanglements in lobster gear. CBD Compl. at p. 32 (¶¶ 5, 6); CLF Compl. at p. 39 (¶¶ G, H).

Plaintiffs' ESA citizen suit claims challenge Defendants' ongoing ESA violations and seek to enjoin Defendants from continuing to violate the law. Because no final agency action is at issue in Plaintiffs' second and third claims, there is not—and cannot be— an administrative record for either claim. Simply put, there is no administrative record for Defendants' ongoing failures to ensure against ongoing jeopardy to North Atlantic right whales and avoid unauthorized takes in the lobster fishery. Rather, these claims fall squarely into that category of ESA citizen suit cases for which courts have regularly found discovery to be appropriate.

Defendants' assertion that they are entitled to construct a "record" from whole cloth and thereby avoid discovery is prejudicial to Plaintiffs' right to prosecute this action and an attempt to thwart this Court's review.

## ARGUMENT

I.   **PLAINTIFFS ARE ENTITLED TO DISCOVERY ON THEIR SECOND AND THIRD CLAIMS BECAUSE THE APA'S SCOPE OF REVIEW DOES NOT GOVERN ESA CITIZEN SUIT CLAIMS**

It is well established that the scope of judicial review of Plaintiffs' APA claims challenging specific agency decisions is limited to the administrative record.[3] *See Bennett*, 520 U.S. at 178–79 (biological opinion is final agency action reviewable under the APA); *Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 284 (D.C. Cir. 1981) ("[J]udicial review of agency action is normally confined to the full administrative record before the agency at the time the decision was made."). That undisputed principle is irrelevant to the present motion.

It is equally well established that the ESA provides a private right of action to enjoin ongoing violations of the statute, and that substantive ESA claims against action agencies are reviewed under the citizen suit provision. *See Bennett*, 520 U.S. at 173 ("§ 1540(g)(1)(A) is a means by which private parties may enforce the substantive provisions of the ESA against

---

[3]   In addition to providing a source of jurisdiction, the APA establishes both the standard of review and the scope of review for such actions. Although they are often conflated, these are two distinct concepts. "A standard of review, which dictates the applicable burden of proof plaintiffs must meet, is distinct from a scope of review, which describes the evidence a court may consider during judicial review." *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1136 (10th Cir. 1991); *see also Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 904 F. Supp. 2d 95, 97–98 (D.D.C. 2012) (discussing distinction); *Airlie Found. v. IRS*, 283 F. Supp. 2d 58, 61 (D.D.C.2003) (similar); *Conservation Cong. v. Finley*, No. C 11–04752 SC LB, 2012 WL 1564946, at *4–5 (N.D. Cal. May 2, 2012) (discussing distinction between scope and standard of review under ESA citizen suits and APA suits).

regulated parties—both private entities and Government agencies—but is not an alternative avenue for judicial review of the Secretary's implementation of the statute.").

Interpreting the language of Section 11(g)(1)(A), courts have emphasized that claims and relief sought under this clause of the ESA citizen suit provision are forward-looking. *See, e.g.*, *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 785 (9th Cir. 1995) ("Finally, the overall structure of the ESA indicates that Congress intended to make claims of an imminent threat of injury to wildlife actionable under the ESA. First, the injunctive relief authorized by the citizen suit provision, 16 U.S.C. § 1540(g), is by its very nature directed at future actions."). Thus, a violation of the substantive requirements of Sections 7 and 9 of the ESA is reviewed under the ESA citizen suit provision, not the APA. *See Wash. Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 ("Plaintiffs' suits to compel agencies to comply with the substantive provisions of the ESA arise under the ESA citizen suit provision, and not the APA."); *Envtl. Prot. Info. Ctr. v. Timber Co.*, 255 F.3d 1073, 1079 (9th Cir. 2001) (explaining that, under *Bennett*, "the substantive obligation imposed on [a federal agency] to ensure that no action authorized by it is likely to jeopardize a [listed] species" arises under the ESA citizen suit provision, not the APA).

