**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.* | Case No. 1:18-cv-00112-JEB |
| *Plaintiffs*, | |
| v. | |
| WILBUR ROSS, *et al.*, | |
| *Defendants*, | |
| --- | |
| CONSERVATION LAW FOUNDATION, | Case No. 1:18-cv-00283-JEB |
| *Plaintiff*, | |
| v. | |
| WILBUR ROSS, *et al.*, | |
| *Defendants*. | |

**PLAINTIFFS' REPLY IN SUPPORT OF**
**THEIR JOINT MOTION ON THE SCOPE OF REVIEW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION...............................................................................................................1

ARGUMENT......................................................................................................................3

I.     PLAINTIFFS' SUBSTANTIVE ESA CLAIMS DO NOT CHALLENGE THE
VALIDITY OF A FINAL AGENCY DECISION BUT SEEK TO ENJOIN
ONGOING VIOLATIONS...........................................................................................3

     A.    Defendants Conflate the Standards Applicable to Claims Arising Under Two
Different Subsections of the ESA Citizen Suit Provision and Misstate the
Law........................................................................................................................3

     B.    Defendants Cite Irrelevant Caselaw in Attempting to Advance Their
Unsupported Position .........................................................................................7

     C.    Plaintiffs' Section 9 Claim Is Not Reviewed on a "Record" and Plaintiffs Are
Entitled to Discovery...........................................................................................12

     D.    Plaintiffs' Substantive Section 7(a)(2) Claim Is Not Reviewed on a "Record"
and Plaintiffs Are Entitled to Discovery...........................................................16

          1.    The Standard of Review and the Scope of Review Are Separate and
Distinct Concepts ........................................................................................16

          2.    Defendants Have an Ongoing Obligation to Comply with Section 7(a)(2)
of the ESA.....................................................................................................20

     E.    Plaintiffs' Request for Relief Is Not Limited to a "Record"............................22

II.    THE COURT SHOULD ORDER DEFENDANTS TO SUBMIT THE
ADMINISTRATIVE RECORD ON PLAINTIFFS' APA-BASED CLAIMS...........22

CONCLUSION..................................................................................................................24

i

## TABLE OF AUTHORITIES

**Cases**

*Am. Canoe Ass'n, Inc. v. EPA*, 46 F. Supp. 2d 473 (E.D. Va. 1999)..............................11

*Animal Prot. Inst. v. Holsten*, 541 F. Supp. 2d 1073 (D. Minn. 2008)............................6

*Animal Welfare Inst. v. Beech Ridge Energy LLC*, 675 F. Supp. 2d 540 (D. Md. 2009)...............6

*Am. Wildlands v. Kempthorne*, 530 F.3d 991 (D.C. Cir. 2008)........................................5

*\*Bennett v. Spear*, 520 U.S. 154 (1997).........................................................4,5,9,13,15

*Cabinet Mountains Wilderness v. Peterson*, 510 F. Supp. 1186 (D.D.C. 1981).......................8,17

*Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678 (D.C. Cir. 1982).......................8,17,18

*Ctr. for Biological Diversity v. Salazar*, 794 F. Supp. 2d 65 (D.D.C. 2011)..................................5

*Dade v. Irwin*, 43 U.S. 383 (1844)..................................................................22

*Defenders of Wildlife v. Bernal*, 204 F.3d 920 (9th Cir. 1999).......................................12

*Defenders of Wildlife v. EPA*, 688 F. Supp. 1334 (D. Minn. 1988)...................................14

*Defenders of Wildlife v. EPA*, 882 F.2d 1294 (8th Cir. 1989)...................................14,15

*\*Defenders of Wildlife v. Martin*, 454 F. Supp. 2d 1085 (E.D. Wash. 2006).....................16,20,21

*Defenders of Wildlife v. U.S. Dep't of the Navy*, 733 F.3d 1106 (11th Cir. 2013)......................20

*Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 904 F. Supp. 2d 95 (D.D.C. 2012)...............................................17

*Esch v. Yeutter*, 876 F.2d 976 (D.C. Cir. 1989)..................................................19,22

*Franklin Sav. Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127 (10th Cir. 1991).................16

*Fund for Animals v. Babbitt*, 903 F. Supp. 96 (D.D.C. 1995).........................................9

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49 (1987)......................7

*Humane Soc'y of the United States v. Gutierrez*,
    No. 07-00333-ESH (D.D.C., filed Feb. 12, 2007)..................................................23

*Humane Soc'y of the United States v. Gutierrez*,
    No. 08-01593-ESH (D.D.C., filed Sept. 15, 2008)..................................................23

*Humane Soc'y of the United States v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. 2014)...........................5

*Humane Soc'y of the United States v. Nat'l Marine Fisheries Serv.*,
   No. 14-11754-JCB (D. Mass., filed Apr. 10, 2014)....................................................24

*Humane Soc'y of the United States v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017)............................5,6

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir. 2002)................................................22

*Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981).................15

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007)........................18,19

*Nat'l Wildlife Fed. v. Hanson*, 859 F.2d 313 (4th Cir. 1988)......................................................11

*Newton County Wildlife Ass'n v. Rogers*, 141 F.3d 803, 807 (8th Cir. 1998)..............................10

*\*Or. Nat. Desert Ass'n v. Kimbell*, 593 F. Supp. 2d 1217 (D. Or. 2009)................................13,18

*Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engr's*,
   916 F. Supp. 1557 (N.D. Ga. 1995)........................................................................10

*Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engr's*,
   87 F.3d 1242 (11th Cir. 1996)................................................................................10

*Red Wolf Coal. v. U.S. Fish & Wildlife Serv.*, 210 F. Supp. 3d 796 (E.D.N.C. 2016)............13,18

*Sierra Club v. Marsh*, 816 F.2d 1376 (9th Cir. 1987)................................................................8,20

*Sierra Club v. Yuetter*, 926 F.2d 429 (5th Cir. 1991).....................................................................14

*Stoeco Dev., Ltd. v. Corps*, 792 F. Supp. 339 (D.N.J. 1992)........................................................11

*Strahan v. Roughead*, 910 F. Supp. 2d 358 (D. Mass. 2012)........................................................13

*Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1 (D.D.C. 2001)..........................6,8

*United States v. Carlo Bianchi & Co.*, 373 U.S. 709 (1963)............................................................9

*United States v. Town of Plymouth, Massachusetts*, 6 F. Supp. 2d 81 (D. Mass. 1998)...............15

*United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1 (D.D.C. 2017).................................19

*\*W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011)..........................4,6,19,18

*Wash. Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005)...........................................................4

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)..................................................................22

iii

**Statutes**

5 U.S.C. § 706(2)...........................................................................................................6

5 U.S.C. § 706(2)(A).............................................................................................2,3,5,19

16 U.S.C. § 1387(f)(7)(B)..................................................................................................23

16 U.S.C. § 1387(f)(7)(C)..................................................................................................23

