UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>  Plaintiffs,<br><br>  v.<br><br>WILBUR ROSS, *et al.*,<br><br>  Defendants. | Civil Action Nos. 18-112 (JEB)<br>18-283 (JEB) |

**MEMORANDUM OPINION**

  Alarmed by the continued decline in the population of the North Atlantic right whale, four environmental and conservation groups have brought these two consolidated cases seeking to reverse that trend. They do so by challenging the National Marine Fisheries Service's oversight and authorization of the American lobster fishery, an industry Plaintiffs contend contributes heavily to the whale's demise. Specifically, Plaintiffs bring suit against the Secretary of Commerce, NMFS, and the Assistant Administrator for Fisheries at the National Oceanic and Atmospheric Administration, alleging that these Defendants have violated the Administrative Procedure Act, the Marine Mammal Protection Act, and the Endangered Species Act.

  Plaintiffs currently seek discovery and the admission of extra-record evidence pursuant to their two ESA counts. Defendants counter that such materials should not be considered by the Court, contending that all of Plaintiffs' claims must be examined solely on the basis of the current administrative record. The Court attempted to assist the parties in reaching a compromise on this issue, but apparently to no avail, as they continue to hold fast to their respective positions. See ECF No. 40 (Status Report).

1

Thus forced to address the merits of the discovery dispute, the Court concludes that while Plaintiffs' two APA-based counts are confined to the record, evaluation of the two ESA counts may be based on evidence beyond that scope. It will, accordingly, grant Plaintiffs' Motion for Discovery.

**I.     Background**

Many of the facts underlying this case have been described in depth in this Court's prior Opinion, see Ctr. for Biological Diversity v. Ross, 310 F. Supp. 3d 119 (D.D.C. 2018), and most are not relevant to the discovery question presented here. A brief stage-setting is all that is required.

Two statutes — the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, and the Marine Mammal Protection Act, 16 U.S.C. § 1361 *et seq.* — seek to protect species in danger of extinction, such as the right whale. The Secretary of Commerce is responsible for administering and enforcing the statutes. For most marine species, including the right whale, the Secretary has delegated this responsibility to the National Marine Fisheries Service, a line office within the National Oceanic and Atmospheric Administration, which itself sits in the Department of Commerce. See 50 C.F.R. § 402.01(b).

In order to determine the effects of the American lobster fishery on threatened and endangered species, NMFS must prepare biological opinions (BiOps) stating whether the proposed action is likely to jeopardize listed species or their habitat. See 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14; CBD Compl., ¶¶ 90-91. In 2014, the Agency issued a BiOp to analyze the effects on the North Atlantic right whale. Id., ¶ 98. The opinion estimated that right-whale entanglements from the lobster fishery would be unlikely to increase above 3.25 per year and concluded that the fishery does not threaten the survival of the whale. Id., ¶¶ 102-04.

In January 2018, the Center for Biological Diversity, Defenders of Wildlife, and the Humane Society of the United States brought suit, alleging that agency actions, including the 2014 BiOp, do not comply with the ESA, the MMPA, or the Administrative Procedure Act. Id., ¶ 1. The following month, the Conservation Law Foundation followed suit by filing a Complaint with substantially similar claims and requests for relief. See CLF Compl. Together, Plaintiffs set forth four causes of action alleging that Defendants are falling short in their duties to protect the right whale. See Mot. at 1. Their first and fourth counts arise under the APA, alleging that the 2014 BiOp regarding the authorization and management of the lobster fishery and its continued authorization under the MMPA are arbitrary, capricious, and not in accordance with the law. See CBD Compl., ¶¶ 117-125, 135-39; CLF Compl., ¶¶ 118-126, 140-48.

