UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILBUR ROSS, in his official capacity as Secretary of Commerce, *et al.*,<br><br>    Defendants,<br><br>    and<br><br>MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC.,<br><br>    Defendant-Intervenor. | Civil Action No. 18-112 (JEB) |

### MEMORANDUM OPINION

As this dispute about the effects of lobster fishing on the North Atlantic right whale sails along its charted course, the Government Defendants ask the Court to heave to and stay the suit pending their promulgation of two new conservation measures that they claim will moot the case. Because the Court finds that they have shown no compelling need for a stay, and because harm to a critically endangered species hangs in the balance, the Court will deny the Motion.

**I.    Background**

In January 2018, Plaintiffs Center for Biological Diversity, Conservation Law Foundation, Defenders of Wildlife, and The Humane Society of the United States filed their Complaint in this case. See ECF No. 1. The four asserted claims arose from the National Marine Fisheries Service's 2014 publication of a Biological Opinion as part of its duties under

1

the Endangered Species Act. In the 2014 BiOp, which considered the effects of the New England Fishery Management Council's American lobster fishery on ESA-listed species and critical habitats, NMFS found that the fishery was not likely to jeopardize the endangered North Atlantic right whale, despite also concluding that "the lobster fishery has the potential to seriously injure or kill an average of 3.25 right whales per year." ECF No. 71 (Pl. Resp.), Exh. 2 (2014 BiOp) at 4. Plaintiffs' first claim is that this "no jeopardy" opinion violated the ESA — as judged by the "arbitrary and capricious" standard of review in the Administrative Procedure Act, see Nat'l Ass'n of Home Builders v. Norton, 415 F.3d 8, 13 (D.C. Cir. 2005) — because (a) it improperly limited the scope of its jeopardy analysis in several ways, (b) its conclusion was not rationally connected to its stated facts, and (c) it failed to include a required "incidental take statement" for the whales. See Compl., ¶¶ 117–25. Given the purported invalidity of the 2014 BiOp, Plaintiffs next allege that NMFS has not complied with its duty under Section 7(a)(2) of the ESA to "insure" that the lobster fishery does not jeopardize the whale. See 16 U.S.C. § 1536(a)(2); Compl., ¶¶ 126–29. Plaintiffs' third and fourth claims contend that, because NMFS recognized in its BiOp the lobster fishery's lethality and yet continues to allow it to operate without change, the Service stands in violation of both the ESA and the Marine Mammal Protection Act (MMPA), each of which prohibits the unauthorized "take" of endangered species. See Compl., ¶¶ 130–39 (citing 16 U.S.C. §§ 1538(a)(1)(B), (g); then citing id. §§ 1371(a), 1372(a)).

This Court granted the parties' joint request "that discovery and briefing should both be bifurcated, with the first phase to address liability and a second, future phase to address remedy, if necessary." ECF No. 48 (Joint Mot. to Clarify), ¶ 2. After the close of discovery, Plaintiffs filed a Motion for Summary Judgment in June 2019. NMFS requested, and was granted,

additional time to file its opposition. It then filed the present Motion to Stay, along with a motion requesting that its opposition be due 14 days after the Court decides whether to grant a stay. The Court granted the latter motion, meaning that summary-judgment briefing is now on hold pending the resolution of the Motion to Stay.

NMFS's stay request arises from its intent to issue, by July 31, 2020, both (1) a new BiOp for the American lobster fishery and (2) a regulation amending the Atlantic Large Whale Take Reduction Plan (TRP). See ECF No. 68 (NMFS Mot. to Stay) at 2. By way of background, Section 118 of the MMPA requires NMFS to implement a TRP in order to reduce the harm to endangered species to a sustainable level. See generally 16 U.S.C. § 1387(f). The Service promulgates a TRP after consulting with an advisory Take Reduction Team (TRT). Id.

In its Motion, NMFS argues that: (1) its new BiOp and TRP will moot Plaintiffs' claims; (2) both instruments will "allow[] NMFS to implement the kind of measures Plaintiffs purport to champion at about the same time (or sooner) than would happen if the parties were to proceed with summary judgment briefing"; and (3) denial of a stay would cause NMFS "the hardship of having to file a summary judgment brief on the very issues the TRT discussed over a year and a half, which could upset the balance of the equities struck by NMFS and TRT." NMFS Mot. to Stay at 2.

