UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GINA RAIMONDO, in her official capacity as Secretary of Commerce, *et al.*, <br><br> Defendants, <br><br> and <br><br> MASACHUSETTS LOBSTERMEN'S ASSOCIATION, INC., *et al.*, <br><br> Defendant-Intervenors. | Civil Action No. 18-112 (JEB) |

**MEMORANDUM OPINION**

As the parties in this matter dispute the Government's latest Biological Opinion, Richard Maximus Strahan, a whale advocate known as "Man Against Xtinction," seeks to intervene, asserting that whale interests are not being adequately represented by the Plaintiff organizations that brought this suit. With final resolution in sight, however, his request is too late. As such, the Court will deny his Motion to Intervene.

**I.     Background**

North American right whales — an endangered species — often become entangled in lobster-fishing gear, which can kill or seriously injure them. Ctr. for Biological Diversity v. Ross (CBD V), 480 F. Supp. 3d 236, 240 (D.D.C. 2020). Plaintiffs here are four non-profit organizations: Center for Biological Diversity, Defenders of Wildlife, the Humane Society of the

1

United States, and Conservation Law Foundation. Center for Biological Diversity advocates on behalf of endangered marine mammals, in particular the right whale. See ECF No. 1 (Complaint), ¶¶ 13–14. Defenders of Wildlife is a conservation organization that has dedicated significant resources to saving the right whale. Id., ¶¶ 15–16. The Humane Society of the United States is the largest animal-protection non-profit in the country, and it has also taken an interest in the right whale's plight. Id., ¶¶ 17–18. Conservation Law Foundation is a Massachusetts environmental non-profit invested in protecting New England's whales and the ocean. See No. 18-283, ECF No. 1 (CLF Complaint), ¶¶ 15–19. All said, these organizations have strong records of advocacy for and commitment to the right whale. For procedural clarity, the Court notes that CLF's separate suit was consolidated with this one in May of 2018. See 5/2/2018 Min. Order.

This case, which the other three organizations filed over three years ago, challenges a 2014 Biological Opinion that found that the use of lobster-fishing gear "may adversely affect, but is not likely to jeopardize, the continued existence of North American right whales." Ctr. for Biological Diversity v. Ross (CBD IV), 2020 WL 1809465, at *5 (D.D.C. Apr. 9, 2020) (quoting 2014 BiOp). The BiOp, however, did not include an incidental-take statement (ITS), which is generally required when a "take is reasonably certain to occur" in order to ensure compliance with the Endangered Species Act and the Marine Mammal Protection Act. See 50 C.F.R. § 402.14(g)(7); CBD IV, 2020 WL 1809465, at *5. To "take" an animal is to "harass, hunt, capture, or kill" it. See 16 U.S.C. § 1362(13) (MMPA definition); see also 16 U.S.C. § 1532(19) (similar ESA definition).

This Court ultimately determined that the BiOp violated the ESA by neglecting to include an ITS. CBD IV, 2020 WL 1809465, at *1. After more briefing from the parties, it ordered

2

Defendants to prepare a new, legally sufficient BiOp by May 31, 2021. CBD V, 480 F. Supp. 3d at 240. The Court allowed them over nine months to finish the BiOp so that they could also issue new rules amending the Atlantic Large Whale Take Reduction Plan to diminish the risk of whale entanglements. Id. at 247. Having now completed the new BiOp and contending that it complies with the Court's Order, Defendants sought entry of final judgment on June 2, 2021. See ECF No. 136 (Mot. for Entry of Final Judgment) at 3. Two weeks later, Plaintiffs opposed and requested enforcement of different relief entirely, arguing that Defendants have still failed to include an ITS for the lethal takings of the whales. See ECF No. 141 (Mot. to Enforce Judgment) at 7 n.7, 12 (acknowledging that new BiOp does include an ITS for non-lethal takings). Plaintiffs remain concerned for the whales because even under the new and improved BiOp and rules, lobster-fishing equipment is still expected to result in 3.17 lethal takings per year, over three times the sustainable level. Id. at 11–12; see also CBD IV, 2020 WL 1809465, at *5. The sole remaining dispute between the parties, therefore, is whether the new BiOp contains all required provisions to satisfy the ESA and this Court's Order.

