UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> GINA RAIMONDO, in her official capacity as Secretary of Commerce, *et al.*, <br><br> Defendants, <br><br> and <br><br> MASSACHUSETTS LOBSTERMEN'S ASSOCIATION, INC., *et al.*, <br><br> Defendant-Intervenors. | Civil Action No. 18-112 (JEB) |

## MEMORANDUM OPINION AND ORDER

Earlier this year, this Court issued a Memorandum Opinion that "h[e]ld the 2021 Biological Opinion and the 2021 Final Rule" issued by the National Marine Fisheries Service "to be invalid" as they relate to the American lobster fishery. Ctr. for Biological Diversity v. Raimondo, No. 18-112, 2022 WL 2643535, at *1 (D.D.C. July 8, 2022). Understanding the substantial impact of that holding on both the endangered right whale and the lobster industry, the Court ordered supplemental briefing on potential remedies. Id. at *20. With that phase of the litigation now complete, the Court will mandate certain agency actions and stay its hand in regard to others.

First, the easy part. Plaintiff conservation groups, Defendant NMFS, and Intervenor lobstermen are largely on the same page with respect to NMFS's 2021 Final Rule. They agree

1

(albeit with some Intervenor dissent) that the Rule should be remanded without vacatur to the agency along with an Order requiring NMFS to issue a new Rule consistent with the Court's Opinion by December 9, 2024. Such Rule "will include measures designed to reduce the North Atlantic right whale's annual mortality and significant injury rate below its potential biological removal level." ECF No. 238 (Def. Motion for Oral Argument) at 3. The Court is pleased to endorse this agreement and appreciates the parties' good-faith efforts to bridge their differences on this front.

The parties, unfortunately, do not reach consensus beyond this. To begin, they disagree on whether the Court's Opinion invalidated the entire BiOp as it relates to the lobster fishery or only the Incidental Take Statement, its critical component. That Opinion clearly held the entire BiOp "invalid" because it inextricably relied on an infirm ITS. See CBD, 2022 WL 2643535, at *9; see also id. (holding BiOp "cannot stand"); id. at *11 (holding ITS's failure meant that "the BiOp cannot survive"). The Court does not here reconsider that holding.

More centrally, the parties dispute the conditions under which the Court should remand the BiOp to the agency: Plaintiffs seek remand with vacatur, and NMFS and the Intervenors ask for no vacatur. In Allied-Signal v. United States Nuclear Regulatory Commission, 988 F.2d 146 (D.C. Cir. 1993), the D.C. Circuit laid out the operative test for whether to vacate a deficient agency action during remand. First, a court must consider "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly)." Id. at 150 (quoting Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin., 920 F.2d 960, 967 (D.C. Cir. 1990)). Second, it must analyze "the disruptive consequences" that vacatur would engender. Id. at 150–51 (quoting Int'l Union, 920 F.2d at 967). "Because vacatur

is the default remedy, . . . defendants bear the burden to prove that vacatur is unnecessary." Nat'l Parks Conservation Ass'n v. Semonite, 422 F. Supp. 3d 92, 99 (D.D.C. 2019).

Here, the two Allied-Signal factors point in opposite directions. The first weighs in favor of vacatur. The Court's task in considering this factor is to determine whether there is "a significant possibility that the [agency] may find an adequate explanation for its actions" on remand. Williston Basin Interstate Pipeline Co. v. FERC, 519 F.3d 497, 504 (D.C. Cir. 2008). Here, however, NMFS's error clearly cannot be explained away on remand because "the defects in the challenged [BiOp] go far beyond a mere failure in explanation." Humane Soc'y of the United States v. Jewell, 76 F. Supp. 3d 69, 137 (D.D.C. 2014); see also Ctr. for Biological Diversity v. Ross, 480 F. Supp. 3d 236, 245 (D.D.C. 2020). The Court appreciates that NMFS is hard at work developing a new Final Rule with the Atlantic Large Whale Take Reduction Team. It nonetheless remains the case that the agency will need to produce a new BiOp to comply with the demands of the Endangered Species Act and the Marine Mammal Protection Act, not just clarify points it made in the old one.

The second factor, however, tilts the other way because of the considerable hardship such an order would inflict on the lobster industry and the states of Maine and Massachusetts. Under this factor, courts typically look to "significant harm to the public health or the environment" that vacatur would cause, State of Wisconsin v. EPA, 938 F.3d 303, 336 (D.C. Cir. 2019), but, where warranted, they may also consider "disrupt[ion] to the [affected] industries." Am. Water Works Ass'n v. EPA, 40 F.3d 1266, 1273 (D.C. Cir. 1994). Here, the disruption to the lobster industry would be quite significant. NMFS has explained in several declarations the "massive shutdowns" that vacatur, even if deferred somewhat, could inflict, a consequence this Court has long sought to avoid. See ECF No. 228 (Def. Remedy Response) at 25–27. NMFS also adds

that a near-term vacatur would likely shift lobstering from federal to state waters, concentrating vertical lines there and "substantially offsetting gains in risk reduction from shutting federal fisheries." Id. at 27. Although the parties dispute the extent to which such a shift would occur and what damage to the whales it would cause, see ECF No. 237 (Pl. Remedy Reply) at 17–18, it nonetheless appears to the Court that there are at least open questions concerning the species benefits that would accompany these great costs to the lobstermen.