Courts considering ESA citizen suit claims have consistently held there is no administrative record to which judicial review of such claims is limited and that, therefore, parties should be permitted to obtain relevant evidence through discovery without restriction. *See Wash. Toxics Coal.*, 413 F.3d at 1034 (allowing parties to introduce evidence of the effects of challenged agency action to support claim alleging violations of substantive ESA Section 7 duty to ensure against jeopardy), *abrogated on other grounds as recognized by Or. Nat. Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075 (9th Cir. 2015); *Or. Nat. Desert Ass'n v.*

*Kimbell*, 593 F. Supp. 2d 1217 (D. Or. 2009) (allowing admission of evidence obtained through discovery for review of ESA citizen suit claims because such claims require proof of harm and causation); *Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 210 F. Supp. 3d 796 (E.D.N.C. 2016) (allowing discovery on ESA citizen suit claims because they are forward-looking and seek injunctive relief).[4]

 To succeed on their second and third claims, Plaintiffs bear the burden of proof. Denying discovery would effectively grant Defendants the opportunity to invent a purported record for these claims that would allow them to hand-pick an evidentiary record tailored to rebutting Plaintiffs' citizen suit allegations. This would defy the normal principles of civil procedure and Rule 26.[5] Allowing discovery early in litigation also serves the interests of judicial economy. It

---

[4] Plaintiffs' ESA citizen suit claims challenging ongoing violations of law rather than discrete and final agency action are analogous to claims brought under APA 706(1) seeking to "compel agency action unlawfully withheld of unreasonably delayed," 5 U.S.C. § 706(1). Courts in this Circuit have consistently held that Plaintiffs prosecuting such claims are entitled to discovery. *See e.g.*, *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dept. of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) ("when it comes to agency inaction under 5 U.S.C. § 706(1), 'review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.' . . . Said another way, if an agency fails to act, there is no 'administrative record' for a federal court to review. . . Therefore, 'there may well be reason for discovery, since agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply ... after-the-event justifications [ ] which may need to be explored by plaintiffs.'"); *See e.g.*, *W. Watersheds Project v. Pool*, 942 F. Supp. 2d 93, 100–01 (D.D.C. 2013) (similar); *Chem. Weapons Working Group v. U.S. Dept. of Def.*, 2007 WL 7713916, at *2 (D.D.C. Mar. 8, 2007) (similar).

[5] The Federal Rules of Civil Procedure encourage a broad scope of discovery. Fed. R. Civ. P. 26(b)(1) ("unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.").

decreases the likelihood that Plaintiffs will later need to show that the self-serving "record" Defendants compiled was deficient, which would require further motions practice and result in delay in resolving the case on the merits.

**A.** **Plaintiffs Are Entitled To Discovery On Their ESA Section 9 Claim To Meet Their Evidentiary Burden To Establish Defendants Are In Ongoing Violation Of The Prohibition Against Unauthorized Take And That Plaintiffs Are Entitled To Injunctive Relief**

Plaintiffs' third claim arises under Section 9 of the ESA, 16 U.S.C. § 1538(a)(1). Section 9 prohibits the unauthorized take of any species listed under the ESA. It is unlawful to harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct without appropriate incidental take authorization. *Id.* §§ 1532(19), 1539(a)(1)(B). For decades, Defendants have acknowledged that the American lobster fishery takes right whales by entanglement. *See, e.g.*, 62 Fed. Reg. 33 (Jan. 2, 1997) (finding lobster fishery causes frequent serious injury and mortality of right whales). But there is no incidental take statement or permit authorizing this take. CBD Compl. ¶¶ 113, 137, 138; CLF Compl. ¶¶ 100, 115, 116. Accordingly, the unauthorized take of right whales violates Section 9 of the ESA. Defendants are liable for this violation as the federal agency responsible for authorizing and managing the ongoing operations of the American lobster fishery. *See* 16 U.S.C. § 1538; *see also Strahan v. Coxe*, 127 F.3d 155, 163 (1st Cir. 1997), *cert. denied*, 525 U.S. 978 (1998) (affirming district court holding that a governmental third party, pursuant to whose authority commercial fishermen directly take an endangered species, can be held liable for violating the ESA).