16 U.S.C. § 1387(f)(7)(E)................................................................................................3,23

16 U.S.C. § 1387(f)(7)(F)................................................................................................3,23

16 U.S.C. § 1532(13).......................................................................................................9,12

16 U.S.C. § 1532(19)..........................................................................................................15

16 U.S.C. § 1536(a)(2).........................................................................................................1

16 U.S.C. § 1538.................................................................................................................1

16 U.S.C. § 1538(a).............................................................................................................13

16 U.S.C. § 1540(e)(6).........................................................................................................15

16 U.S.C. § 1540(g)(1)(A) ............................................................................................*passim*

16 U.S.C. § 1540(g)(1)(C)..............................................................................................5,8,11

33 U.S.C. § 1344................................................................................................................11

33 U.S.C. § 1365(a)(1).........................................................................................................7

33 U.S.C. § 1365(a)(2).........................................................................................................11

## <u>INTRODUCTION</u>

This case arises from Defendants' dereliction of their duties under the Endangered Species Act ("ESA") and the Marine Mammal Protection Act ("MMPA") in authorizing and managing the American lobster fishery, which injures and kills critically endangered North Atlantic right whales.[1] Plaintiffs' second and third claims are pled under a specific subsection of the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1)(A), seeking to compel Defendants to comply with their ongoing, substantive duties to avoid jeopardy and unlawful take of critically endangered North Atlantic right whales as required by Section 7(a)(2) and Section 9 of the statute. *Id.* §§ 1536(a)(2), 1538. Plaintiffs have asked the Court to declare that Defendants are in violation of these provisions and to enforce Defendants' compliance by ordering them to implement measures to protect right whales from further harmful entanglements in lobster gear.

Plaintiffs' ESA Section 7(a)(2) and Section 9 claims require them to submit evidence to prove Defendants' ongoing failure to comply with the substantive requirements of the ESA, and cannot logically or fairly be reviewed on a "record" created by Defendants. Defendants cannot evade the growing body of caselaw confirming that the administrative record review provision of the Administrative Procedure Act ("APA") does *not* apply in cases brought under the ESA citizen suit provision alleging ongoing violations of Section 7 or 9, or the numerous decisions that have permitted expert declarations and discovery in such cases. Indeed, Defendants do not cite a single case in which a court found expert declarations or discovery inappropriate in a Section 9 case or a case alleging an ongoing violation of Section 7(a)(2). Instead, Defendants

---

[1]    Defendants erroneously claim that this case involves their authorization of the lobster fishery under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"). ECF No. 28 at 2 ("Def. Br"). As Defendants themselves previously acknowledged in a biological opinion on operation of the fishery, they authorize the fishery under the Atlantic Coastal Fisheries Cooperative Management Act and the MMPA, not the MSA. *See, e.g.*, CBD Compl. ¶¶ 90, 99; CLF Compl. ¶¶ 88, 97.

misrepresent the relevant caselaw and ignore important distinctions between various causes of action under the different ESA citizen suit subsections—namely, distinctions between claims that seek review of specific, past final decisions by the wildlife agencies that administer the statute and those that seek to enjoin ongoing, future violations of law by "any person," including federal agencies. Therefore, Plaintiffs urge this Court to reject Defendants' invitation to restrict the evidence the Court can consider when evaluating whether Defendants are in violation of Sections 7(a)(2) and 9 of the ESA and rule that Plaintiffs are entitled to discovery on their ESA citizen suit claims.[2]

Separately, on Plaintiffs' first and fourth APA-based claims, the Court should decline Defendants' unprecedented request to allow them until November 2018 to submit the administrative record, Def. Br at 13; ECF 28-2, and should instead require Defendants to promptly file the record for their July 2014 and January 2017 decisions at issue. *See* ECF No. 27 at 2–3 n.1 "(Pl. Br."). Defendants' request is based on their desire to wait to submit the record until after a meeting of the Atlantic Large Whale Take Reduction Team ("Team") currently scheduled for October 2018. But a *future* meeting cannot alter the basis for Defendants' past decisions that are challenged in Plaintiffs' first and fourth claims or expand the set of documents on which Defendants relied in reaching those decisions. And the scheduling of this Team

---

[2]    In their opposition to Defendants' motion to transfer this case to the District of Massachusetts, Plaintiffs expressly stated that while some of their claims arise under Section 706(2)(A) of the APA and are therefore reviewed based on the administrative record, some of Plaintiffs' claims arise under the ESA citizen suit provision and therefore are not limited to an administrative record and may require discovery. ECF No. 13 at 12; *see also* ECF No. 17 at 12 (Case No. 18-283) (noting discovery may occur). Plaintiffs also stated that most discovery will likely be conducted electronically and that the case will likely be resolved on summary judgment, *id.*, positions that they continue to maintain. *See* ECF No. 23 at 4 (meet and confer statement noting that the parties agree the case will likely be resolved on summary judgment); *id.* at 9 (Plaintiffs' statement that they anticipate the majority of discovery will be conducted via requests for production, interrogatories and/or requests for admission). Defendants' suggestion that Plaintiffs have changed their position on the discovery issue, Def. Br. at 2 n.1, is unfounded.

meeting—which the MMPA requires to be held every six months as part of an ongoing

monitoring process, 16 U.S.C. § 1387(f)(7)(E)—is irrelevant to Defendants presently being in

violation of their substantive duties under Sections 7(a)(2) and 9 of the ESA. Defendants' desire

to wait until November to file a record only reinforces that this "record" will be a self-serving

compilation of defensive evidence attempting to justify their ongoing failure to comply with the

ESA. The Court should not condone this approach.

## ARGUMENT

## I.    PLAINTIFFS' SUBSTANTIVE ESA CLAIMS DO NOT CHALLENGE THE VALIDITY OF A FINAL AGENCY DECISION BUT SEEK TO ENJOIN ONGOING VIOLATIONS

### A.    Defendants Conflate the Standards Applicable to Claims Arising Under Two Different Subsections of the ESA Citizen Suit Provision and Misstate the Law

Defendants repeatedly claim that Plaintiffs are not entitled to discovery on their ESA

citizen suit claims because judicial review of final agency action must be based on the

administrative record that was before the agency at the time it made its decision. *E.g.*, Def. Br. at

5.[3] Plaintiffs do not dispute this rule applies when a plaintiff challenges the validity of a specific,

final agency decision under Section 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), such as the

July 2014 and January 2017 decisions challenged in Plaintiffs' first and fourth claims for relief.

Pl. Br. at 5–6.

However, Plaintiffs' relevant claims here—their second and third claims for relief—are

brought under a specific subsection of the citizen suit provision of the ESA, 16 U.S.C. §

---

[3]    As discussed below, Defendants also maintain the contradictory position that the record would somehow be complete after the Team meeting—despite the fact that this meeting is neither a final agency action nor necessarily results in any prompt final agency action. Until and unless Defendants promulgate by regulation updates to the Atlantic Large Whale Take Reduction Plan pursuant to the MMPA, 16 U.S.C. § 1387(f)(7)(F), and complete a new biological opinion on that plan, there will be no new relevant final agency actions.