Their second and third counts, by contrast, relate to Defendants' "mandatory substantive obligations under the ESA." Mot. at 1. Specifically, Plaintiffs contend that Defendants are violating their ongoing duty under ESA § 7 to ensure against jeopardy of endangered right whales and their obligation under § 9 of the Act to prevent unauthorized "take" of the cetaceans. See CBD Compl., ¶¶ 126-34; CLF Compl., ¶¶ 128-32, 134-39. Both of these claims are brought pursuant to the "citizen-suit provision" of the ESA, which provides that any individual may bring a civil suit "to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this [Act] or regulation issued under the authority thereof." 16 U.S.C. § 1540(g)(1)(A). As relief, Plaintiffs seek to compel the Government to comply with its substantive duties to avoid jeopardy and to refrain from committing unauthorized take. In pursuit of these ends, they seek declaratory and injunctive relief, including an order directing Defendants to implement mitigation measures to protect the whales from entanglements in lobster gear. See CBD Compl. at 32; CLF Compl. at

38-39.

On June 8, 2018, Plaintiffs filed a Joint Motion on the Scope of Review, requesting that the court permit discovery on their two ESA claims. In an attempt to narrow or resolve the dispute, the Court – as is its practice in non-APA cases – held a conference call and a status hearing. See Minute Orders of July 19, 2018 & Sept. 5, 2018. Its efforts did not bear fruit. See Status Report of Sept. 18, 2018.

## II. Analysis

As both sides agree, the Court need not address Plaintiffs' APA and MMPA claims, the adjudication of which is confined to the administrative record. See Mot. at 3 n.2, 7. Where the sides part ways, however, is over whether Plaintiffs are entitled to discovery on the citizen-suit ESA counts. Because their Motion is in large part based upon the specific provisions of the ESA under which those counts arise – namely, §§ 7 and 9 – the Court will provide a brief statutory background before analyzing the availability of discovery.

### A. Statutory Background

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation" and "reveals a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." Tenn. Valley Auth. v. Hill, 437 U.S. 153, 180, 185 (1978). Pursuant to that prioritization, the citizen-suit provision of the Act, 16 U.S.C. § 1540(g)(1)(A), allows parties to file suit against actors – including federal agencies – to "enforce the substantive provisions of the ESA." Nat'l Ass'n of Home Builders v. Norton, 298 F. Supp. 2d 68, 72 (D.D.C. 2003), aff'd, 415 F.3d 8 (D.C. Cir. 2005). This provision "provides a cause of action to enjoin ongoing violations or to prevent imminent future violations," Yurok Tribe v. United States Bureau of Reclamation, 231 F. Supp.

3d 450, 463–64 (N.D. Cal. 2017), and is "frequently used to compel agency action." Nw. Coal. for Alternatives to Pesticides v. U.S. EPA, 920 F. Supp. 2d 1168, 1170 (W.D. Wash. 2013).

In pursuit of the ESA's conservation goals, § 7(a)(2) of the Act prohibits federal agencies from taking actions that are "likely to jeopardize the continued existence of any endangered species." 16 U.S.C. § 1536(a)(2). Jeopardy exists when it is reasonable to expect that an agency action would "reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species." 50 C.F.R. § 402.02. To comply with this prohibition, the ESA requires agencies to consult with and obtain the opinion of the relevant wildlife consulting agency, either the U.S. Fish and Wildlife Service or NMFS, prior to taking any discretionary action that may affect an endangered species. See 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(a). After such consultation, the wildlife agency provides a biological opinion analyzing whether the proposed agency action is likely to cause jeopardy and, if so, identifying alternatives to avoid such an outcome. See 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(g), (h). Agencies' obligations under § 7, however, are not fulfilled merely by engaging in this procedural consultation process. Rather, the ESA also imposes substantive requirements pursuant to the "no-jeopardy" provision. Under § 7, the agency has an ongoing duty to avoid jeopardy that continues regardless of the status of consultation, so long as the agency retains discretionary control over the action. See, e.g., Cottonwood Envtl. Law Ctr. v. U.S. Forest Service, 789 F.3d, 1075, 1087-88 (9th Cir. 2015). The provision thus contains a procedural, consultative requirement and a substantive obligation to insure against jeopardy. See Defs. of Wildlife v. Martin, 454 F. Supp. 2d 1085, 1094 (E.D. Wash. 2006) ("Section 7(a)(2) of the ESA imposes a substantive duty in addition to its

procedural consultation requirement.").