## II. Legal Standard

A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997) (citing Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In "the exercise of [its] judgment," the Court must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." Belize Soc. Dev. Ltd. v. Gov't of

3

Belize, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (citation omitted) (quoting Landis, 299 U.S. at 254–55; then citing id. at 259). "The proponent of a stay bears the burden of establishing its need." Clinton, 520 U.S. at 708 (citing Landis, 299 U.S. at 255). A court's stay order "must be supported by 'a balanced finding that such need overrides the injury to the party being stayed.'" Belize Soc. Dev., 668 F.3d at 732 (quoting Dellinger v. Mitchell, 442 F.2d 782, 787 (D.C. Cir. 1971)). "[I]f there is even a fair possibility that the stay . . . will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward." Landis, 209 U.S. at 255. In order to determine whether a stay should issue, then, this Court considers (1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay — that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources.

### III. Analysis

This Opinion separately addresses the three considerations set out above.

#### A. Harm to Plaintiffs

The Court first considers "the injury to the party being stayed.'" Belize Soc. Dev., 668 F.3d at 732 (quoting Dellinger, 442 F.2d at 787). As noted above, if it determines that there is a "fair possibility that the stay . . . will work damage to" Plaintiffs' interests, NMFS's burden becomes even heavier, for it must then show "a clear case of hardship or inequity in being required to go forward." Landis, 209 U.S. at 255.

Plaintiffs straightforwardly argue that NMFS's alleged ongoing violations of the ESA and MMPA would continue unabated during the pendency of a stay, further endangering North Atlantic right whales and thus harming "Plaintiffs' interests in conserving the ever-diminishing right whale population." Pl. Resp. at 13. The 2014 BiOp found that "the lobster fishery ha[d]

4

the potential to seriously injure or kill an average of 3.25 right whales per year," 2014 BiOp at 4, a rate well above the single human-caused death the whale population can sustain each year. See ECF No. 72 (NMFS Reply), Exh. A (North Atlantic Right Whale 5-Year Review) at 17. Because waiting for passage of the two measures currently in the works at NMFS merely exacerbates this harm, Plaintiffs argue that a stay "would sanction an ongoing violation of the ESA." Pl. Resp. at 15 (quoting Animal Welfare Inst. v. Martin, 588 F. Supp. 2d 70, 97 (D. Me. 2008)). They cite several district courts concurring with this position. Id. at 15–16 (citing Conservation Council v. NMFS, 97 F. Supp. 3d 1210, 1231–32 (D. Haw. 2015); Cal. Trout v. U.S. Bureau of Reclamation, 115 F. Supp. 3d 1102, 1114–15 (C.D. Cal. 2015); and Animal Welfare Inst., 588 F. Supp. 2d at 96–97).

NMFS does not refute the evidence of the lobster fishery's harm to the whales — nor could it, since it was the one to publish that information. See North Atlantic Right Whale 5-Year Rev. at 17. It nonetheless counters that a stay "will not prejudice Plaintiffs." NMFS Mot. to Stay at 12. "Allowing NMFS to focus on implementing the results of the TRT process," it says, "is the best way to achieve the goals Plaintiffs purport to seek." Id. at 13. This is particularly so, it argues, because "[e]ven if the Court were to issue a decision on the merits shortly after the parties' briefing on the merits is complete on October 25, 2019, and the Plaintiffs were to prevail," the briefing for the remedy phase would likely go into early 2020, when NMFS expects to have "issued its proposed new rule and draft BiOp." Id. at 13 (citing id., Exh. A (Declaration of Jennifer Anderson), ¶ 16).

Although superficially appealing, this argument is ultimately unavailing. Most broadly, it is not clear how issuing a new TRP or BiOp at least nine months from now will alleviate the interim harm just described. This is especially true given that the July 2020 date is merely a goal

5

and not a hard deadline.  See Anderson Decl., ¶ 16 ("Because of the interplay between the state processes and the federal rulemaking, it is possible that these interim steps may be delayed, but we believe that our ultimate goal of a final rule in July 2020 is a realistic one.").