Strahan filed this Motion to Intervene on May 25, 2021, arguing that Plaintiffs are not doing enough to protect the right whale in this litigation. See ECF No. 134 (Mot. to Intervene) at 2. He seeks to permanently enjoin Defendants from permitting the use of whale-threatening fishing equipment — specifically, vertical buoy ropes. Id. at 5. Strahan argues that his intervention is essential because the existing Plaintiffs are not currently seeking such an injunction, which he maintains is critical to prevent the needless deaths and injuries of right whales. Id. at 7. He asserts that he is entitled to intervene as of right, or, in the alternative, that this Court should grant him permissive intervention. Id. at 3–9. Both Plaintiffs and Defendants oppose such intervention. See ECF Nos. 139 (Pl. Opp.), 140 (Def. Opp.).

## II.     Legal Standards

Intervention is governed by Federal Rule of Civil Procedure 24, which provides the mechanisms for both intervention as of right (24(a)) and permissive intervention (24(b)).  As to the former, on timely motion, the court <u>must</u> allow intervention by a party who:

> (1) is given an unconditional right to intervene by a federal statute; or
>
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Strahan here seeks intervention only under the second prong.  The D.C. Circuit has listed four factors to guide the evaluation of such motions: (1) timeliness; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) impairment of such interest; and (4) inadequate representation by existing parties.  <u>Fund for Animals, Inc. v. Norton</u>, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting <u>Mova Pharm. Corp. v. Shalala</u>, 140 F.3d 1060, 1074 (D.C. Cir. 1998)).  Additionally, "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties."  <u>Id.</u> at 732 (quoting <u>City of Cleveland v. NRC</u>, 17 F.3d 1515, 1517 (D.C. Cir. 1994)).

On similar timely motion, a court <u>may</u> permit intervention by a party who:

> (A) is given a conditional right to intervene by a federal statute; or
>
> (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1).  Once again, Strahan seeks to intervene only under the second prong.  Under such circumstances, an intervenor must show "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or

4

fact in common with the main action." EEOC v. Nat'l Children's Ctr., Inc., 146 F.3d 1042, 1046 (D.C. Cir. 1998). The court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court considers Strahan's Motion under each standard.

**III.  Analysis**

    A.    <u>Intervention As Of Right</u>

Timeliness is a threshold matter for all intervention inquiries. Amador v. U.S. Dep't of the Interior, 772 F.3d 901, 903 (D.C. Cir. 2014). If a motion is untimely, "intervention must be denied," and the Court need not consider the other factors. Id. (quoting NAACP v. New York, 413 U.S. 345, 365 (1973)); see also United States v. Am. Tel & Tel. Co., 642 F.2d 1285, 1294 (D.C. Cir. 1980) ("We have held that an untimely motion for intervention . . . must be denied."). While timeliness analyses are context specific, the Court of Appeals has provided four guiding factors: (1) time elapsed in the suit; (2) "the purpose for which intervention is sought"; (3) whether intervention is necessary to preserve a specific right; and (4) "the probability of prejudice to those already parties in the case." United States v. British Am. Tobacco Australia Servs., Ltd., 437 F.3d 1235, 1238 (D.C. Cir. 2006) (quoting Am. Tel & Tel. Co., 642 F.2d at 1295).

    1.    *Time Elapsed*

It has been over three years since this lawsuit was filed, and Strahan is now attempting to intervene at the eleventh hour. Yet he offers no reason for waiting so long. In fact, he has previously filed related suits in three other districts, demonstrating his ability to seek intervention in a timely fashion. This suit, moreover, has attracted considerable media coverage, see, e.g., Barbara Moran, Court Ruling Gives Lobster Industry a Reprieve — and a Deadline, WBUR

5

(Aug. 21, 2020), https://wbur.fm/3d8RgUK, and it is thus unlikely that it could have escaped his attention. In addition, the briefing has been extensive — *viz.*, numerous merits rounds — and the Court has issued 89 pages of Opinions. Strahan never suggests that he was unaware of this case, and given his keen interest in whale issues and numerous related lawsuits, it seems improbable that he could have missed this one.