Adopting a more restrained position, the conservation groups in their Reply propose vacatur with a two-year stay, which they believe offers sufficient time for a new BiOp. See Pl. Reply at 16. NMFS rejoins that, while it is working hard to reduce right-whale mortality, such a timeline is unrealistic inasmuch as a 2024 BiOp will have very little likelihood of including a compliant ITS and negligible-impact determination (NID). This is because major technological advances, such as widespread implementation of ropeless fishing gear, are unlikely before 2030. See Def. Response at 5. Indeed, at the remedy hearing, the agency represented that in such a circumstance it would turn its attention to state waters since it would be unable to issue a compliant ITS and NID. The Court is thus presented with three options: 1) remand without vacatur and wait until 2030, as NMFS proposes; 2) remand with vacatur, but stay vacatur for two years, as Plaintiffs counsel; or 3) remand but hold the vacatur decision in abeyance. The Court chooses the third option.

It believes that this decision is the wisest course because facts on the ground are shifting rapidly, as new data emerge on right-whale migratory patterns, mortality factors, technological change, and more. See Maine Lobstermen's Ass'n, Inc. v. NMFS, No. 21-2509, 2022 WL 4392642, at *15 (D.D.C. Sept. 8, 2022) ("As the science improves and the climate shifts, new data and new literature appear to be developing every day."). Because the two Allied-Signal

factors are divergent and their proper balance is not obvious, and because even Plaintiffs propose that any vacatur should be stayed for two years, the Court believes it prudent to wait for as much information as possible before making a vacatur decision in this consequential matter.  Cf. Am. Petrol. Inst. v. EPA, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (noting in separate context that postponing decision on agency action "can at least solidify or simplify the factual context and narrow the legal issues at play, allowing for more intelligent resolution of any remaining claims").  The Court's approach will allow the federal lobster fishery some stability to keep operating, while all stakeholders continue their shared work of implementing corrective measures to secure the future of the right whale in the long term.

The Court expects that after the promulgation of the Rule in December 2024, it will seek briefing from the parties on whether to vacate the BiOp and in what timeframe. While this decision means that no new BiOp is required in the next two years, the Court would expect to ultimately order one closer to that timeframe than to the 2030 date NMFS proposes.  In the interim, the Court will require status updates every six months, beginning July 10, 2023, and continuing thereafter.

As it once again articulated in last week's hearing, the Court's goal in this process remains to allow all stakeholders — conservationists, scientists, lobstermen, and others — to work collaboratively to ensure the survival of both the right whale and the lobster industry. While the Court is duty bound to ensure compliance with the law — here, the Endangered Species Act and the Marine Mammal Protection Act — it does not wish to usurp the role of the experts, especially given how quickly circumstances change.  The Court appreciates that the agency has a steep climb ahead: in addition to helping the industry onto a path towards widespread adoption of ropeless technology, it must carefully weigh the scientific data in an

ever-evolving field. It is not for the Court to propose policy solutions; its role is only to ensure compliance with the law while, in its equitable discretion, offering all sides some breathing room to work in good faith towards a solution. The Court believes that this Order is the best of the difficult options available for doing so.

The Court, accordingly, ORDERS that:

1. Plaintiffs' [226] Motion for Order on Remedy is GRANTED IN PART and DENIED IN PART;

2. NMFS's Atlantic Large Whale Take Reduction Plan Amendment Rule entitled "Taking of Marine Mammals Incidental to Commercial Fishing Operations; Atlantic Large Whale Take Reduction Plan Regulations; Atlantic Coastal Fisheries Cooperative Management Act Provisions; American Lobster Fishery," 86 Fed. Reg. 51,970 (Sept. 17, 2021), is REMANDED to the Agency WITHOUT VACATUR;

3. NMFS shall finalize a new Atlantic Large Whale Take Reduction Plan Amendment Rule consistent with this Court's Memorandum Opinion of July 8, 2022, by no later than December 9, 2024;

4. NMFS's May 27, 2021, Endangered Species Act Section 7 Consultation on the: (a) Authorization of the American Lobster, Atlantic Bluefish, Atlantic Deep-Sea Red Crab, Mackerel/Squid/Butterfish, Monkfish, Northeast Multispecies, Northeast Skate Complex, Spiny Dogfish, Summer Flounder/Scup/Black Sea Bass, and Jonah Crab Fisheries and (b) Implementation of the New England Fishery Management Council's Omnibus Essential Fish Habitat Amendment 2 [Consultation No. GARFO-2017-00031] ("2021 BiOp"), concerning effects of the federal fixed gear fisheries on North Atlantic right whales, is REMANDED to the Agency;

5. The question of vacatur of the 2021 BiOp is HELD IN ABEYANCE pending further briefing after issuance of the Final Rule; and

6. The parties shall file a joint status report by July 10, 2023, and every six months thereafter, detailing progress in complying with this Order.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: November 17, 2022