The APA supplies neither the scope nor standard of review for Plaintiffs' ESA Section 9 claim. Courts recognize that Section 9 claims do not challenge wholly past final agency actions; rather, they are forward-looking. *See Forest Conservation Council*, 50 F.3d at 786 (concluding claim of imminent threat of harm to spotted owls from proposed logging operation was

10

actionable under ESA's citizen suit provision); *Stout v. U.S. Forest Serv.*, 869 F. Supp.2d 1271, 1281 (D. Or. 2012) (finding ESA citizen suit provision provides for injunctive relief, which is inherently forward-looking). Thus, by its very nature, Plaintiffs' third claim involves facts about the results of NMFS's actions and the unauthorized incidental take that will continue to result absent appropriate injunctive relief from this Court, not a particular decision itself.

1.   Because They Are Forward-Looking, ESA Section 9 Claims Typically
Involve Discovery

Multiple courts have discussed the significance of the Section 9 take prohibition and the injunctive relief available to address the forward-looking nature of Section 9 claims arising under the ESA citizen suit provision. *See Forest Conservation Council*, 50 F. 3d at 786 (analyzing the ESA's legislative history and stating: "Injunctions provide greater opportunity to attempt resolution of conflicts *before* harm to a species occurs.") (emphasis in original). The district court in *Stout v. U.S. Forest Service* similarly observed:

> It is difficult to see how a claim regarding § 9's take prohibition could be analyzed pursuant to anything but a *de novo* standard with the admission of extra record evidence. . . . [E]xcluding extra record evidence[] would be particularly bizarre in those suits brought to enjoin entirely future actions or those actions for which there is not an administrative record.

869 F. Supp. at 1276 n.1.

Suing a federal agency for its Section 9 violations does not thereby import the APA scope of review into an ESA citizen suit. *See, e.g.*, *Or. Nat. Desert Ass'n*, 593 F. Supp. 2d at 1220–21 (holding ESA citizen suit claims against U.S. Forest Service that "do not challenge specific administrative decisions . . . are not limited by the APA scope of review."). Here, Defendants' federal agency status does not shield them from discovery. Plaintiffs allege that Defendants' ongoing management and authorization of the lobster fishery is causing take of right whales. Because Plaintiffs' third claim does not seek to review Defendants' wholly past final agency

11

actions, but rather to enjoin ongoing or future unlawful incidental take, the relevant questions are

neither their federal agency status nor their past final agency actions, but whether they are

currently authorizing and likely to continue to authorize activities that result in unlawful takes of

right whales. *See Animal Welfare Inst. v. Beech Ridge Energy LLC*, 675 F. Supp. 2d 540, 560 (D.

Md. 2009) ("the ESA's citizen-suit provision provides for injunctive relief which by design

prevents *future* actions that will take listed species").

Accordingly, ESA Section 9 claims—whether against private actors, state agencies, or

federal agencies—almost universally involve discovery. *See, e.g.*, *Hill v. Coggins*, 867 F.3d 499,

504 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 1003 (2018) (noting lower court "considered the

conflicting evidence, weighed the credibility of witnesses, [and] assessed the

relevant discovery history" in an ESA Section 9 case regarding grizzly bears); *Kuehl v. Sellner*,

161 F. Supp. 3d 678, 861 (N.D. Iowa 2016), *aff'd*, 887 F.3d 845 (8th Cir. 2018) (using discovery

and a non-jury trial to determine that a zoo and its affiliates violated ESA Section 9 for their

treatment of tigers and lemurs); *Defenders of Wildlife v. Bernal*, 204 F.3d 920 (9th Cir. 1999)

(discussing district court's three-day trial on plaintiff's ESA Section 9 claim); *Hawksbill Sea

Turtle v. FEMA*, 126 F.3d 461, 478 (3d Cir. 1997) (distinguishing claims based on FEMA's

planning from ESA Section 9 claims based on execution of agency action and citing as error the

district court's failure to examine the evidence developed before it); *Marbled Murrelet v.