1540(g)(1)(A), and do not challenge a past agency decision. Rather, these claims allege that Defendants' *ongoing* management of the lobster fishery is currently violating the agency's substantive duty to ensure against jeopardy and is currently causing unlawful take of right whales. To remedy these ongoing violations, Plaintiffs seek injunctive relief enjoining these ongoing violations and enforcing the ESA's provisions by requiring the agency to adopt additional mitigation measures to reduce the risk of future harmful entanglements.

The caselaw draws a clear distinction between ESA claims that arise directly under the subsection of the citizen suit provision that allows individuals to seek to enjoin violations of the Act by "any person" (including the United States and its agencies), and those that challenge the validity of specific, final decisions by the wildlife agencies charged with administering the statute under a different subsection of the citizen suit provision or under the APA. In *Bennett v. Spear*, a unanimous Supreme Court held that 16 U.S.C. § 1540(g)(1)(A) enables suits against federal agencies for violations of the ESA's substantive mandates. 520 U.S. 154, 173–74 (1997). As the Supreme Court explained, this particular subsection of the ESA citizen suit provision "is a means by which private parties may enforce the substantive provisions of the ESA against regulated parties—both private entities and Government agencies—but is not an alternative avenue for judicial review of the Secretary's implementation of the statute." *Id.* at 173.[4] Accordingly, claims against the expert wildlife agencies for decisions involving their administration of the ESA's substantive provisions arise under the APA, *id.* at 174, 179, while claims against federal agencies for violating substantive requirements of the ESA arise under the ESA citizen suit provision. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495–96 (9th

---

[4]    "Secretary" means the Secretary of the Interior or the Secretary of Commerce. Respectively, the authority to implement the ESA has been delegated to the U.S. Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS").

Cir. 2011) (citing *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1030 (9th Cir. 2005)).

As Plaintiffs noted in their opening brief, Pl. Br. at 16 n.8, in the ESA context, citizen suit claims that challenge a specific wildlife agency decision issued under Section 4 of the ESA, such as the decision to list or delist a species or to designate critical habitat, arise under 16 U.S.C. § 1540(g)(1)(C) but are reviewed under the scope and standard of review supplied by the APA because they challenge final agency actions. *See, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 997–98 (D.C. Cir. 2008); *Ctr. for Biological Diversity v. Salazar*, 794 F. Supp. 2d 65, 79–80 (D.D.C. 2011). And because the ESA citizen suit provision does not allow for suits against the wildlife agencies for "maladministration" of the ESA (such as issuance of an unlawful biological opinion), claims that challenge a wildlife agency's specific decision issued under Section 7 of the ESA (which are final agency actions that have determinative legal consequences) arise under the APA and are accordingly reviewed under the APA scope and standard of review. *Bennett*, 520 U.S. at 177–78.

Whether a claim against a wildlife agency for its *final agency action* taken in administering the ESA challenges that action as violative of Section 4 or Section 7, a plaintiff must demonstrate that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In these cases, the agency must justify its final action by reference to its stated rationale and the evidence before it at the time it acted. *Humane Soc'y of the United States v. Jewell*, 76 F. Supp. 3d 69, 103–04 (D.D.C. 2014), *aff'd*, 865 F.3d 585 (D.C. Cir. 2017). Accordingly, a court generally reviews this type of claim based on the record before the agency at the time it made its decision. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). If a court finds the wildlife agency decision made in administering the ESA to be arbitrary and capricious, it will typically vacate and remand the

decision, with the instruction that the agency go back and reconsider its decision in light of what the court says it did wrong. *See* 5 U.S.C. § 706(2) (a court shall "set aside" unlawful decisions); *Humane Soc'y*, 865 F.3d at 595 (same). Much of Defendants' cited authority merely recites these undisputed propositions. *E.g.*, Def. Br. at 6 (citing *Sw. Ctr. for Biological Diversity v. Babbitt*, 131 F. Supp. 2d 1 (D.D.C. 2001) (applying APA standard to citizen suit challenging the FWS' denial of a listing petition).

Here, in contrast, Plaintiffs' Section 9 and Section 7(a)(2) claims do not challenge a specific and wholly past agency decision. Rather, Plaintiffs' ESA Section 7(a)(2) and Section 9 claims are brought pursuant to 16 U.S.C. § 1540(g)(1)(A), which allows a person to commence a suit to "enjoin . . . the United States and any other governmental instrumentality or agency, who *is alleged to be in violation* of any provision of [the ESA] or regulations issued under the authority thereof" (emphasis added). As the present-tense language of this subsection requires, these claims allege that Defendants are presently in ongoing violation of their substantive ESA duties to avoid jeopardy and unpermitted incidental take in managing the lobster fishery, and absent injunctive relief, will continue these violations into the future.[5]

In other words, Plaintiffs' Section 9 and Section 7(a)(2) claims are enforcement actions requiring proof of harm and causation that seek to enjoin ongoing and future ESA violations. *See* Pl. Br. at 8–9; *Animal Welfare Inst. v. Beech Ridge Energy LLC*, 675 F. Supp. 2d 540, 560 (D. Md. 2009) ("the ESA's citizen-suit provision provides for injunctive relief which by design prevents *future* actions that will take listed species"); *Animal Prot. Inst. v. Holsten*, 541 F. Supp. 2d 1073, 1081 (D. Minn. 2008) (enjoining state bobcat trapping where trapping "likely" to cause incidental take of threatened lynx); *Kraayenbrink*, 632 F.3d at 497 ("because the ESA provides a

---

[5]    *See* CBD Compl. ¶¶ 126–134; CLF Compl. ¶¶ 128–139.

citizen suit remedy . . . [the court] may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim.").

As the Supreme Court has held with respect to the analogous citizen-suit subsection in the Clean Water Act ("CWA"), 33 U.S.C. § 1365(a)(1),[6] the present-tense language of the subsection "require[s] that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past [violator] will continue to [violate] in the future." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 57 (1987) (observing that "Congress used identical language in the citizen suit provisions of several other environmental statutes that authorize only prospective relief."). *Gwaltney* noted that the citizen suit provision language and structure taken as a whole, including the requirement that plaintiffs provide a 60-day notice of their intent to sue, "make plain that the interest of the citizen-plaintiff is primarily forward-looking. . . . [T]he undeviating use of the present tense strongly suggests [that] the harm sought to be addressed by the citizen suit provision lies in the present or the future, not in the past." *Id.* at 59. In light of *Gwaltney's* holding, Defendants' argument that the Court may only consider an administrative record of their past actions, rather than relevant evidence obtained through discovery of their present and future violations, must fail.