Section 9 of the ESA provides additional, substantive restrictions on agency actions affecting endangered species. The provision prohibits any person, including federal agencies, from "tak[ing]" endangered species, defined as actions that "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect" a listed species, as well as any "attempt to engage in any such conduct." 16 U.S.C. § 1538(a)(1)(B); id. § 1532(19). This take prohibition is not, however, absolute. Instead, the relevant wildlife agency may permit a federal agency to take individual members of a listed species, provided that the action does not jeopardize that population. Id. § 1536(b)(4), (o)(2); 50 C.F.R. § 402.14(i). Such permission typically occurs through the issuance of an "incidental take statement," which is attached to a biological opinion and details the parameters of the permitted take. See 50 C.F.R. § 402.14(i).

B. Citizen-Suit Provision

As an initial matter, Plaintiffs assert that the fact that their ESA § 7 and § 9 claims are brought pursuant to the Act's citizen-suit provision is sufficient to entitle them to discovery. See Mot. at 6. The Supreme Court has characterized this provision as "a means by which private parties may enforce the substantive provisions of the ESA against regulated parties – both private entities and Government agencies." Bennett v. Spear, 520 U.S. 154, 173 (1997). According to Plaintiffs, this enforcement capacity includes the opportunity to "obtain relevant evidence through discovery without restriction." Mot. at 8.

Plaintiffs' reasoning is that because claims and relief sought under the citizen-suit provision "are forward-looking," their evaluation should not be constrained to the administrative record. Id. They additionally note that because they bear the burden of proof, "[d]enying discovery would effectively grant Defendants the opportunity to invent a purported record for

6

these claims." Id. at 9. Allowing discovery, conversely, would "decrease[] the likelihood that Plaintiffs will later need to show that the self-serving 'record' Defendants compiled was deficient." Id. at 10. Defendants counter that the citizen-suit provision does not *per se* condone discovery. On the contrary, they assert that "settled principles of administrative law compel the conclusion that extra record affidavits and discovery would be entirely improper." Resp. at 5.

To the extent that Plaintiffs assert that <u>all</u> citizen-suit ESA cases may involve materials outside the administrative record, Defendants are correct that this is not so – at least in this Circuit. In <u>Cabinet Mountains Wilderness v. Peterson</u>, 685 F.2d 678 (D.C. Cir. 1982), the court addressed a citizen-suit challenge to a decision by the Forest Service approving a mineral-exploration project. The court concluded that the appropriate level of review, in that case, was the arbitrary-and-capricious standard provided by the APA. Id. at 686; <u>see also</u> <u>Newton Cty. Wildlife Ass'n v. Rogers</u>, 141 F.3d 803, 808 (8th Cir. 1998) (rejecting argument that plaintiff "should be entitled to go outside the administrative record because it has invoked the citizen-suit provisions of the Endangered Species Act"); <u>but see</u> <u>Washington Toxics Coal. v. EPA</u>, 413 F.3d 1024, 1034 (9th Cir. 2005) (finding that because ESA citizen-suit provision "authorizes a private right of action," APA does not govern judicial review of plaintiffs' § 7 claims). Concluding that the district court had not "erred by refusing to conduct *de novo* review of the Forest Service's actions," our Circuit resolved the case on the basis of the administrative record and the standards of the APA. <u>Cabinet Mountains</u>, 685 F.2d at 684-87.