NMFS also reasons that a stay will not harm Plaintiffs because three of the four Plaintiffs were part of the TRT, and two of those three concurred in its results.  See NMFS Mot. to Stay at 12.  But Plaintiffs' concurrence with new TRT recommendations does not vitiate their right to challenge a past BiOp.  The "remarkable breadth" of the ESA's citizen-suit provision cannot be said to give way so easily.  Bennett v. Spear, 520 U.S. 154, 164 (1997).  Put differently, just because Plaintiffs participate in other efforts to reduce harm to the North Atlantic right whale does not preclude them from pursuing legal remedies for violations of other laws protecting the species.

NMFS has failed to convince the Court that there is no "fair possibility that the stay . . . will work damage to" Plaintiffs' interests.  Landis, 299 U.S. at 255.  Indeed, a stay may well inflict harm on the North Atlantic right whale and thus to their interests.

B.  Harm to NMFS

The next factor is whether any harm would befall NMFS if the Court were to deny a stay — in other words, has Defendant "establish[ed] its need"?  Clinton, 520 U.S. at 708 (citing Landis, 299 U.S. at 255).  Given the Court's determination regarding Plaintiffs' interests, NMFS "must make out a clear case of hardship or inequity in being required to go forward."  Landis, 299 U.S. at 255.

The Service's first argument here is that, if a stay does not issue, it will undergo "the hardship of having to divert resources to this litigation that could be used to implement the same kinds of meaningful measures that Plaintiffs claim to seek."  NMFS Mot. to Stay at 10.

Specifically, it asks for a "litigation free window for NMFS to complete these new initiatives" — *viz*, the new TRP and BiOp. Id.

The Court agrees with Plaintiffs that this position holds no water. As the Government itself acknowledges, "[I]t is true that 'being required to defend a suit, without more, does not constitute a "clear case of hardship or inequity."'" Id. (quoting Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005) (quoting Landis, 299 U.S. at 255)). This is "particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court]." Greenlaw v. United States, 554 U.S. 237, 244 (2008) (quoting United States v. Samuels, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g *en banc*)). NMFS nevertheless contends that the "more" in this case that creates hardship is "having to divert resources to this litigation that could be used to implement" protective measures for whales. See NMFS Mot. to Stay at 10. But NMFS does not explain how defense of this suit, which falls largely to lawyers at the Department of Justice, will divert substantial NMFS resources. See Anderson Decl., ¶ 17 (stating only that "litigation related tasks" could "divert [NMFS] employees from focused attention on their work" and thus "hinder the schedule we are trying to achieve"). This does not meet the standard of a "clear case of hardship or inequity." Landis, 299 U.S. at 255.

NMFS next maintains that proceeding to summary-judgment briefing would "force[] [it] to take certain positions on the complicated issues that States, industry groups, and conservation groups (including three of the four Plaintiffs) painstakingly discussed and negotiated in 2018 and 2019 that could undermine the delicate balance that NMFS and the TRT struck in April 2019." NMFS Mot. to Stay at 10. NMFS provides no more detail as to what "positions" on which "issues" it will have to take, nor does it specify how such positions would jeopardize the

agreements made by the TRT. Indeed, the Service has continued its TRT meetings during the pendency of this litigation. See NMFS Mot. to Stay at 7. The Court assumes, moreover, that TRT participants are sophisticated enough to know that NMFS cannot avoid taking a position in litigation every time it simultaneously participates in other projects dealing with the same species. To be clear, no part of the TRT or TRP process is at issue in this case. See *supra* Section I. The Court cannot put great store, without any details or evidence, in NMFS's statement that filing merits and remedy briefs in this case, which rests entirely on claims about a Biological Opinion rather than a TRP, could "negatively impact[]" others' "perception of [it] as an honest broker." NMFS Reply at 14.

For similar reasons, NMFS's third argument — that "a stay would respect the TRT process," NMFS Mot. to Stay at 11 — falls short. Defendants protest that Plaintiffs, three of whom are members of the Atlantic Large Whale TRT, "are not permitted to circumvent, undermine, or negate the decisions of the TRT." Id. Presumably, NMFS means that Plaintiffs are attempting to undermine the TRP process by bringing suit over a prior Biological Opinion. As a reminder, Biological Opinions are issued pursuant to the ESA, while TRPs are issued pursuant to the MMPA. Three of Plaintiffs' four claims in this case arise under the ESA, and the fourth arises under a part of the MMPA altogether separate from TRPs. See *supra* Section I. The Court sees no reason why Plaintiffs' participation in the TRT should prevent them from challenging a separate agency action promulgated under separate statutory requirements. And it certainly does not constitute a "clear case of hardship or inequity," Landis, 299 U.S. at 255, for NMFS to defend its actions under one statute while continuing with its distinct duties under another.