2.  *Purpose of the Intervention*

Even when a significant period has elapsed, intervention may be still timely if its purpose aligns with its timing. Am. Tel & Tel. Co., 642 F.2d at 1294 (concluding after several years of discovery that filing an appeal is appropriate purpose of intervention, but presenting new evidence or argument is not). Put another way, it can be proper to intervene even at very late stages if the purpose of intervention could not possibly have been achieved earlier. Id.

Strahan is out of luck here for two reasons. First, to the extent he argues that the purpose of his intervention is to "move the Court for a Final Judgment," Mot. to Intervene at 5, that is precisely what Plaintiffs are seeking at this point. Alternatively, if he wishes to permanently enjoin Defendants from licensing lobster fishing that uses vertical buoy ropes, he could have demanded such relief years ago. Id. He rejoins that he could not have effectively intervened earlier because he was waiting for the new BiOp, id., but he does not explain why he never sought intervention to challenge the 2014 BiOp at the outset of this litigation, let alone at any point prior to its vacatur.

3.  *Necessity of Intervention to Preserve Rights*

Late-stage intervention may still be proper if there is a specific right that is not being represented by the existing parties in the case. Am. Tel & Tel. Co., 642 F.2d at 1295. The classic example of this is when one of the original parties declines to appeal. Id. Strahan argues

6

that his intervention is necessary to prevent the needless deaths of whales because Plaintiffs are not representing their interests. See Mot. to Intervene at 5. That allegation is unfounded. Plaintiffs have fought fervently — and often successfully — to protect the right whale throughout this case. While Plaintiffs and Strahan might not be in perfect alignment, the interests of the whales are most certainly being represented zealously. In the end, it is unclear exactly what right Strahan believes is not being adequately represented in the narrow question that remains before the Court.

    4. *Prejudice*

Last, the Court must consider whether Strahan's delay in seeking intervention would unfairly prejudice the existing parties. Roane v. Leonhart, 741 F.3d 147, 151 (D.C. Cir. 2014); see also Timeliness of Motion, 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1916 (3d ed.) ("The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case."). Strahan argues that because he desires no discovery and is only seeking enforcement of the ESA against Defendants, his late-stage intervention would present no undue prejudice to the parties. See Mot. to Intervene at 7. Plaintiffs and Defendants respond that his requested injunction would likely require many more months of motions and drag out this case unnecessarily. See Pl. Opp. at 8; Def. Opp. at 1. They are right. If Strahan were to intervene and seek an injunction regarding buoy ropes, it would serve only to return the parties to a stage of this litigation they thought was long over.

Defendants correctly observe that "[t]here can be no later stage to intervene in a legal proceeding than here." Def. Opp. at 3. Considering the context, allowing intervention at this juncture would unduly interfere with the parties' right to a timely resolution of this matter.

7

Because Strahan has failed to overcome the hurdle of timeliness, the Court need not consider the other three criteria for intervention as of right.

      B.     <u>Permissive Intervention</u>

Finding Strahan's Motion untimely, the Court cannot allow permissive intervention either. Regardless of which type of intervention a party seeks, it must be denied if it is untimely. <u>NAACP</u>, 413 U.S. at 365. Requests for permissive intervention, in fact, face heightened timeliness scrutiny to prevent substantial disruption of the litigation process. <u>League of United Latin Am. Citizens v. Wilson</u>, 131 F.3d 1297, 1308 (9th Cir. 1997). Intervention at this point would only serve to prolong and further complicate this litigation.

**IV.    Conclusion**

For the foregoing reasons, the Court will deny Strahan's Motion to Intervene. A separate Order so stating will issue this day.

                                                          <u>/s/ *James E. Boasberg*</u>
                                                          JAMES E. BOASBERG
                                                          United States District Judge

Date: <u>July 7, 2021</u>