Babbitt*, 83 F.3d 1060, 1067–68 (9th Cir. 1996) (experts testifying at trial about endangered

marbled murrelet's nesting behavior and the likelihood of defendant's harvesting plan negatively

affecting the bird's patterns and susceptibility to predators); *Sierra Club v. Yuetter*, 926 F.2d 429,

432–33, 438–39 & n. 13 (5th Cir. 1991) (discussing evidence otherwise admissible for Section 9

takings claims); *Palila v. Haw. Dep't of Land & Natural Res.*, 471 F. Supp. 985, 988 & n.2 (D.

Haw. 1979), *aff'd*, 639 F.2d 495 (9th Cir. 1981) (receiving testimony of expert witnesses on

summary judgment motion); *Humane Soc'y of the U.S. v. Kienzle*, No. 2:16-cv-0724-WJ/SMV,

2017 WL 5151305, ECF No. 65 (scheduling order for discovery in case regarding likely future

take of Mexican wolves); *Strahan v. Roughead*, 910 F. Supp. 2d 358, 366–78 (D. Mass. 2012)

(finding that "additional discovery is necessary to address… the merits of plaintiff's [Section 9]

claim" against the U.S. Navy); *Animal Welfare Inst.*, 675 F. Supp. 2d at 564–80 (discussing

factual evidence regarding likely future take of endangered bats); *San Carlos Apache Tribe v.

United State*s, 272 F. Supp. 2d 860, 876 n.11, 877–79 (D. Ariz. 2003) (presenting expert

testimony on ESA Section 9 claims); *United States v. Town of Plymouth, Massachusetts*, 6 F.

Supp. 2d 81, 83–84, 91–92 (D. Mass. 1998) (considering scientists' affidavits when deciding

whether Section 9 take violation occurred); *Marbled Murrelet v. Pac. Lumber Co.*, 880 F. Supp.

1343, 1345–65 (N.D. Cal. 1995) (discussing factual evidence regarding likely future take of

endangered seabirds); *Loggerhead Turtle v. County Council of Volusia County, Fla.*, 896 F.

Supp. 1170, 1175, 1181–82 (M.D. Fla. 1995) (considering expert testimony from both parties

before deciding to enjoin nighttime vehicular access to beach because such traffic was

reasonably likely to cause future takes of endangered sea turtles); *Palila v. Haw. Dep't of Land

& Natural Res.*, 649 F. Supp. 1070, 1072 n.3 (D. Haw. 1986), *aff'd*, 852 F.2d 1106 (9th Cir.

1988) (allowing numerous experts on trees, sheep, and birds to testify at trial in ESA Section 9

case).

> 2. <u>Plaintiffs Are Entitled to Discovery to Meet Their Burden to Establish Defendants' Liability and Plaintiffs' Right to Injunctive Relief by a Preponderance of the Evidence</u>

Although the instant motion concerns the scope of review, the applicable standard of

review for Section 9 claims illustrates why Plaintiffs are entitled to discovery to prosecute this

claim. Just as the APA's scope of review does not apply to Plaintiffs' Section 9 claim, the APA's

standard of review does not apply either. Rather, Plaintiffs bear the burden to prove this claim

under a preponderance of the evidence standard. *Defenders of Wildlife,* 204 F.3d at 925 (noting

preponderance-of-the-evidence standard as plaintiffs' burden of proof at trial on an ESA Section

9 claim); *see also Hill v. Coggins*, No.2:13-CV-00047-MR-DLH, 2016 WL 1251190, at *14

(W.D.N.C. Mar. 30, 2016) (applying preponderance-of-the-evidence standard to ESA Section 9

claim), *aff'd in part, vacated in part* 867 F.3d 499 (4th Cir. 2017); *Animal Welfare Inst.*, 675 F.

Supp. 2d at 563 (same).[6] *See* 5 U.S.C. § 706(2)(A).