**B.    Defendants Cite Irrelevant Caselaw in Attempting to Advance Their Unsupported Position**

The cases on which Defendants rely to claim that the Court's review is limited to the administrative record are inapposite. In those cases, the plaintiffs challenged the validity of

---

[6]    The CWA citizen suit subsection analogous to the ESA citizen suit subsection that Plaintiffs invoke here is 33 U.S.C. § 1365(a)(1), which permits "any citizen [to] commence a civil action . . . against any person (including (i) the United States and (ii) any other governmental instrumentality or agency . . .) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."

wholly past agency decisions, and not an agency's *ongoing* failure to comply with its substantive duties under the ESA. For example, Defendants rely on *Cabinet Mountains Wilderness v. Peterson*, 685 F.2d 678 (D.C. Cir. 1982), but, as explained further below, that court's holding was about the standard of review, not the scope of review. Moreover, the case did not involve an ESA Section 9 claim or an ongoing violation of Section 7. *See Cabinet Mountains Wilderness v. Peterson*, 510 F. Supp. 1186, 1187 (D.D.C. 1981) (describing claims). Rather, the plaintiffs challenged the U.S. Forest Service's wholly past decision to approve an exploratory drilling plan, claiming that the agency had violated its duty to ensure against jeopardy of threatened grizzly bears when it took final agency action by approving the plan. *Cabinet Mountains*, 685 F.2d at 687 ("emphasiz[ing] that our review of the agency's action is limited to the approval of the four-year exploratory drilling proposal"); *see also Sierra Club v. Marsh*, 816 F.2d 1376, 1386 (9th Cir. 1987) (describing the difference between compliance with ESA Section 7(a)(2) at the time of an agency's decision and the agency's present violation of ESA Section 7(a)(2) when it subsequently failed to carry out the original decision properly).

Defendants' reliance on *Sw. Ctr. for Biological Diversity*, 131 F. Supp. 2d at 10 n.2, Def. Br. at 6, is also misplaced. In that case, the plaintiffs challenged the FWS's wholly past, final decision to deny a petition to list a species of trout as threatened or endangered, alleging that the decision violated Section 4 of the ESA. 131 F. Supp. 2d at 1. The plaintiffs filed suit pursuant to the ESA citizen suit subsection that applies only to the wildlife agencies charged with administering the ESA: 16 U.S.C. § 1540(g)(1)(C). The court's finding regarding the scope of review was premised on the fact it was reviewing "an agency *decision made* pursuant to the ESA." 131 F. Supp. 2d at 5 (emphasis added). Likewise, the plaintiffs in *Fund for Animals v.*

*Babbitt*, 903 F. Supp. 96 (D.D.C. 1995), cited by Def. Br. at 7,[7] challenged the validity of a

recovery plan issued by the FWS and its decision not to designate critical habitat for grizzly

bears. 903 F. Supp. at 103. The court's determination regarding the scope of review was based

on the fact the case "involve[d] a challenge to a *final administrative action*." *Id.* at 105 (emphasis

added). Here, in contrast, Plaintiffs' substantive Section 7(a)(2) and 9 claims do not seek review

of the legitimacy of a final administrative decision, but ongoing and future violations that will

continue absent injunctive relief.

Defendants misstate the facts or holdings in many of the cases they cite for the

proposition that discovery is not permitted in ESA Section 7(a)(2) and 9 cases. Def. Br. at 6–7.

To begin with, *United States v. Carlo Bianchi & Co.* predated by nearly a decade the passage of

the ESA in 1973. 373 U.S. 709 (1963). *Carlo Bianchi* involved the Supreme Court's

interpretation of the judicial review provision in the Wunderlich Act, a statute "designed to

permit judicial review of decisions made by federal departments and agencies under standard

'disputes' clauses in government contracts." *Id.* at 710. The relevant ESA citizen suit provision,

by contrast, was not exclusively "designed to permit judicial review of decisions made by federal

departments and agencies" but rather to enable citizen enforcement of the ESA and its

implementing regulations "to enjoin any person, including the United States and any other

governmental instrumentality or agency . . . alleged to be in violation" of its provisions. 16

U.S.C. § 1540(g)(1)(A); *see also id.* § 1532(13) (broad statutory definition of "person"); *cf.*

*Bennett*, 520 U.S. at 164–65 ("The first operative portion of the [ESA citizen suit] provision says

that 'any person may commence a civil suit'—an authorization of remarkable breadth when

---

[7]    Puzzlingly, Defendants cite this Section 4 case in their string cite of cases meant to stand
for the proposition that, "due to the interrelated nature of ESA sections 7(a)(2) and 9 in cases
concerning federal agencies[,] that discovery and extra-record evidence are not permitted in ESA
and analogous Clean Water Act ("CWA") citizen suit cases." Def. Br. at 6.

compared with the language Congress ordinarily uses."). Because the ESA citizen suit provision was drafted far more broadly than the narrowly-drawn judicial review provision at issue in *Carlo Bianchi*, Defendants' citation is entirely misplaced.

Even where Defendants' cited cases did involve federal environmental citizen suit provisions, Defendants do not accurately summarize or appropriately apply them. In *Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engr's*, 87 F.3d 1242 (11th Cir. 1996), cited by Defendants at Def. Br. at 7, the plaintiffs challenged a wholly past decision made by the Army Corps of Engineers ("Corps") to issue a permit for a highway construction project. Contrary to Defendants' assertion, the appellate court did not hold that the review of the plaintiff's ESA claim was limited to the administrative record. *See* Def. Br. at 7. This was not an issue on appeal because the plaintiffs never sought discovery on their sole ESA claim—a procedural claim alleging that the Corps failed to consult before issuing its decision. *See Preserve Endangered Areas of Cobb's History v. U.S. Army Corps of Engr's*, 916 F. Supp. 1557, 1569 (N.D. Ga. 1995) (describing claim). The plaintiffs only sought discovery on their claim that the Corps should have prepared an environmental impact statement under the National Environmental Policy Act before issuing the permit. Brief of Appellants, No 96-8094, 1996 WL 33423460 (11th Cir. Mar. 25, 1996). There was no ESA Section 9 claim at all.

Similarly, in *Newton County Wildlife Ass'n v. Rogers*, cited at Def. Br. at 7, the only ESA claim was a procedural challenge alleging that the Forest Service failed to consult before approving timber sales. 141 F.3d 803, 807, 810–11 (8th Cir. 1998). Again, contrary to Defendants' assertions, the plaintiffs there sought only to introduce extra-record evidence relevant to their NEPA claim, and not their ESA Section 7 claim, *id.* at 807–08; there was no Section 9 claim at all. *See id.* at 810–11 (describing ESA claim).