Although <u>Cabinet Mountains</u> stands for the proposition that simply invoking the ESA citizen-suit provision does not entitle Plaintiffs to discovery, it does not mean that extra-record evidence is necessarily <u>precluded</u> in such cases. As discussed below, the Court concludes that Plaintiffs' specific claims here, and the distinctions between such allegations and those at issue

7

in Cabinet Mountains, counsel in favor of permitting discovery. See San Francisco BayKeeper v. Whitman, 297 F.3d 877, 886 (9th Cir. 2002) (employing abuse-of-discretion standard for district court's decision to consider evidence outside administrative record); Seattle Audubon Soc'y v. Norton, 2006 WL 1518895, at *2 (W.D. Wash. May 25, 2006) (noting that "the scope of the record to be admitted for an ESA citizen suit is a question of the district court's discretion").

### C. Section 7 Claim

Leaving aside their assertion that they are entitled to discovery under the citizen-suit provision writ large, Plaintiffs also argue that their § 7 claim provides a specific basis for going beyond the administrative record. This allegation states that Defendants' "ongoing authorization and management of the American lobster fishery," CLF Compl., ¶ 1, is violating their substantive ESA Section 7 obligation to avoid jeopardy to right whales. Id., ¶¶ 127-32; CBD Compl., ¶¶ 126-29. Plaintiffs contend that because resolving this claim requires an assessment of the "totality of [the] circumstances with regard to Defendants' recent and ongoing actions and inactions related to right whales and the consequent likelihood of jeopardy to the species," Mot. at 16, an administrative record will not suffice. In support, they offer examples of evidence that would be relevant to their § 7 contention but that are not contained in the administrative records from the 2014 BiOp or the 2017 fisheries determination, such as "new scientific information showing right whales have declined[,] . . . continue to be entangled in fishing gear, and may face functional extinction." Id. at 17. In light of these alleged gaps in agency records, Plaintiffs assert that discovery is the reasonable course forward.

Defendants respond first that the cases Plaintiffs muster as support for their position "did not consider or discuss the propriety of considering extra-record evidence or allowing discovery." Resp. at 10. Because the opinions did not "wrestle[] with the question presented in

8

Plaintiffs' Motion," Defendants contend that they "do not provide persuasive authority in support of the Motion." Id. The agency also asserts that "[a]s a practical matter . . . there is no need for 'expert' witness testimony or discovery," as "[t]he Administrative Record will contain documents on all of the topics on which Plaintiffs seek discovery." Resp. at 12. Relatedly, Defendants take the position that, although Plaintiffs assert that there is "no end point for the Administrative Record" and thus request discovery, this apparent conundrum is in fact the product of "[t]he timing of Plaintiffs' Complaints," which were filed "after NMFS reinitiated consultation and commenced the Atlantic Whale Take Reduction Team process." Id. at 13.

The Court finds none of Defendants' arguments ultimately convincing. Although it appreciates the pragmatism and efficiency issues raised by the Government, such concerns do not obviate Plaintiffs' right to an opportunity to develop information necessary to prove their claims. As discussed below, the Court concludes that the posture of this case and the specific allegations at issue weigh in favor of permitting discovery to ensure Plaintiffs' access to such materials.

The Court begins with the implications of Cabinet Mountains with respect to the availability of discovery in this case. The Circuit there addressed a challenge to a Forest Service decision approving a mineral-exploration project and drilling program in Montana, which the plaintiffs alleged violated § 7 of the ESA. As noted above, the court found that "[s]ince the ESA does not specify a standard of review, judicial review is governed by section 706 of the [APA]," and "the appropriate standard of review under the ESA is [thus] the arbitrary and capricious standard provided by" that section. See 685 F.2d at 685-86. The court ultimately determined that the Forest Service's action did not violate § 7 as it was "reasonable and supported by the

9

record," and "[s]ufficient evidence exists to support the [agency's] decision that the . . . proposal, as modified, will not endanger the Cabinet Mountains grizzly bear population." Id. at 687.