In short, none of NMFS's arguments regarding its need for a stay makes the requisite showing of clear hardship or inequity. Certainly, any such need does not "override[] the injury to the party being stayed." Belize Soc. Dev., 668 F.3d at 732 (quoting Dellinger, 442 F.2d at 787).

    C.  Judicial Economy

The final factor to be considered is whether a stay would promote efficient use of the parties' and the court's resources. See Belize Soc. Dev., 668 F.3d at 732–33. NMFS argues that a stay is efficient because "all of Plaintiffs' claims will be [rendered] moot" by the new BiOp and TRP it intends to issue by July 31, 2020. See NMFS Mot. to Stay at 11. In the face of these new measures, it says, Plaintiffs "will either amend their complaint[] or not challenge the new rule and BiOp," and the former option would create "an entirely different lawsuit." NMFS Reply at 3. It contends that "considerations of prudential mootness therefore favor a stay." NMFS Mot. to Stay at 11. Plaintiff counters that, first, it is not clear that the two measures will issue by the end of July, and, second, even if they did, they would not necessarily moot the issues in this case. As discussed in both of the previous sections, the promulgation of a new TRP alone does not affect Plaintiffs' claims, all of which arise from the 2014 BiOp. The Court will therefore address only the possibility of a new BiOp.

"Prudential mootness invokes 'a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration. Unlike Article III mootness, these doctrines address not the power to grant relief but the court's discretion in exercising that power.'" Conservation Law Found. v. Pritzker, 37 F. Supp. 3d 254 (D.D.C. 2014) (quoting Chamber of Commerce v. U.S. Dep't of Energy, 627 F.2d 289, 291 (D.C. Cir. 1980)). This doctrine "is relevant where it is 'unlikely that the court's grant of declaratory judgment will actually relieve

9

the injury'" but less so where "an injunction would provide the plaintiffs with the relief they seek." Defs. of Wildlife v. Jackson, 791 F. Supp. 2d 96, 114 (D.D.C. 2011) (quoting Chamber of Commerce, 627 F.2d at 291).

The Court is not convinced that it should exercise this discretion. Even if NMFS is able to comply with its self-described "ambitious schedule" for the new BiOp, see NMFS Reply at 15, it would have to fully remedy each of Plaintiffs' claims outlined above in order to render them moot. See *supra* Section I; Compl., ¶¶ 117–39. And, of course, the Service cannot now commit to the conclusion it will reach in that BiOp. In addition, it is far from clear that NMFS will be able to stick to this schedule. See Anderson Decl., ¶ 16 (noting the "possib[ility] that . . . interim steps may be delayed"); Pl. Resp. at 8 (noting previous delays in issuing BiOps, including 2014 American lobster fishery BiOp). Given, moreover, that Defendants' summary-judgment briefs on liability will be due November 14, the Court is not so pessimistic as NMFS to assume that only "in theory" could its remedy decision "be issued by summer" of 2020. See NMFS Reply at 3–4. Any lag between the Court's issuance of an injunction against NMFS and NMFS's promulgation of a new BiOp is precious time for the North Atlantic right whale, which has been suffering unprecedented fatalities in the last three years, particularly from entanglement. See 2017–2019 North Atlantic Right Whale Unusual Mortality Event, NOAA Fisheries (Oct. 4, 2019), https://www.fisheries.noaa.gov/national/marine-life-distress/2017-2019-north-atlantic-right-whale-unusual-mortality-event. An injunction during this period "would undoubtedly 'have some effect in the real world.'" Conservation Law Found., 37 F. Supp. 3d at 264 (quoting Wyoming v. U.S. Dep't of Interior, 587 F.3d 1245, 1250 (10th Cir. 2009)). It "would provide the plaintiffs with the relief they seek: cessation of [activity] that may jeopardize

the continued survival of endangered species until the Agency complies with the mandates of the ESA." Defs. of Wildlife, 791 F. Supp. 2d at 114.

Having considered all three factors, the Court finds that the scales weigh heavily in favor of denying a stay.

IV.     **Conclusion**

For the foregoing reasons, the Court will deny Defendants' Motion to Stay. A contemporaneous Order so stating will issue this day.


/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: October 31, 2019