      Plaintiffs are therefore entitled to discovery to meet their evidentiary burden to

demonstrate their entitlement to relief by showing, by a preponderance of the evidence, the

likelihood of ongoing and future incidental take of right whales resulting from Defendants'

ongoing authorization and management of the lobster fishery. A non-exhaustive list of the types

of discovery Plaintiffs may seek includes: (1) information regarding the frequency of

entanglements of North Atlantic right whales in trap/pot gear since NMFS's issuance of the July

2014 Biological Opinion, including entanglements and serious injuries/mortalities post-July

2014; (2) information on how NMFS typically responds to those entanglements and the data it

has obtained from such responses and other disentanglement, stranding, and necropsy efforts; (3)

scientific information regarding chronic stress, reproductive failure and other sub-lethal effects

of entanglement; and (4) information NMFS has or has developed regarding the current and

precarious status of this population. Moreover, Plaintiffs are entitled to introduce expert reports

evaluating these and other salient facts. This and other information will be pertinent to this

---

[6]     By contrast, the arbitrary and capricious standard is retrospective and answers a different
question—whether the government made an arbitrary and capricious decision—and, as noted
above, is the appropriate standard for reviewing Plaintiffs' first and fourth claims. *See* 5 U.S.C. §
706(2)(A).

Court's review of whether Defendants are in ongoing violation of ESA Section 9 in causing or permitting unauthorized incidental take of right whales and whether Plaintiffs are accordingly entitled to relief.

**B.      Because the APA Does Not Govern the Scope of Review for Plaintiffs' Substantive ESA Section 7 Claim, Plaintiffs Are Entitled To Discovery**

Plaintiffs' second claim arises under the citizen suit provision of Section 7 of the ESA, 16 U.S.C. § 1536 (a)(2), and is similarly forward-looking. As the action agency responsible for authorizing the American lobster fishery under the MMPA, NMFS has separate and distinct obligations under Section 7(a)(2): (1) a procedural duty to complete intra-agency consultation with itself in its wildlife agency role because its action affects a listed species, and (2) a substantive, ongoing duty to avoid jeopardy that continues no matter the status of consultation so long as it retains discretionary control over the action. 16 U.S.C. § 1536(a)(2). In their second claim, Plaintiffs allege that Defendants' ongoing authorization and management of the lobster fishery is violating their substantive ESA Section 7 obligation to avoid jeopardy to right whales. CBD Compl. ¶¶ 117–125; CLF Compl. ¶¶ 118–126. Plaintiffs are entitled to discovery on this claim.[7]

Because Section 7 establishes ongoing substantive obligations for action agencies to avoid jeopardy, review of ESA citizen suit claims alleging substantive Section 7 violations is not confined to a particular administrative decision. *See, e.g.*, *Or. Nat. Cottonwood Envtl. Law Ctr.*,

---

[7]      In the Joint Meet and Confer Statement, Defendants cited to *Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982), for the proposition that the scope of judicial review should be limited to the record already in existence. *See* ECF No. 23 at 6–7. However, *Cabinet Mountains* is distinguishable because the Section 7 claim challenged a one-time, wholly past decision to approve a mineral drilling plan. There was no Section 9 claim and the holding that an APA *standard* of review was appropriate did not address the *scope* of review.

789 F.3d at 1087–88; *Defenders. of Wildlife v. U.S. Dept. of Navy*, 733 F.3d 1106, 1122 (11th Cir. 2013) ("After all, the ESA's requirement that the federal agency avoid jeopardy remains in force throughout the life of a project, and the project must be abandoned or reasonable and prudent measures to avoid jeopardy must be adopted, if later stages of a project result in jeopardy to listed species. *See* 50 C.F.R. §§ 402.14(i)(4), 402.16(a)."); *Wild Fish Conservancy*, 628 F.3d at 518. Consistent with this fundamental principle, courts have held that plaintiffs are permitted to conduct discovery on substantive ESA Section 7 claims against an action agency for its ongoing failure to avoid jeopardy. *See, e.g.*, *Or. Nat. Desert Ass'n,* 593 F. Supp. 2d at 1220–21; *Wash. Toxics Coal.*, 413 F.3d at 1034.