10

*Nat'l Wildlife Fed. v. Hanson*, 859 F.2d 313 (4th Cir. 1988) did not, in fact, involve an "analogous CWA citizen suit provision," as Defendants claim. Def. Br. at 7. There, the district court reviewed the plaintiffs' challenge to a determination by the Corps that a particular tract of land was not a wetland and therefore not subject to the Corps' regulatory authority under Section 404 of the CWA, 33 U.S.C. § 1344. 859 F.2d at 315; *Nat'l Wildlife Fed. v. Hanson*, 623 F. Supp. 1539, 1540 (E.D.N.C. 1985). That challenge arose under the second subsection of the CWA citizen suit provision, allowing an agency action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act . . . which is not discretionary." 33 U.S.C. § 1365(a)(2); *see Nat'l Wildlife Fed.*, 623 F. Supp. at 1544; *Nat'l Wildlife Fed.*, 859 F.2d at 315. That CWA citizen suit subsection is analogous to 16 U.S.C. § 1540(g)(1)(C), not 16 U.S.C. § 1540(g)(1)(A) under which Plaintiffs' claims arise here. Thus, as explained above, final agency actions under this subsection of the CWA are appropriately subject to the APA's scope and standard of review.[8]

*Am. Canoe Ass'n*, *Inc. v. EPA*, cited by Def. Br. at 7, explicitly relied on *Newton County Wildlife Ass'n*, *Carlo Bianchi*, *Preserve Areas of Cobb's History*, and *Nat'l Wildlife Fed.* to rule that the plaintiffs challenging the defendants' failures to act under the CWA and ESA under those statutes' respective citizen suit provisions were not entitled to discovery without a further showing of particularized need for documents beyond the administrative record. 46 F. Supp. 2d 473, 475–77, 476 n.9 (E.D. Va. 1999). Like Defendants, however, the *American Canoe Ass'n*

---

[8]    *Stoeco Dev., Ltd. v. Corps*, cited by Def. Br. at 7, did not involve a citizen suit under either the ESA or the CWA. 792 F. Supp. 339 (D.N.J. 1992). Rather, the plaintiffs challenged a jurisdictional wetland determination by the Corps in the context of defending an enforcement action brought by the Corps for unlawful filling of wetlands. *Id*. at 340. Although the court stated that, in a citizen suit, the wetlands determination would be reviewed under the APA arbitrary and capricious standard, *id*. at 342–43, this standard applies only in suits filed under the CWA citizen suit subsection that is not analogous here. Defendants' citation to this case is as inapposite as its citation to *Nat'l Wildlife Fed. v. Hanson*.

district court did not carefully parse these cited cases to determine whether they do, in fact, apply

to the legal claims at issue here—which, as shown above, they do not. Moreover, as in the other

cases Defendants cite, neither a Section 9 nor a substantive Section 7(a)(2) claim were involved.

**C.    Plaintiffs' Section 9 Claim Is Not Reviewed on a "Record" and Plaintiffs Are Entitled to Discovery**

The Court's review of Plaintiffs' Section 9 claim challenging Defendants' present,

ongoing violations of their obligation to prevent unpermitted incidental take is not based on an

administrative record, and Plaintiffs are entitled to discovery to prove this claim. Defendants do

not cite a single case in which a court found discovery inappropriate in a Section 9 case, nor

otherwise demonstrate why discovery should not occur here. Nor could they, as the courts that

have expressly considered the issue have held that plaintiffs are entitled to discovery in Section 9

cases against federal agencies.

As explained in Plaintiffs' opening brief, to prove a violation of Section 9 of the ESA,

plaintiffs are required to demonstrate by a preponderance of the evidence the existence of

ongoing unauthorized incidental take and the likelihood of future unauthorized incidental take of

right whales resulting from Defendants' ongoing authorization and management of the lobster

fishery. Pl. Br. at 13–14; *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 925–27 (9th Cir. 1999).

In proving any Section 9 enforcement claim, Plaintiffs are entitled to obtain through

discovery the same relevant evidence, regardless of whether the defendant is a federal agency,

state official, or private entity. Pl. Br. at 12–13. The ESA citizen suit authorizes a citizen suit "to

enjoin *any person*, including the United States and any other governmental instrumentality or

agency . . . who is alleged to be in violation of any provision of [the ESA] or regulation issued

under the authority thereof," and does not distinguish between various identities of defendants.

16 U.S.C. § 1540(g)(1)(A) (emphasis added); *see also id.* § 1532(13) (defining "person" to

12

include federal agencies and employees); *id.* § 1538(a) (prohibiting "any person" from taking

endangered species); *Bennett*, 520 U.S. at 170–71 (federal agencies are subject to take

prohibition). It would be nonsensical for a court to impose different evidentiary burdens on the

plaintiff depending solely on the defendant's identity. As a corollary, it would be nonsensical for

a court to restrict a plaintiff's access to the relevant evidence necessary to meet this evidentiary

burden depending solely on the defendant's identity.

Accordingly, the courts that have expressly considered whether discovery against a

federal agency in a Section 9 case is permissible have consistently held that such cases are not

limited to a "record" and that discovery is appropriate. Pl. Br. at 8–9, 11; *Or. Nat. Desert Ass'n*

*v. Kimbell*, 593 F. Supp. 2d 1217, 1219 (D. Or. 2009); *Red Wolf Coal. v. U.S. Fish & Wildlife*

*Serv.*, 210 F. Supp. 3d 796, 801–02 (E.D.N.C. 2016). Both of these decisions discuss the relevant

statutory sections and the precise issue before this Court. But Defendants completely ignore

these decisions, and dismiss out of hand the other Section 9 cases cited by Plaintiffs because they

did not involve a federal agency as defendant. Def. Br. at 8–9. And as shown above, none of the

cases Defendants do cite to support their argument that no discovery may be had in ESA citizen

suits against federal agencies alleging Section 9 violations, *id.* at 6–7, actually involved Section 9

claims.

Where Defendants do attempt to distinguish the other cases Plaintiffs cited in their

opening brief, they fail. For example, Defendants dismiss Plaintiffs' reference to *Strahan v.*

*Roughead*, 910 F. Supp. 2d 358 (D. Mass. 2012), because the opinion involved a motion to

dismiss based on mootness. Def. Br. at 10. However, the court specifically directed the parties to

develop a schedule for discovery "on both the issue of mootness *and the merits*" of the plaintiff's

case against the U.S. Navy for taking right whales in violation of Section 9 of the ESA. 910 F.

Supp. 2d at 362, 382 (emphasis added). Defendants also try to dismiss the other Section 9 cases cited by Plaintiffs where discovery occurred in a case against a federal agency by claiming that the availability of discovery was not specifically decided by the court. Def. Br. at 10. But this misses the point. Whether the federal defendants chose to dispute the availability of discovery or not, these cases clearly permitted it to go forward as a matter of course.