The Court acknowledges that the language in Cabinet Mountains is fairly sweeping and, at first glance, may seem to stand for the principle that all ESA suits must be considered under the APA standards for review. A closer analysis of the case, however, reveals that it is not quite so broad a holding. First, as Plaintiffs note, the district court in Cabinet Mountains in fact specifically did not address whether it could consider documents plaintiffs in that case wanted to introduce because the materials were "cumulative of evidence that was considered in the administrative proceedings" and were therefore already in the record. See Cabinet Mountains Wilderness v. Peterson, 510 F. Supp. 1186, 1189 n.2 (D.D.C. 1981). As this determination indicates, the case did not squarely present the issue of the availability of discovery (or lack thereof) on appeal. Rather, the Circuit was concerned with the appropriate standard of review to be applied – a concept distinct from the question of the permissible scope of the record before the district court. See, e.g., W. Watersheds Project v. Kraayenbrink, 632 F.3d 472, 497–98 (9th Cir. 2011) (relying on expert reports submitted by plaintiffs to determine whether federal agency considered relevant factors in evaluating ESA citizen-suit claim alleging violation of § 7(a)(2) under arbitrary-and-capricious standard); Or. Natural Desert Ass'n v. Tidwell, 716 F. Supp. 2d 982, 987–88 (D. Or. 2010) (same).

Second, there are meaningful distinctions between the claims presented in Cabinet Mountains and those raised in this case. As discussed in more depth below, the plaintiffs in Cabinet Mountains, unlike those here, did not bring a claim under § 9 of the ESA. In addition, the agency actions involved are very different. Here, Plaintiffs claim that the agency is "violating [its] ongoing obligation under ESA Section 7(a)(2), after the issuance of the 2014

10

biological opinion and after the 2017 authorization of the fishery under the MMPA, by continuing to allow lobster fishing in a manner that is jeopardizing critically endangered right whales." Reply at 21. As Plaintiffs note, "By definition, the administrative record related to those 2014 and 2017 decisions cannot include post-decisional evidence of harm to right whales from the lobster fishery, because that evidence did not exist at the time of the decisions and could not have been considered by Defendants in making those decisions." Id. Unlike in Cabinet Mountains, the allegation at issue here does not revolve around the jeopardy caused by a prior agency determination but, instead, an assertion that regardless of the reasonableness of the 2014 and 2017 actions, defendants are now violating § 7 of the ESA. This temporal distinction matters in terms of the appropriate scope of review. While the evidence necessary to adjudicate a Cabinet Mountains-type claim may well be contained in the administrative record or proceedings before the agency, the relevant information needed to determine whether there is ongoing and future jeopardy is far more likely to require discovery. As Plaintiffs put it, "In effect, there can be no administrative record for incidents of unlawful take, as they do not constitute a final agency decision but instead subsequently flow from a decision's implementation." Reply at 15-16. The Court agrees that, in a § 7 case alleging ongoing and prospective violations of the ESA, the administrative record may well be insufficient to resolve the relevant claims.

There is, additionally, a distinction to be made between the form of relief sought here versus that pursued in Cabinet Mountains. In that case, the plaintiffs alleged that the agency's approval of the drilling project violated the ESA and moved for summary judgment on that claim. There is no indication in the opinion that they sought an injunction of any ongoing agency action, as they were instead challenging the Government's approval of the drilling plan.