Although cases arising under a separate subsection of the ESA citizen suit provision and challenging final agency action on ESA Section 4 listing decisions present similar circumstances to an APA claim,[8] they are inapposite here. Plaintiffs' second claim does not challenge a formal agency decision-making process that culminated in a discrete and wholly past final action. Rather, it challenges Defendants' failure to ensure that their ongoing authorization and management of the lobster fishery avoids jeopardizing right whales. Plaintiffs' claim thus stems from the totality of circumstances with regard to Defendants' recent and ongoing actions and inactions related to right whales and the consequent likelihood of jeopardy to the species.

---

[8]     In contrast with substantive Section 7 claims arising under 16 U.S.C. § 1540(g)(1)(A), ESA citizen suit claims arising under 16 U.S.C. § 1540(g)(1)(C) challenge Section 4 listing decisions. Therefore, such claims involve wholly past final agency actions for which an administrative record can be compiled. In such cases, the D.C. Circuit properly applies the APA scope and standard of review. *See, e.g.*, *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 8–9 (D.D.C. 2013), *judgment entered*, 301 F.R.D. 14 (D.D.C. 2014), *and aff'd*, 601 Fed. Appx. 1 (D.C. Cir. 2015) (applying APA's scope and standard of review to ESA citizen suit claims challenging FWS final determination not to delist a species and final designation of critical habitat).

The APA scope of review does not limit the discovery to which Plaintiffs are entitled to prove that Defendants, in their role as action agency, are violating their ongoing substantive Section 7 obligations in the face of new scientific information showing right whales have declined since 2010, continue to be entangled in fishing gear, and may face functional extinction in less than 25 years. CBD Compl. ¶¶ 126–129; CLF Compl. ¶¶ 127–132. Plaintiffs are entitled to discovery regarding information in Defendants' possession on these and other facts relevant to Plaintiffs' second claim. Similarly, Plaintiffs are entitled to introduce expert reports evaluating these facts.

## II.   FAIRNESS AND DUE PROCESS FAVOR ALLOWING PLAINTIFFS TO DISCOVER RELEVANT EVIDENCE

Principles of justice and efficiency favor the complete and accurate evidentiary record necessary to resolve Plaintiffs' ESA citizen suit claims that will result from allowing Plaintiffs to engage in discovery. *Wild Fish Conservancy v. Nat'l Park Serv.*, No. C12-5109 BHS, 2012 WL 5384896, at *1 (W.D. Wash. 2012) ("Even if confusion exists regarding discovery in ESA citizen suit cases, the Court finds that a completely developed record is the best solution, at trial and on appeal, for the just, speedy, and inexpensive determination of Plaintiffs' claims."); *see also Nw. Coal. For Alternatives to Pesticides v. E.P.A*, 920 F. Supp. 2d 1168, 1174, 1175 (W.D. WA 2013) (noting the preference for a "completely developed record").

Here, limiting judicial review to a purported administrative record would essentially allow Defendants to include whatever self-serving information they deem relevant to Plaintiffs' claims to justify their argument that they are not violating the ESA, as their desire to wait until after the Atlantic Large Whale Take Reduction Team meeting planned for October 2018 to submit the record suggests. *See* ECF No. 23 at 15. While Defendants want to delay producing the administrative records for Plaintiffs' first and fourth claims challenging the July 2014 Biological

Opinion and January 2017 List of Fisheries, respectively, in that context there are established

rules for what the record of those wholly past final agency actions should contain. *See, e.g.*,

*Citizens to Preserve Overton Park, Inc., v. Volpe*, 401 U.S. 402, 420 (1971). That is not the case

for Plaintiffs' ESA citizen suit claims challenging Defendants' continuing, ongoing violations of

law. Allowing Defendants to submit an administrative record on these claims that do not involve

discrete final agency actions would put Plaintiffs in the position of having to argue over whether

this fictional record should be "supplemented" and would limit or deny Plaintiffs access to the

sources of proof held exclusively by the agency.