Defendants additionally suggest that the presence of an ESA Section 7 claim in a lawsuit against a federal agency somehow necessitates that Section 9 claims be reviewed on an administrative record. *Id.* at 6. Defendants' erroneous argument ignores the caselaw evaluating the federal government's liability for take under ESA Section 9, as well as the plain language of Section 9 itself and the ESA citizen suit provision, which do not distinguish between federal and non-federal actors and do not limit the evidence to an administrative record. *See, e.g.*, *Sierra Club v. Yuetter*, 926 F.2d 429, 438–39 (5th Cir. 1991) (holding federal defendant liable for violating ESA Section 9 without discussing a connection to a Section 7 claim); *see also Defenders of Wildlife v. EPA*, 882 F.2d 1294, 1301 (8th Cir. 1989) (holding that the U.S. Environmental Protection Agency's registration of a pesticide caused unpermitted take of endangered species without discussing connection to Section 7); *Defenders of Wildlife v. EPA*, 688 F. Supp. 1334, 1342, 1353–54 (D. Minn. 1988) (district court's decision finding same based on non-record evidence the plaintiffs obtained through discovery).

Additionally, Defendants' suggestion that an ESA citizen enforcement action against a federal agency is limited to the evidence the defendant agency prepares is wholly contrary to the spirit and letter of the ESA, as well as basic principles of fairness in litigation. As the Supreme Court has noted, "the obvious purpose of the [ESA citizen suit provision] is to encourage enforcement by so-called 'private attorneys general,'" even when the violator is the United States

14

itself. *Bennett*, 520 U.S. at 165. In enforcing the ESA, no U.S. Attorney would accept that the evidence the government presents should be limited to evidence the defendant chooses to present in any judicial inquiry into allegations of an ESA violation.[9] Should Congress have wished to restrict a plaintiff's ability to prosecute an ESA citizen suit as vigorously against a defendant federal agency as against a private or state official defendant, it could have done so. But it did not. This Court should not accept Defendants' invitation to impose limitations that Congress did not see fit to prescribe on Plaintiffs' ability to prosecute their ESA citizen suit claim for Section 9 violations. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981) ("In the absence of strong indicia of a contrary congressional intent, we are compelled to conclude that Congress provided precisely the remedies it considered appropriate") (cited by *Defenders of Wildlife*, 882 F.2d at 1300).

Defendants' statement that the "record" it will submit "will contain documents on all the topics on which Plaintiffs seek discovery," Def. Br. at 12, is absurd. The administrative record of a final agency action reveals only how Defendants arrived at specific, past decisions. However, an unlawful "take" does not occur until *after* the agency implements its decisions, when the results of that implementation unlawfully capture, harm, kill or otherwise take a listed species without the requisite incidental take authorization. *See* 16 U.S.C. § 1532(19) (defining take). In

---

[9]     The language of the ESA provision that vests the Attorney General with the authority to enjoin ongoing violations of the statute is nearly identical to that of the relevant subsection of the citizen provision. *Compare* 16 U.S.C. § 1540(e)(6) ("The Attorney General of the United States may seek to enjoin any person who is alleged to be in violation of any provision of this chapter or regulation issued under authority thereof"), *with* 16 U.S.C. § 1540(g)(1)(A) ("[A]ny person may commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof"). *United States v. Town of Plymouth, Massachusetts*, cited by Plaintiffs at Pl. Br. at 13, arose as an enforcement action under 16 U.S.C. § 1540(e)(6). 6 F. Supp. 2d 81, 90 (D. Mass. 1998) (holding that to meet its burden U.S. must demonstrate "proof of taking") (citation omitted).

effect, there can be no administrative record for incidents of unlawful take, as they do not constitute a final agency decision but instead subsequently flow from a decision's implementation. As such, in determining whether Plaintiffs are entitled to injunctive relief on their Section 9 claim, the Court may appropriately consider any evidence that Plaintiffs can develop through discovery or expert reports to prove that unlawful take is likely to continue to occur, as the result of Defendants' ongoing management of the lobster fishery. *See Defenders of Wildlife v. Martin*, 454 F. Supp. 2d 1085, 1098–99 (E.D. Wash. 2006) (holding that the plaintiff showed, based on expert evidence, that an ESA Section 9 violation was likely in the future).

**D.    Plaintiffs' Substantive Section 7(a)(2) Claim Is Not Reviewed on a "Record" and Plaintiffs Are Entitled to Discovery**

Review of Plaintiffs' substantive Section 7(a)(2) claim is likewise not based on an administrative record, and Plaintiffs are entitled to discovery to prove this claim. Defendants' arguments to the contrary confuse the standard of review with the scope of review and ignore the fact that Section 7(a)(2) imposes ongoing obligations on Defendants following any final agency action that was subject to the ESA.

1.    <u>The Standard of Review and the Scope of Review Are Separate and Distinct Concepts</u>

Defendants' arguments and citations repeatedly blur the essential distinction between a standard of review and a scope of review. Only the latter is at issue in this motion, and the two concepts cannot be equated, despite Defendants' attempt to do so. The Tenth Circuit has succinctly distinguished these two concepts, stating that "[t]he *scope* of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision. The *standard* of judicial review refers to how the reviewing court will examine that evidence." *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1136 (10th Cir. 1991)

(emphasis added); *see also Educ. Assistance Found. for the Descendants of Hungarian Immigrants in the Performing Arts, Inc. v. United States*, 904 F. Supp. 2d 95, 97–98 (D.D.C. 2012) (discussing distinction).

Defendants inaccurately cite cases involving the APA standard of review as if they included holdings regarding the scope of review and without regard to the factual circumstances from which the claims arose. *See, e.g.*, Def. Br. at 5–6. For example, Defendants inaccurately cite *Cabinet Mountains*, 685 F.2d 678, for the sweeping proposition that "extra record affidavits and discovery would be entirely improper" in all actions alleging violations of the ESA, without reference to which section of the ESA gave rise to the claims at issue. Def. Opp. at 5–6. However, *Cabinet Mountains* did not involve any ESA Section 9 claim or any claim that a federal defendant's ongoing management and oversight of an activity violated its duty to ensure against jeopardy under Section 7(a)(2), as Plaintiffs also allege in this case. Rather, the plaintiffs' sole ESA claim involved a wholly past decision to approve a temporary drilling plan. 685 F.2d at 679, 687. Moreover, the court's holding was limited to the *standard* of review that the court should apply in determining whether an agency's wholly past decision violated its duty to ensure against jeopardy. *See id.* at 686 (holding "that the appropriate *standard* of review under the ESA is the arbitrary and capricious *standard*" of the APA) (emphasis added). The court's holding did not address the scope of review.[10]

Defendants' suggestion—that the *Cabinet Mountain* court's determination that "de novo review" does not apply also means that the court held that the scope of review is limited to an

---

[10]    Indeed, the district court specifically found that it need not address the issue of whether it could consider documents the plaintiffs wanted to introduce because the documents were "cumulative of evidence that was considered in the administrative proceedings" that were already part of the record in the case. *Cabinet Mountains*, 510 F. Supp. at 1189 n.2.

administrative record—is disingenuous. Read in context, the court's discussion regarding de novo review involved only whether it should assess for itself whether the agency substantively complied with the ESA in rendering a final decision, or whether the more deferential arbitrary and capricious standard of review should apply. *See id.* at 685 (noting that the plaintiffs "in effect seek to have the trial court 'substitute its views regarding environmental impacts' for those of the agencies") (citation omitted); *see also Or. Nat. Desert Ass'n*, 593 F. Supp. 2d at 1219–20 (noting that an earlier decision "addresses the applicability of the [APA's] 'arbitrary and capricious' standard of review, but is not dispositive as to determining the scope of allowable evidence in ESA claim cases" and ruling that discovery was appropriate on the plaintiffs' ESA citizen suit claims); *Red Wolf Coal.*, 210 F. Supp. 3d at 801–02 (same).