11

Here, Plaintiffs seek injunctive relief under § 7(a)(2) of the ESA, which provides that the remedies for a substantive violation of the Act can include an injunction pending compliance. In order to show that they are entitled to such a remedy, Plaintiffs must "make a showing that a violation of the ESA is at least likely in the future." Nat'l Wildlife Fed'n v. Burlington N.R.R., Inc., 23 F.3d 1508, 1511 (9th Cir. 1994) (considering preliminary injunction). The relevant inquiry for the Court, subsequently, is whether there is a "definitive threat" to the right whale under Defendants' current administration of their agency policies and past actions. Id. at 1512 n.8. Unlike in Cabinet Mountains, therefore, the relief at issue is not the propriety of a prior government act, but the enjoining or modification of the agency's ongoing administration of its oversight with respect to an endangered species. Again, the Court finds that confining the record to past agency determinations is far less appropriate when plaintiffs seek an injunction based on present-day agency actions and the risk of future harm. See Or. Nat. Desert Ass'n v. Kimbell, 593 F. Supp. 2d 1217, 1219 (D. Or. 2009) (finding that magistrate judge did not err in holding that plaintiffs' § 7 claim supported "introduc[ing] evidence obtained after administrative decisions were issued," as "extra-record evidence is necessary for plaintiffs to meet the burden of proof required for obtaining injunctive relief pursuant to the ESA citizen-suit provision").

D. Section 9 Claim

In addition to asserting that they are entitled to discovery based on their § 7 claim, Plaintiffs also argue that their § 9 count requires the submission of extra-record evidence. Their allegations under this provision are predicated on the assertion that Defendants have long acknowledged that the lobster fishery takes right whales by entanglement, but that, in contravention of the ESA, there is no incidental-take statement or permit authorizing any such take. See Mot. at 10. Plaintiffs seek to hold NMFS liable for this alleged violation, as it is the

12

federal agency responsible for authorizing and managing the ongoing operations of the fishery. Id. In doing so, they make clear that they are not holding the agency to account for any "particular decision," but instead bringing suit to remedy its ongoing failure to prevent the unauthorized incidental take of right whales. Id. at 11. Plaintiffs assert that because they are seeking to enjoin ongoing and future actions resulting in such harm, there is no relevant administrative record upon which their § 9 claim can be decided and that they are thus entitled to discovery. In response, Defendants raise the same arguments as they levy against discovery under the § 7 claim – namely, that Cabinet Mountains precludes such extra-record evidence – that the cases cited by Plaintiffs are inapposite, and that judicial efficiency counsels in favor of relying on the administrative record.

The Court finds that Plaintiffs again have the better of this issue. First, it can easily dispose of Defendants' reliance upon Cabinet Mountains, as that case included no claim under § 9. In the years since that decision, moreover, at least one court in this district has permitted discovery on an ESA § 9 claim – a fact that is difficult to square with Defendants' argument that Cabinet Mountains precludes discovery in § 9 suits. In Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc., 677 F. Supp. 2d 55 (D.D.C. 2009), aff'd, 659 F.3d 13 (D.C. Cir. 2011), the court, in addressing a § 9 claim regarding the "taking" of Asian elephants, issued an order stating that "Plaintiffs are entitled to take discovery regarding all of defendants' practices that plaintiffs allege violate the Endangered Species Act and that statute's implementing regulations, including past, present and on-going practices." Order, Case No. 03-2006 (November 25, 2003). There is no indication in the record that either the district court or the court of appeals found this discovery improper in light of Cabinet Mountains. Instead, the district court explicitly noted that it had decided an earlier motion for summary judgment

13

"following several years of extensive discovery," and that it had then granted "additional discovery." Feld Entm't, 677 F. Supp. 2d at 61-62; see also Am. Soc. for Prevention of Cruelty to Animals v. Feld Entm't, Inc., 659 F.3d 13, 18 (D.C. Cir. 2011) (noting that district court "held a six-week bench trial, heard testimony from approximately thirty witnesses, [and] reviewed hundreds of documents entered into the evidentiary record"). To the extent that Defendants argue that discovery is precluded in all § 9 citizen-suit claims, they are thus mistaken.