**III.    INTERVENORS' PARTICIPATION IN DISCOVERY SHOULD BE LIMITED**

In the event the Court rules that Plaintiffs are entitled to discovery on their second and

third claims, Plaintiffs respectfully request that the Court bar Intervenor-Defendant Maine

Lobstermen's Association ("MLA") from seeking any independent discovery against Plaintiffs

and Defendants.[9] Such condition will promote judicial efficiency and the expeditious resolution

of these consolidated cases.

Placing conditions on the participation of intervenors for reasons of judicial efficiency is

"a firmly established principle" in federal courts. *Beauregard, Inc. v. Sword Servs., LLC*, 107

F.3d 351, 352–53 (5th Cir. 1997); *see also WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 20

(D.D.C. 2010) ("conditions imposed [on intervention] should be designed to ensure the fair,

efficacious, and prompt resolution of the litigation."). This principle applies whether an

---

[9]    The MLA filed a motion to intervene in this case on May 30, 2018. ECF No. 24. In the meet and confer that took place pursuant to Local Rule 7(m), Plaintiffs' counsel in both matters informed counsel for MLA that they could not take a position on the motion until they had seen the papers filed with the Court. On June 4, 2018, the Court granted MLA's motion by minute order before Plaintiffs had the opportunity to review and respond to MLA's moving papers. Accordingly, Plaintiffs now make this request to limit MLA's participation in discovery.

intervenor is granted intervention of right under Fed. Rule Civ. Pro. 24(a) or permissive intervention under Fed. Rule Civ. Pro. 24(b).

As the Supreme Court has acknowledged, "intervention of right . . . may be subject to appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings." *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 383 n.2 (1987) (Brennan, J., concurring) (quoting Fed. R. Civ. Pro. 24, 1966 Advisory Committee Notes); *Fund for Animals v. Norton*, 322 F.3d 728, 737 n.11 (D.C. Cir. 2003) (citing the Advisory Committee Note to support district court's authority to limit participation of intervenor of right).

Likewise, "[a] court may place conditions on permissive interventions in order to minimize the delay and prejudice to the existing parties." *Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt.*, 205 F.R.D. 1, 7 (D.D.C. 2000); *see also Ctr. for Biological Diversity v. Brennan*, 571 F. Supp. 2d 1105, 1130 (N.D. Cal. 2007) ("[a] district court's discretion to grant or deny permissive intervention is broad, and includes the discretion to limit intervention to particular issues or for limited purposes").

Consistent with these general principles, numerous courts have limited an intervenor's participation in discovery, including prohibiting intervenors from initiating any discovery. *See, e.g.*, *United States v. City of Dayton*, No. 08-00348, 2009 U.S. Dist. LEXIS 37213, at *14 (S.D. Ohio Apr. 14, 2009) ("[w]hile the Unions will be privy to the documents and information exchanged between the [parties] in developing a remedy, the Unions will not have the right to demand discovery themselves"); *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 565 (M.D.N.C. 2001) (noting "the magistrate judge may impose limitations on Applicants' participation in the currently on-going discovery and Applicants' ability to initiate unilateral

independent discovery without leave of the court"); *Saginaw Chippewa Indian Tribe v. Granholm*, No. 05-102960BC, 2007 U.S. Dist. LEXIS 84853, at *17 (E.D. Mich. Nov. 16, 2007) (granting permissive intervention but barring intervenor from submitting expert reports); *Jack in the Box Inc. v. Mehta*, No. 13-04444-EJD, 2014 U.S. Dist. LEXIS 50575, at *6 (N.D. Cal. Apr. 9, 2014) ("[w]hen granting an application for permissive intervention, a federal district court is able to impose almost any condition, including the limitation of discovery").

Here, restricting MLA from seeking any independent discovery against the original parties to these consolidated cases will help promote their efficient, expeditious resolution. *See British Airways Bd. v. Port Auth. of New York and New Jersey*, 71 F.R.D. 583, 585 (S.D.N.Y. 1976) ("[a]dditional parties always take additional time . . . they are the source of additional questions, objections, briefs, arguments, motions and the like which tend to make the proceedings a Donnybrook Fair"). MLA's intervention motion makes clear that its interests in this case stem from the relief the Court might issue in the event it rules for Plaintiffs on the merits. *See, e.g.*, ECF No. 24 at 6 (stating that implementation of mitigation measures "would directly impact the economic interests and livelihood" of MLA members and that the outcome of the case could "directly implicate MLA and its members' business practices and financial opportunities"); *id.* at 7 (claiming that "MLA is uniquely qualified to inform on the technological and economic feasibility of proposed alternatives" to current fishing practices).