Defendants' assertion that the Supreme Court addressed this issue in *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007), Def. Br. at 11, is also without merit. Like much of Defendants' cited authority, *Home Builders* does not address the appropriate scope of review in a case arising under 16 U.S.C. § 1540(g)(1)(A), as it did not involve an ESA citizen suit claim. Rather, the sole ESA claim, involving a challenge to a biological opinion on an EPA decision to transfer CWA permitting authority to the State of Arizona, arose under the APA. 551 at 653–55. The Supreme Court's discussion of the appellate court's ruling concerned whether the appellate court appropriately applied the arbitrary and capricious standard of review in resolving the merits and in vacating and remanding the EPA decision at issue. *Id*. at 657–60.[11] Moreover, the central questions before the Supreme Court dealt not with the sufficiency of the biological

---

[11]    Defendants' claim that the Ninth Circuit's decision in *Wash Toxics Coal.* is inconsistent with the subsequently-decided *Home Builders* opinion, Def. Br. at 11, is also wrong. Moreover, the Ninth Circuit affirmed its decision in *Wash Toxics Coal.* four years after the *Home Builders* decision. *Kraayenbrink*, 632 F.3d at 495–96, 497.

opinion, but with the statutory question of whether the later-enacted ESA could be read to amend the CWA's statutory criteria for transferring permitting authority, *id*. at 661–64, and the reasonableness of a regulation implementing the ESA providing that Section 7(a)(2) applies only to actions in which there is discretionary federal involvement or control. *Id.* at 665–69. Thus, the Supreme Court's statements regarding the standard of review for reviewing biological opinions were not ultimately germane to its decision holding that EPA was not obligated to consult in the first instance on the decision at issue.

Likewise, Defendants' position that the Court cannot apply the arbitrary and capricious standard of review while also examining new evidence presented to the Court, Def. Br. at 12, is wrong. Courts in the Ninth Circuit regularly apply the APA standard of review while not limiting the scope of review to an administrative record in ESA citizen suit cases alleging violations of substantive duties under Section 7(a)(2). *See, e.g.*, *Kraayenbrink*, 632 F.3d at 497–98 (relying on expert reports submitted by the plaintiffs to determine whether a federal agency considered relevant factors in evaluating ESA citizen suit claim alleging violation of Section 7(a)(2)); *Or. Natural Desert Ass'n v. Tidwell*, 716 F. Supp. 2d 982, 987–88 (D. Or. 2010) (same). And the D.C. Circuit and its district courts have repeatedly affirmed that, even in cases based on review of an administrative record pursuant to Section 706(2)(A) of the APA, 5 U.S.C. § 706(2)(A), courts can look outside the record where the agency failed to examine all relevant factors or when the procedural validity of an agency's action remains in serious question, among other circumstances. *See, e.g.*, *e.g.*, *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989); *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 3–4 (D.D.C. 2017). The D.C. Circuit recognizes that such exceptions are necessary to effectuate meaningful judicial review. *Esch*, 876 F.2d at 991. Similarly, here, Plaintiffs should be entitled to discovery to effectuate meaningful

judicial review of their claim that Defendants are violating their ongoing, substantive duty to ensure against jeopardy of critically endangered right whales.

>    2.    Defendants Have an Ongoing Obligation to Comply with Section 7(a)(2) of the ESA

Courts recognize separate obligations of an action agency, such as NMFS, to ensure not only that its decisions (that is, final agency actions) will avoid jeopardy at the time they are made, but also that the agency's *ongoing implementation* of those decisions does not, thereafter, violate the duty to avoid jeopardy. Pl. Br. at 15; *see Defenders of Wildlife v. U.S. Dep't of the Navy*, 733 F.3d 1106, 1122 (11th Cir. 2013) ("After all, the ESA's requirement that the federal agency avoid jeopardy remains in force throughout the life of a project, and the project must be abandoned or reasonable and prudent measures to avoid jeopardy must be adopted, if later stages of a project result in jeopardy to listed species"). As the Ninth Circuit has explained, when an agency has responsibility for managing an ongoing action, the conditions that ensured against jeopardy can disappear if the premises that led to the initial "no jeopardy determination" do not remain constant. *Sierra Club*, 816 F.2d at 1385–86.[12]

Here, Plaintiffs bring several distinct claims that arise from different factual circumstances. Plaintiffs claim that the July 2014 biological opinion issued by NMFS (as wildlife agency) and its January 2017 authorization of the fishery (as action agency) under the MMPA were arbitrary and capricious under the APA. Pl. Br. at 5–6. Limiting the court's review to the administrative record for these claims makes sense because the Court must determine whether

---

[12]    Defendants' suggestion that Plaintiffs' choice to file this case after Defendants reinitiated consultation is somehow improper, Def. Br. at 13, is wholly without merit. The ESA citizen suit provision exists for precisely this type of situation—to enforce an agency's ongoing failure to ensure its policies and programs will not jeopardize the continued existence of ESA-listed species. *See Sierra Club*, 816 F.2d at 86; *Martin*, 454 F. Supp. 2d at 1097–99.

these final agency actions were arbitrary, capricious, or otherwise contrary to the law based solely on the information before the agency at the time of decision.

However, Plaintiffs also claim that Defendants (as action agency) are violating their ongoing obligation under ESA Section 7(a)(2), after the issuance of the 2014 biological opinion and after the 2017 authorization of the fishery under the MMPA, by continuing to allow lobster fishing in a manner that is jeopardizing critically endangered right whales. *Id.*; *see Martin*, 454 F. Supp. 2d at 1097–99 (finding that the Forest Service failed to comply with its ongoing obligation to ensure against jeopardy and allowing the plaintiffs to introduce evidence to prove their claim). By definition, the administrative record related to those 2014 and 2017 decisions cannot include post-decisional evidence of harm to right whales from the lobster fishery, because that evidence did not exist at the time of the decisions and could not have been considered by Defendants in making those decisions. Thus, Plaintiffs must be able to discover—without arbitrary limitations imposed by Defendants—all potentially relevant post-decisional evidence to carry their burden of showing that Defendants are in violation of their ongoing duty to avoid jeopardy. Limiting Plaintiffs' ability to support this ESA citizen suit claim to a purported "administrative record" that Defendants propose to compile despite the absence of any specific final agency action would be inappropriate.