Second, although the Government is correct that there is no case in this Circuit directly addressing the availability of discovery under § 9, there are a number of opinions in other courts finding that such evidentiary proceedings are appropriate. Indeed, courts have repeatedly held that the consideration of extra-record evidence is available – and necessary – to determine whether there is an ongoing, impermissible "take" of a species. In Or. Nat. Desert Ass'n, 593 F. Supp. 2d 1217, for instance, the court found that it was appropriate to allow plaintiffs to develop "[w]hatever evidence [they] can develop to prove that unlawful take has occurred." Id. at 1220 (citation omitted). In doing so, the court distinguished between the § 9 claims, which it found "[did] not challenge specific administrative decisions . . . [but] [i]nstead . . . advance[d] an enforcement action and require[d] proof of harm," and claims "challenging the propriety of a consulting agency [action]." Id. at 1220-21. The former – viz., claims "based upon events occurring in the aftermath of agency decisions" – the court found were "not limited by the APA scope of review." Id. The court in Red Wolf Coal. v. U.S. Fish and Wildlife Service, 210 F. Supp. 3d 796 (E.D.N.C. 2016), reached a similar conclusion. In addressing the plaintiff's § 9 claim, it found that discovery was appropriate "[w]here, as here, a Section 9 claim seeks injunctive relief, such relief is forward looking, and thus limitation to an administrative record may not provide a sufficient basis upon which a court can consider the propriety of the

14

defendant's actions." Id. at 802 (citing Or. Nat. Desert Ass'n, 593 F. Supp. 2d at 1220); see also Nw. Coal. for Alternatives to Pesticides v. U.S. EPA, 920 F. Supp. 2d 1168, 1173, 1176 (W.D. Wash. 2013) (finding that "extra-record evidence is permissible and appropriate" when plaintiffs brought ESA § 9 and § 7 claims asserting "ongoing" agency failure to protected endangered species); Wild Fish Conservancy v. Nat'l Park Service, 2012 WL 5384896, at *1 (W.D. Wash. 2012) (denying agencies' motion to limit scope of review to administrative record and stating that "[e]ven if confusion exists regarding discovery in ESA citizen suit cases, the Court finds that a completely developed record is the best solution, at trial and on appeal, for the just, speedy, and inexpensive determination of Plaintiffs' claims") (citation omitted); Aransas Project v. Shaw, 775 F.3d 641, 653–63 (5th Cir. 2014) (reviewing bench-trial ruling addressing ESA § 9 claim); Hill v. Coggins, 867 F.3d 499, 504 (4th Cir. 2017) (noting lower court "considered the conflicting evidence, weighed the credibility of witnesses, [and] assessed the relevant discovery history" in ESA § 9 case regarding grizzly bears).

The Court finds that the logic of these cases is sound in light of the intent behind § 9 – to prevent the take of endangered species without proper agency authorization. In bringing their claim, Plaintiffs do not seek this Court's review of a past agency action or specific determination, but rather are attempting to enjoin ongoing or future unlawful incidental take. The question is therefore whether NMFS is currently authorizing and is likely to continue authorizing activities that result in such harms. It is hard to imagine how such an inquiry could be resolved on the basis of an administrative record underlying a past agency action, as such records are unlikely to include evidence showing ongoing take or reflecting future potential harm. See Nw. Coal., 920 F. Supp. 2d at 1173 (permitting discovery on ESA § 7 and § 9 claims

15

and noting that "there is no final agency action and therefore no closed administrative record for the Court to review").

* * *

In sum, the Court concludes that Plaintiffs are entitled to discovery on their ESA counts. This result reflects the intent of the Act to ensure the ongoing conservation of endangered species and to ensure that agencies charged with safeguarding such species fulfill their role as stewards. Permitting discovery will also best serve the interests of the Court in adjudicating the § 7 and § 9 claims, as Plaintiffs ask it to evaluate both the current and future risk Defendants' actions pose to the right whale. In order to accurately assess the alleged crisis of these cetaceans, the Court will benefit from a record that reflects the actual, ongoing effects of the lobster fishery on the species.

## III. Conclusion

For these reasons, the Court will grant Plaintiffs' Motion for Discovery. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 4, 2018