But "the effect of injunctive relief . . . is irrelevant to the determination of Defendant's liability under the ESA." *Wishtoyo Foundation v. United Water Conservation Dist.*, No. 16-3869-DOC, 2017 U.S. Dist. LEXIS 153184, at *10 (C.D. Cal. Sept. 7, 2017). Allowing MLA to seek independent discovery against Plaintiffs and Defendants therefore "risks confusing the issues in th[e] case" regarding Defendants' liability under by the introduction of extraneous,

improper evidence. *Id*. at *10; *see also Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1141 (N.D. Cal. 2017) ("courts are not permitted to favor economic interests over potential harm to endangered species."). And it could also force Plaintiffs to spend limited resources responding to MLA's discovery requests and interject further delay in resolving Plaintiffs' legal claims—a delay that imperiled right whales can ill-afford. The Court should therefore prohibit Intervenor from seeking discovery from Plaintiffs.[10]

## CONCLUSION

The APA scope of review does not apply to Plaintiffs' second and third claims that arise under the ESA citizen suit provision. Plaintiffs are entitled to discover relevant evidence and to present expert reports to establish Defendant' liability and Plaintiffs' entitlement to relief on these claims. The Court should therefore grant Plaintiffs' motion and enter a discovery order consistent with Plaintiffs' proposed discovery timeline, ECF No. 23-1.

DATED:        June 8, 2018                    Respectfully submitted,

/s/ Kristen Monsell                          /s/ Erica A. Fuller
Kristen Monsell, *admitted pro hac vice*     Erica A. Fuller (DC Bar No. MA0001)
Center for Biological Diversity              Conservation Law Foundation
1212 Broadway, Ste. 800                      62 Summer St.
Oakland, CA 94612                            Boston, MA 02110
(510) 844-7137                               Tel.: 617-850-1754
kmonsell@biologicaldiversity.org             Fax: 617-350-4030
                                             efuller@clf.org

Sarah Uhlemann, DC Bar No. 501328            Emily K. Green (DC Bar No. ME0002)
Center for Biological Diversity              Sean Mahoney (*Pro Hac Vice*)
2400 80th Street NW, #146                    (Maine Bar No. 8661)
Seattle, WA 98117                            Conservation Law Foundation
(206) 327-2344                               53 Exchange St., Suite 200
suhlemann@biologicaldiversity.org            Portland, ME 04101
                                             Tel.: 207-210-6439

---

[10]     Plaintiffs do not intend to seek discovery against MLA regarding Defendants' liability on Plaintiffs' second or third claims at this time.

Jane P. Davenport, DC Bar No. 474585
Defenders of Wildlife
1130 17th Street, NW
Washington, DC 20036
(202) 722-3274
jdavenport@defenders.org


Laura Friend, DC Bar No. NY0217
The Humane Society of the United States
1255 23rd Street, NW Suite 450
Washington, DC 20037
(202) 676-2331
lfriend@humanesociety.org

*Attorneys for Plaintiffs Center for Biological
Diversity, Defenders of Wildlife, The Humane
Society of the United States*

Fax: 617-350-4030
egreen@clf.org
smahoney@clf.org

Roger Fleming (DC Bar No. ME0001)
Earthjustice
1625 Massachusetts Avenue NW, Suite 702
Washington, DC 20036
Tel.: 202-667-4500
Fax: 202-667-2356
rfleming@earthjustice.org

*Attorneys for Plaintiff Conservation Law
Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 8, 2018, I caused the foregoing to be filed and served upon

counsel of record via the Court's CM/ECF filing system, which will send notice of such to all

counsel of record.


/s/ Erica A. Fuller
Erica A. Fuller

23