In short, because Plaintiffs bear the burden of proof, basic principles of fairness and due process dictate that they are entitled to prove their case with all relevant evidence they can adduce through discovery, not solely on the evidence that Defendants choose to assemble into a so-called "record." Accordingly, as with Plaintiffs' Section 9 claim, Plaintiffs should be allowed to take discovery and submit evidence to prove their substantive Section 7(a)(2) claim.

### E. Plaintiffs' Request for Relief Is Not Limited to a "Record"

Similarly, the Court is not limited to a record when considering the likelihood of injury in the context of the injunctive relief Plaintiffs have requested. A decision to grant or deny an injunction under the ESA is fundamentally different from APA review of whether a final agency decision is arbitrary and capricious and warrants vacatur and remand of that decision.

In considering injunctive relief, the district court sits in equity, weighing the facts and evidence to determine whether an injunction should issue. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982); *Dade v. Irwin*, 43 U.S. 383, 391 (1844). For this reason, it is well established that parties may submit evidence regarding harm and the need for relief and are not limited to an administrative record. *See, e.g.*, *Leboeuf, Lamb, Greene & Macrae, LLP v. Abraham*, 215 F. Supp. 2d 73, 82 (D.D.C. 2002) (extra-record evidence allowed "in cases where relief is at issue") (citing *Esch*, 876 F.2d at 991); *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833–34 (9th Cir. 2002) (reviewing extra-record declaration filed to inform permanent injunction). Because the Court must determine whether Plaintiffs are entitled to injunctive relief under 16 U.S.C. § 1540(g)(1)(A) to enjoin Defendants' present, ongoing, and likely future violations of ESA Sections 7(a)(2) and 9, the Court should reject Defendants' request to narrow this case to a "record"—that Defendants alone will assemble—as contrary to this well-established principle.

## II. THE COURT SHOULD ORDER DEFENDANTS TO SUBMIT THE ADMINISTRATIVE RECORD ON PLAINTIFFS' APA-BASED CLAIMS

Defendants' request that the Court allow it until November 2018 to submit the administrative record, Def. Br. at 13–14, is wholly improper and well beyond the deadline of thirty days from the service of their answer that the local rules establish. *See* Local Civil Rule 7(n)(1). Plaintiffs therefore request that the Court order Defendants to promptly submit the

record on Plaintiffs' first and fourth claims for relief challenging the July 2014 and January 2017 final agency actions that will be reviewed under the APA.

Defendants' request to delay record production is based on the fact that NMFS has reinitiated consultation on the ongoing operation of the lobster fishery and because NMFS has "commenced the MMPA-mandated Atlantic Large Whale Take Reduction Team . . . process" by scheduling a meeting of the Team in October 2018. Def. Br. at 3, 13. But a future advisory meeting (which is not itself a final agency action nor necessarily immediately leads to final agency action) cannot alter the basis for Defendants' previously-issued final decisions or justify supplementing with post-decisional materials the documents on which Defendants relied in reaching those decisions. Moreover, that Defendants have reinitiated consultation and have scheduled a Team meeting are irrelevant to their present status of being in violation of Sections 7(a)(2) and 9 of the ESA. For endangered marine mammals like right whales, the MMPA already requires Defendants to hold a meeting of the Team every six months, or at other intervals Defendants deem necessary, to evaluate the progress of the take reduction plan. 16 U.S.C. § 1387(f)(7)(E).

And while the MMPA contains deadlines with which Defendants must comply once they issue a proposed rule to amend a take reduction plan, *id.* §§ 1387(f)(7)(B), (C), (F), they have repeatedly failed to comply with these mandatory deadlines or otherwise act timely to protect right whales. Indeed, Plaintiffs (or a subset thereof) have repeatedly sued Defendants for unlawfully withholding or unreasonably delaying final actions Defendants had previously stated were necessary to protect right whales. *See, e.g.*, *Humane Soc'y of the United States v. Gutierrez*, No. 07-00333-ESH (D.D.C., filed Feb. 12, 2007) (challenge to NMFS's failure to timely amend Atlantic Large Whale Take Reduction Plan); *Humane Soc'y of the United States v. Gutierrez*,

No. 08-01593-ESH (D.D.C., filed Sept. 15, 2008) (same); *Humane Soc'y of the United States v. Nat'l Marine Fisheries Serv.*, No. 14-11754-JCB (D. Mass., filed Apr. 10, 2014) (challenge to NMFS's unreasonable delay in expanding critical habitat for right whales). There is no valid reason to allow Defendants to wait until November to submit the administrative record for Plaintiffs' first and fourth claims challenging July 2014 and January 2017 final decisions.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant Plaintiffs' motion to seek discovery on their ESA Section 7(a)(2) and 9 claims because those claims are not based on review of an administrative record and Plaintiffs are entitled to discovery to prove these claims.

DATED: June 29, 2018                                    Respectfully submitted,


                                                        /s/ Kristen Monsell
                                                        Kristen Monsell, *admitted pro hac vice*
                                                        Center for Biological Diversity
                                                        1212 Broadway, Ste. 800
                                                        Oakland, CA 94612
                                                        (510) 844-7137
                                                        kmonsell@biologicaldiversity.org

                                                        Sarah Uhlemann, DC Bar No. 501328
                                                        Center for Biological Diversity
                                                        2400 80th Street NW, #146
                                                        Seattle, WA 98117
                                                        Phone: (206) 327-2344
                                                        Email: suhlemann@biologicaldiversity.org

                                                        Jane P. Davenport, DC Bar No. 474585
                                                        Defenders of Wildlife
                                                        1130 17th Street, NW
                                                        Washington, DC 20036
                                                        (202) 722-3274
                                                        jdavenport@defenders.org

Laura Friend, DC Bar No. NY0217
The Humane Society of the United States
1255 23rd Street, NW Suite 450
Washington, DC 20037
(202) 676-2331
lfriend@humanesociety.org

*Attorneys for Plaintiffs Center for Biological
Diversity, Defenders of Wildlife, The
Humane Society of the United States*

/s/ Erica A. Fuller
Erica A. Fuller (DC Bar No. MA0001)
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
Tel.: 617-850-1754
Fax: 617-350-4030
efuller@clf.org

Emily K. Green (DC Bar No. ME0002)
Sean Mahoney (*Pro Hac Vice*)
(Maine Bar No. 8661)
Conservation Law Foundation
53 Exchange St., Suite 200
Portland, ME 04101
Tel.: 207-210-6439
Fax: 617-350-4030
egreen@clf.org
smahoney@clf.org

Roger Fleming (DC Bar No. ME0001)
Earthjustice
1625 Massachusetts Avenue NW, Suite 702
Washington, DC 20036
Tel.: 202-667-4500
Fax: 202-667-2356
rfleming@earthjustice.org

*Attorneys for Plaintiff Conservation Law
Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Kristen Monsell*
Kristen Monsell