UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL
DIVISION, *et al.*,

      **Plaintiffs,**

      **v.**

GINA RAIMONDO, *et al.*,

      **Defendants,**                    Civil Action No. 18-112 (JEB)

      **and**

MAINE LOBSTERMEN'S
ASSOCIATION, INC.,
*et al.*,

      **Intervenor-Defendants.**

## MEMORANDUM OPINION

    For six years now, Plaintiff conservation groups have battled with the National Marine

Fisheries Service over regulations that they believe are woefully insufficient to save the

dwindling North Atlantic right-whale population from death or injury caused by entanglement in

lobster-fishing gear.  Twice, this Court has awarded summary judgment in their favor based on

clear procedural flaws in NMFS's biological opinions on this subject and substantive

deficiencies in its right-whale conservation measures under the Endangered Species Act and

Marine Mammal Protection Act.  The tide has recently turned in the lobstermen's favor,

however.  Coming to their aid, Congress has since enacted legislation declaring that NMFS's

existing regulations are "sufficient" through 2028, while the agency explores novel technological

solutions and crafts new rules potentially incorporating them.  And the D.C. Circuit has since

ruled in the lobstermen's favor in a related case, vacating the agency's most recent biological

opinion as being too fishing restrictive.

The question before the Court now is whether any of the conservation groups' claims

survive these two developments.  Insistent that they do not, both NMFS and Defendant-

Intervenor lobstermen have moved to dismiss the case as moot and to vacate seven of the Court's

prior Opinions and Orders.  While Plaintiffs vigorously oppose, they paddle against the current

largely in vain.  Finding that all claims in this case are now moot, the Court will grant the

Motions to Dismiss but vacate only some of its previous rulings.

## I.      Background

As the Court has noted before, this case has washed up on its shores on many occasions.

See Ctr. for Biological Diversity v. Raimondo, 610 F. Supp. 3d 252, 263 (D.D.C. 2022) (CBD

IV); see also Ctr. for Biological Diversity v. Raimondo, 2022 WL 17039193 (D.D.C. Nov. 17,

2022) (CBD V); Ctr. for Biological Diversity v. Ross, 480 F. Supp. 3d 236 (D.D.C. 2020) (CBD

III); Ctr. for Biological Diversity v. Ross, 613 F. Supp. 3d 336 (D.D.C. 2020) (CBD II); Ctr. for

Biological Diversity v. Ross, 349 F. Supp. 3d 38 (D.D.C. 2018) (CBD I).  The Court

nevertheless recounts the relevant procedural history.

Conservation groups believe that NMFS has not sufficiently protected the endangered

North Atlantic right whale in its regulation of the American-lobster and Jonah-crab fisheries,

thereby violating numerous provisions of the Endangered Species Act, Marine Mammal

Protection Act, and Administrative Procedure Act.  Their initial Complaint, filed in January

2018, alleged four counts: (1) violation of Section 7(a)(2) of the ESA and APA by the issuance

of an inadequate biological opinion (the 2014 BiOp) that improperly concluded that the

continued operation of the American lobster fishery would not jeopardize the existence of the

right whale (Count I); (2) violation of Section 7(a)(2) of the ESA via reliance on the 2014 BiOp and thereby failing to insure against jeopardy (Count II); (3) the causing of unauthorized "take" (*i.e.*, death, injury, or other specified harm, <u>see</u> 16 U.S.C. § 1532(19)) of the right whale in violation of Section 9 of the ESA (Count III); and (4) the causing of unauthorized take of the whale in violation of similar provisions of the MMPA — 16 U.S.C. §§ 1371(a), 1372(a) — and the APA (Count IV). <u>See</u> ECF No. 1 (Compl.), ¶¶ 117–39.

This Court granted summary judgment in 2020 for the conservation groups on one part of the first count. <u>See</u> <u>CBD II</u>, 613 F. Supp. 3d at 345, 348. It found, more specifically, that the 2014 BiOp violated the ESA because the statute and its regulations "require an [Incidental Take Statement] when the taking of an endangered species is anticipated"; "[t]ake was anticipated here, and NMFS did not produce an ITS." <u>Id.</u> at 345. The Court later vacated the BiOp, but stayed the Order until May 31, 2021, to allow the agency time to complete its ongoing rulemaking, which the agency anticipated would result in a new BiOp and new right-whale conservation measures. <u>See</u> <u>CBD III</u>, 480 F. Supp. 3d at 246, 256. The new BiOp and Final Rule were at last issued on May 27 and September 17, 2021 (respectively). <u>See</u> <u>CBD IV</u>, 610 F. Supp. 3d at 263; 86 Fed. Reg. 51,970 (Sept. 17, 2021).

Still dissatisfied, Plaintiffs filed an Amended Complaint re-alleging Counts III and IV, and adding four more: (1) violation of the ESA and APA by issuing a substantively inadequate biological opinion (the 2021 BiOp) (Count V); (2) violation of the ESA and APA by a failure to include a lawful incidental take statement in that BiOp (Count VI); (3) violation of the MMPA and APA by the issuance of a final rule (2021 Final Rule) that "fails to contain measures to reduce right whale mortality and serious injury to [requisite] levels" within six months (Count VII); and (4) violation of the MMPA and APA by a failure to reduce right-whale mortality and

serious injury to insignificant levels approaching zero (Count VIII).  See ECF No. 170 (Am. Compl.), ¶¶ 13, 130–56; see also ECF No. 188-1 (Pl. SJ Mot.) at 13, 42 (requesting relief on claims III–VIII).

In July 2022, the Court once again granted summary judgment for the conservation groups — this time as to Counts IV, VI, and VII.  See CBD IV, 610 F. Supp. 3d 252.  That decision rested on two key findings: first, that "NMFS violated the ESA by failing to satisfy the MMPA's 'negligible impact' requirement before setting the authorized level of lethal take in its ITS," and second, that it "breached the time requirements mandated by the MMPA in the 2021 Final Rule."  Id. at 257.  In November of that year, the Court remanded the Final Rule to the agency without vacatur, and it also remanded the BiOp, but held the question of whether to vacate that BiOp in abeyance until December 2024, at which time the Court expected the agency would have issued a new final rule that would be more protective of the whale.  See CBD V, 2022 WL 17039193.  So matters stood until two intervening pro-lobstermen developments placed the continued enforceability of the Court's remedial Order (and the existence of a live controversy between the parties) in question.

First, just two months later, Congress enacted the Consolidated Appropriations Act of 2023, which effectively imposed a six-year pause on challenges to the sufficiency of existing right-whale conservation measures affecting the American-lobster fishery.  It provided, in relevant part:

> [F]or the period beginning on the date of enactment of this Act and ending on December 31, 2028, the Final Rule amending the regulations implementing the Atlantic Large Whale Take Reduction Plan (86 Fed. Reg. 51970) shall be deemed sufficient to ensure that the continued Federal and State authorizations of the American lobster and Jonah crab fisheries are in full compliance with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.).

> The National Marine Fisheries Service shall . . . promulgate new regulations for the American lobster and Jonah crab fisheries consistent with the Marine Mammal Protection Act of 1972 (16 U.S.C. 1361 et seq.) and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.) that take effect by December 31, 2028.

Pub. L. No. 117-328, Division JJ, § 101(a), 136 Stat. 4459, 6089–90 (2022).

This provision was ostensibly a reaction to the Court's November 2022 Order, which Maine officials and members of Congress feared could shutter the state's lobster industry.  See, e.g., 168 Cong. Rec. S9607 (daily ed. Dec. 20, 2022) (statement of Sen. Angus King) ("In November, a Federal court here in Washington issued a ruling . . . that effectively shuts down the entire Maine lobster fishery in 2 years. . . . [A] solution to this crisis is in the bill that we will be voting on[,] . . . [which provides] a 6-year period that will give us time to develop the technology and to develop the data [that may point to] . . . different solutions.").

Second, in June 2023, the D.C. Circuit handed the lobster interests another victory.  In that related case, the Maine Lobstermen's Association, Maine Department of Marine Resources, and Massachusetts Lobstermen's Association (among other plaintiffs) had sued NMFS, alleging that the 2021 BiOp exaggerated the risks their fisheries posed to the right-whale population and that the 2021 Final Rule would decimate their business.  See Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv., 626 F. Supp. 3d 46, 55 (D.D.C. 2022).  Although this Court initially granted summary judgment for the Service, finding its regulations were reasonable, the Circuit reversed that Order, reasoning that the Service had improperly relied upon "worst-case scenarios or pessimistic assumptions" in determining whether the fishery "jeopardize[d]" the survival of the right whale.  Maine Lobstermen's Ass'n, Inc. v. Nat'l Marine Fisheries Serv., 70 F.4th 582, 586 (D.C. Cir. 2023).  It further directed this Court to enter summary judgment for the lobstermen plaintiffs on two counts; vacate the 2021 BiOp, as applied to the lobster and Jonah-

crab fisheries (but not as to various other federal fisheries addressed in that document); and remand the 2021 Final Rule without vacatur for the agency to determine whether modifications are appropriate, id. at 593–95, 602 — all of which were executed through the Court's October 30, 2023, Minute Order.  Maine Lobstermen's Ass'n v. Nat'l Marine Fisheries Serv., No. 21-2509 (D.D.C.), Minute Order of Oct. 30, 2023.

The Federal Defendants and Defendant-Intervenor lobstermen in this case have now moved to dismiss all of the conservation groups' remaining claims as moot and to vacate seven of the Court's prior Opinions and Orders — *viz.*, the October 4, 2018, Opinion and Order granting discovery (ECF Nos. 41 & 42); the April 9, 2020, Opinion and Order granting summary judgment on Count I, which challenged the 2014 BiOp (ECF Nos. 90 & 91); the July 8, 2022, Opinion and Order granting summary judgment on three other counts challenging the 2021 BiOp and 2021 Final Rule (ECF Nos. 218 & 219); and the November 17, 2022, remedy Order (ECF No. 239).

## II.     Analysis

The Service and the lobstermen contend that the enactment of the CAA and the vacatur of the 2021 BiOp moots the case because, with respect to the 2021 Final Rule, the former precludes the Court from granting the relief Plaintiffs seek as a matter of law, and, with respect to the 2021 BiOp, the latter leaves nothing from which to be relieved.  See ECF Nos. 255-1 (Fed. Defs. Mot.) at 1–2; 256 (Lobstermen Mot.) at 5–9.  They further contend that vacatur of Orders and Opinions is warranted because they had no opportunity to appeal the Court's decisions, which are all now unreviewable on the merits.  The conservation groups, for their part, wisely concede that Counts III–V — which challenged NMFS's continued authorization of the American lobster fishery and the 2021 BiOp's no-jeopardy finding — are moot.  See ECF No.

257 (Pl. Opp.) at 6 n.3.  They nonetheless insist that Counts VI–VIII — which targeted the 2021 BiOp's incidental-take statement, the 2021 Final Rule, and NMFS's ongoing failure to reduce right-whale take within the MMPA's deadlines — are still live.  Id.  And regardless of the Court's conclusions on mootness, they oppose vacating any prior decisions.  Id. at 32.

The Court, following the parties' lead, shall address whether a controversy still exists as to the latter three counts before turning to the question of vacatur.

A.  Mootness

Article III of the Constitution limits federal courts' jurisdiction to "actual, ongoing controversies."  Honig v. Doe, 484 U.S. 305, 317 (1988).  If "events have so transpired that [a judicial] decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future," the case is moot, and a court lacks jurisdiction to entertain the suit.  Abdelfattah v. U.S. Dep't of Homeland Sec., 787 F.3d 524, 534 (D.C. Cir. 2015) (cleaned up); see Nat'l Black Police Ass'n v. Dist. of Columbia, 108 F.3d 346, 349 (D.C. Cir. 1997) ("[A] federal court has no power to render advisory opinions or decide questions that cannot affect the rights of litigants in the case before [it].") (cleaned up).  "But a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.  As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."  Chafin v. Chafin, 568 U.S. 165, 172 (2013) (cleaned up).

"In at least two kinds of cases," moreover, "the fact that the specific conduct that gave rise to the case has ceased does not mean that the challenge to the legality of that conduct is moot."  Del Monte Fresh Produce Co. v. United States, 570 F.3d 316, 321 (D.C. Cir. 2009).  First, a plaintiff may seek declaratory relief as to an "ongoing policy."  Id.  Second, a claim for

declaratory relief will not be moot if the claim "fits the exception for cases that are capable of repetition, yet evading review, or falls within the voluntary cessation doctrine." Id. (citation omitted).

To assess mootness, the Court "must first define the 'wrong' alleged in the complaint 'in terms of the precise controversy it spawns,'" Maldonado v. Dist. of Columbia, 61 F.4th 1004, 1006 (D.C. Cir. 2023) (quoting PETA v. Gittens, 396 F.3d 416, 422 (D.C. Cir. 2005)), and then determine whether it is still possible to grant "any effectual relief whatever" as redress. Chafin, 568 U.S. at 172 (citation omitted). That analysis must proceed claim by claim. See Am. Oversight v. Biden, 2021 WL 4355576, at *4 (D.D.C. Sept. 24, 2021).

    1.    *Count VI*

Begin with Count VI. It challenged the 2021 BiOp as unlawful under the ESA and APA given NMFS's failure to include "a lawful [Incidental Take Statement] authorizing" the right-whale deaths and injuries it anticipated the American-lobster and Jonah-crab fisheries would cause even upon full implementation of the Final Rule. See Am. Compl., ¶¶ 138–47. That biological opinion, however, has already been vacated as to that fishery on different grounds pursuant to the D.C. Circuit's mandate in MELA, 70 F.4th at 602. See MELA v. NMFS, No. 21-2509 (D.D.C.), Minute Order of Oct. 30, 2023. "To 'vacate,' as the parties should well know, means 'to annul; to cancel or rescind; to declare, to make, or to render, void; to defeat; to deprive of force; to make of no authority or validity; to set aside.'" Action on Smoking & Health v. C.A.B., 713 F.2d 795, 797 (D.C. Cir. 1983) (citation omitted). There is, ergo, no longer any harm from which Plaintiffs can be relieved with respect to that BiOp, and the claim is straightforwardly moot. See Alabama Power Co. v. U.S. EPA, 40 F.3d 450, 456 (D.C. Cir. 1994) (decision to vacate EPA rule on one ground "moots the issue" of whether it is unlawful on

another ground); cf. Akiachak Native Cmty. v. U.S. Dep't of Interior, 827 F.3d 100, 106 (D.C. Cir. 2016) ("Because [the relevant Department of Interior] regulation no longer exists, we can do nothing to affect [plaintiffs'] rights relative to it, thus making this case classically moot for lack of a live controversy.") (emphasis added).

Perhaps recognizing this, the conservation groups attempt to refashion Count VI as a challenge not just to the 2021 BiOp but also to NMFS's purportedly ongoing "policy and practice of failing to authorize right whale incidental take under the MMPA as a condition precedent to issuing a valid (and mandatory) ITS under the ESA" — an error for which they contend declaratory relief remains available. See Pl. Opp. at 17. In service of this point, they marshal a collection of prior biological opinions suggesting that the lack of an ITS (and corresponding failure to authorize right-whale incidental take) is a perennial issue. See id. at 20–21, 23.

Putting aside whether such conduct even amounts to a "policy and practice," Plaintiffs clearly did not allege it in their Complaint. Count VI claims only that "[t]he 2021 BiOp fails to include a lawful ITS for [the] anticipated lethal take of right whales," and Plaintiffs' prayer for relief requests a declaration "that NMFS's 2021 BiOp violates the ESA and APA." Am. Compl., ¶ 143 (emphasis added); id. at 35 (emphasis added). Aside from the passing assertion that the agency "has never authorized" right-whale incidental take, id., ¶ 141, the Complaint does not reference the prior biological opinions that Plaintiffs now offer for the first time as exhibits. And notwithstanding their vague allusions to "history repeating itself" in some of their prior pleadings, see Pl. Opp. at 21, they never actually sought summary judgment or declaratory relief on a "policy and practice" claim. Such flimsy material — conjured up at the eleventh hour — cannot mend the hole in Plaintiffs' sinking ship. See Clarke v. United States, 915 F.2d 699, 703

(D.C. Cir. 1990) (*en banc*) ("[W]here plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief.").

Some of the cases that the conservation groups themselves have cited only drive this point home. See Pl. Opp. at 21. In City of Houston v. Department of Housing and Urban Development, 24 F.3d 1421 (D.C. Cir. 1994), for example, the city challenged a decision by HUD to reduce its congressionally appropriated block grant in the 1986 fiscal year without having conducted a hearing, but the funds had expired while the litigation was pending. Id. at 1424. In considering whether the city's request for declaratory judgment saved the case from mootness, the D.C. Circuit faulted the plaintiff for having "focused almost exclusively on its attempt to recover the 1986 penalty" during much of the litigation and expressed doubt as to whether its "passing references to HUD's alleged 'policy' of acting without a hearing suffice to prevent the mooting of its entire case" — though it ultimately declined to decide that issue. Id. at 1430.

Similarly, in Fraternal Order of Police, D.C. v. Rubin, 134 F. Supp. 2d 39 (D.D.C. 2001), another court in this district dismissed as moot the plaintiffs' suit, which sought declaratory and injunctive relief (in part) for alleged First Amendment violations arising from an internal Secret Service investigation, because the investigation had concluded. Id. at 40–41, 45. That court outright rejected the plaintiffs' efforts to keep the case alive by "broaden[ing] the scope of their original action." Id. at 42. Because the "complaint [did] not allege systematic coercive conduct on the part of the Secret Service," the court declined to entertain such a theory newly contrived in opposition to the motion to dismiss. Id. at 43. This Court strains to see any relevant

difference between Plaintiffs' makeshift "policy and practice" theory and the similarly improvised legal theories rejected (or viewed askance) in City of Houston and Rubin.

Plaintiffs' other cases, moreover, do not significantly aid their cause because they are easily distinguished. Consider Payne Enterprises, Inc. v. United States, 837 F.2d 486 (D.C. Cir. 1988), in which the D.C. Circuit concluded that a plaintiff's lawsuit seeking Air Force bid abstracts under the Freedom of Information Act was not mooted upon release of the requested records. There (unlike here) the plaintiff had explicitly challenged the informal policy under which his request was initially denied. See id. at 491 n.9 (contrasting case with prior D.C. Circuit case in which plaintiff made as-applied — but not facial — challenge to Air Force FOIA regulation, and release of documents thus mooted case). In Super Tire Engineering Co. v. McCorkle, 416 U.S. 115 (1974), likewise, a lawsuit challenging a New Jersey policy that made striking employees eligible for state-welfare benefits was not mooted when the strike at issue had ended, in part because the complaint sought declaratory relief from the policy itself. Id. at 117–18, 121–23. And the complaint in Mid-Ohio Food Bank v. Lyng, 670 F. Supp. 403 (D.D.C. 1987), had explicitly requested an order declaring that the President may not defer congressionally appropriated funds for policy reasons — a form of relief that remained live even after the deferred funds at issue were restored. Id. at 404. Here, there is simply no comparable language in the conservation groups' prayer for relief or their Complaint generally.

While it is undoubtedly true that a challenge to a policy "is not necessarily mooted merely because the challenge to the particular agency action is moot," Pl. Opp. at 21 (quoting City of Houston, 24 F.3d at 1428), Plaintiffs have alleged no such policy. Not in Count VI and not elsewhere. The count will therefore be dismissed.

2.      *Count VII*

Count VII fares no better.  Recall that it challenged the 2021 Final Rule as unlawful under the MMPA and APA because it "fail[ed] to contain measures to reduce right whale mortality and serious injury to below [potential biological removal level] within six months." Am. Compl., ¶¶ 148–51.  Conservation groups asked the Court to declare that the Rule violates the MMPA and remand it without vacatur.  Id. at 35.  Prior to the enactment of the CAA, the Court did exactly that.

But such relief, at this point, would violate the CAA.  The Act provides that the 2021 Final Rule "shall be deemed sufficient to ensure" that existing "authorizations" of the lobster fishery comply with the MMPA and ESA until December 31, 2028.  See Pub. L. 117-328, 136 Stat. 6090.  It further directs NMFS to use that time to "promote the innovation and adoption of gear technologies" and "promulgate new regulations" for the fishery potentially incorporating such technologies by that date.  Id.  As the D.C. Circuit instructed in MELA, the statute is "best read to set a temporary ceiling, not a floor, for compliance by the lobster and Jonah crab fisheries," which is consistent with its purpose "to postpone the deadline set" by this Court's November 2022 Order, "giving the lobstermen more lead time" while NMFS develops a new rule.  See 70 F.4th at 594.  It thus precludes this Court from mandating right-whale conservation measures affecting the lobster fishery that are more stringent than the 2021 Final Rule until the new rule takes effect in 2028.  As a ruling in Plaintiffs' favor on Count VII would require such a mandate, the claim is moot.  See Am. Bar Ass'n, 636 F.3d at 643 ("It is well established that a case must be dismissed as moot if new legislation addressing the matter in dispute is enacted while the case is still pending."); Nuclear Energy Inst., Inc. v. Env't Prot. Agency, 373 F.3d 1251, 1309 (D.C. Cir. 2004) ("Where Congress enacts intervening legislation that definitively

resolves the issues a litigant seeks to put before us, the claims are moot and we are precluded from deciding them."); see also, e.g., United States v. Microsoft Corp., 138 S. Ct. 1186 (2018) (dismissing case as moot where Congress enacted appropriations bill resolving question on which certiorari was granted).

Insisting otherwise, the conservation groups protest that the Act did not deem the 2021 Final Rule itself sufficient under the ESA and MMPA. Rather, they argue, it declared only that NMFS's "authorizations" of the lobster fishery were compliant with both Acts, see Pub. L. No. 117-328, 136 Stat. 4459, 6090 — most relevantly, the authorization certificate NMFS may issue under section 118(c), 16 U.S.C. § 1387(c)(2)(A), allowing registered commercial fisheries to incidentally take marine mammals. See Pl. Opp. at 12–13, 27. Because their "Seventh Claim arises from NMFS's actions amending the [Atlantic Large Whale Take Reduction] Plan under section 118(f), not its actions authorizing the fishery under section 118(c)," the conservation groups suppose, the CAA does not preclude this Court from issuing a declaration that the Final Rule violated the six-month deadline in MMPA section 118(f)(2). See Pl. Opp. at 27.

While certainly creative, this argument wars with common sense. First, the incidental-take authorization under section 118(c) only permits such taking if the fishery complies with "any applicable take reduction plan." 16 U.S.C. § 1387(c)(3)(A)(iv); see id. § 1387(c)(3)(D), (4)(B). The applicable plan here, as Plaintiffs note, is the Atlantic Large Whale Take Reduction Plan, including the amendments made to it by the 2021 Final Rule. Therefore, even if the word "authorization" is confined to the permission granted under subsection (c), the 2021 Final Rule would still determine what exactly the lobster fishery is authorized to do. If NMFS's "authorization," so defined, complies with the ESA and MMPA (as the CAA clearly states), then the Final Rule necessarily complies with them as well.

Second — it bears repeating — the relevant statutory clause begins with the words "the Final Rule . . . shall be deemed sufficient." Pub. L. 117-328, 136 Stat. 6090. In plain English, the conservation measures introduced in that regulation are now deemed by law to reduce right-whale mortality and serious injury caused by the American-lobster fishery <u>enough</u> that NMFS does not violate either the ESA or MMPA by allowing the fishery to continue operating (at least for now). Yet Plaintiffs' interpretation would read those first few words as a nullity — as though Congress blessed the agency's authorization of the fishery independent of whether the Final Rule itself was adequate. <u>See</u> <u>United States v. Oral George Thompson</u>, 921 F.3d 263, 272 (D.C. Cir. 2019) (Millett, J., concurring in part) ("[A] cardinal rule of statutory construction is that courts should not discard duly enacted statutory text as meaningless verbiage.").

It is not lost on the Court, moreover, that its November 2022 remedial Order (which provided redress on the counts on which it had granted summary judgment, including Count VII) was a key impetus for including these temporary protections for the lobster fishery in the appropriations bill. <u>See</u> 168 Cong. Rec. S9607 (daily ed. Dec. 20, 2022) (statement of Sen. King) (expressing concern that the Court's remedy Order "effectively shuts down the entire Maine lobster fishery in 2 years"). While this point is by no means dispositive, it would seem a bridge too far to read this provision of the CAA as consistent with an order it was intended to countermand. <u>See</u> <u>Honeycutt v. United States</u>, 581 U.S. 443, 453–54 (2017) (highlighting where legislative history "confirms" Court's construal of text, "for those who find it relevant").

In short, Congress has spoken. The text and legislative history of the CAA dictate that the Final Rule is sufficient under the ESA and MMPA until December 31, 2028. As the Court is powerless to declare otherwise, Plaintiffs' seventh claim shall be dismissed as moot.

3.    *Count VIII*

The eighth count meets the same fate for essentially the same reason.  It challenged NMFS's "ongoing failure to reduce right whale mortality and serious injury to [i]nsignificant levels approaching [zero] within the timeline mandated by the MMPA" as an "agency action unlawfully withheld or unreasonably delayed" under the APA.  See Am. Comp., ¶¶ 152–56 (emphasis added); see also § 1387(a)(1), (b), (f)(2).  Although the count does not, by its terms, challenge the 2021 Final Rule, that is its practical effect.  The mechanism by which NMFS may reduce right-whale mortality and serious injury is a take-reduction plan.  See § 1387(f)(1)–(2).  Relief as to this count would thus necessitate more stringent conservation measures than the Final Rule currently provides.  Per the CAA, such relief is unavailable until after 2028.  This final domino, accordingly, falls just like the others.

\*      \*      \*

The Court also finds, as Plaintiffs concede, that neither the voluntary-cessation nor capable-of-repetition mootness exception is relevant here.  See Pl. Opp. at 6 n.3.

B.  Vacatur

Vacatur is "normally appropriate once a case is determined to be moot," as the Supreme Court noted in United States v. Munsingwear, Inc., 340 U.S. 36 (1950), "because it 'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance.'"  Am. Bar Ass'n v. FTC, 636 F.3d 641, 648 (D.C. Cir. 2011) (quoting Munsingwear, 340 U.S. at 40).  Although framed therein as a practice of appellate review, district courts have since cited this principle as a basis for vacating their own orders.  E.g., St. Lawrence Seaway Pilots' Ass'n v. Collins, 2005 WL 1138916, at \*2 (D.D.C. May 13, 2005); see also Fund For Animals v. Mainella, 335 F. Supp. 2d 19, 25–26 (D.D.C.

2004) (collecting cases).  Its application, however, is an "equitable matter" and "not automatic in all situations."  Am. Bar Ass'n, 636 F.3d at 649 (citing U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 23–25 (1994)); see also Bancorp, 513 U.S. at 24, 26 (noting that Supreme Court has "disposed of moot cases in the manner most consonant to justice[,] in view of the nature and character of the conditions which have caused the case to become moot").  "It is [the movant's] burden, as the party seeking relief from the status quo . . . to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur."  Bancorp, 513 U.S. at 26.

At least four considerations bear on a court's determination: (1) "whether the party seeking [vacatur] caused the mootness by voluntary action," id. at 24 (denying vacatur where case was mooted by parties' settlement); (2) whether that party "slept on its rights" by failing to diligently seek review of the merits by a higher court, Munsingwear, 340 U.S. at 40–41; see also Mahoney v. Babbitt, 113 F.3d 219, 221–22 (D.C. Cir. 1997) (denying vacatur where losing party failed to appeal circuit panel's decision on merits to en banc court or seek emergency stay from Circuit Justice); (3) the preclusive effect of the challenged decision, see Mahoney, 113 F.3d at 222 ("[I]t is generally accepted that a mooted judgment should not preclude the litigants in future litigation[.]"); and (4) the public interest, taking into account the inherent value of judicial precedents.  See Bancorp, 513 U.S. at 26–27 ("Judicial precedents are presumptively correct and valuable to the legal community as a whole.  They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur.") (citation omitted).

Because the application of these rules differs between the Opinions and Orders issued from 2018 to 2020 addressing Plaintiffs' initial challenge to the 2014 BiOp (ECF Nos. 41, 42,

90, 91) and the 2022 Opinions and Orders addressing their subsequent challenge to the 2021 BiOp and Final Rule (ECF Nos. 218, 219, 239), the Court will address each group separately.

       1.     *2018–20 Opinions & Orders*

NMFS and the lobstermen seek to vacate the Court's October 4, 2018, Opinion and Order granting the conservation groups' request for discovery on two counts of their original Complaint, and its April 9, 2020, Opinion and Order granting summary judgment for Plaintiffs on one count (and declaring the 2014 BiOp to be invalid under the ESA). See Fed. Defs. Mot. at 18–19; Lobstermen Mot. at 9. The agency's chief complaint is that by mooting the case, MELA and the CAA deprived it of the opportunity to appeal either decision.

That argument, however, stands on a faulty premise; it was NMFS's own action that mooted the matter. More specifically, each of the claims in the original Complaint, which challenged the 2014 BiOp and the regulatory regime predating the 2021 Final Rule, were mooted long before MELA or the CAA by NMFS's voluntary decision to issue a new BiOp and Plan amendment in 2021. See Friends of Animals v. Bernhardt, 961 F.3d 1197, 1203 (D.C. Cir. 2020) ("[W]e have recognized that the government's abandonment of a challenged regulation is just the sort of development that can moot an issue."); see also Fed. Def. Mot. at 19 (acknowledging that 2014 BiOp "was rendered obsolete by the 2021 BiOp"); CBD III, 480 F. Supp. 3d at 243. Hardly a victim of happenstance, NMFS may be disentitled to vacatur for that reason alone. See Ctr. for Sci. in the Pub. Int. v. Regan, 727 F.2d 1161, 1165–66 (D.C. Cir. 1984) (denying vacatur where Treasury Department "cause[d] the dismissal of its own appeal" by issuing new rule); but see Nat'l Black Police Ass'n, 108 F.3d at 353 (noting that the "Bancorp presumption against vacatur might apply" when executive branch repeals a regulation but declining to decide the

issue) (emphasis added); Humane Soc. of U.S. v. Kempthorne, 527 F.3d 181, 187 (D.C. Cir. 2008) (identifying tension in Circuit cases on this point and similarly leaving for another day).

The same, however, may not be said of the lobstermen, as they are not responsible for issuing the 2021 BiOp and Final Rule — both of which they challenged in MELA. See Humane Soc., 527 F.3d at 187–88 & n.11 (D.C. Cir. 2008) (doubt as to whether federal appellants' voluntary act disentitles them to vacatur "is removed" by intervenor's separate request because "[p]lainly, [intervenor] did not moot the appeal"). Whether vacatur is warranted thus depends on the other factors. See Jewish War Veterans of the U.S. of Am., Inc. v. Mattis, 266 F. Supp. 3d 248, 252 n.4 (D.D.C. 2017) ("[A]lthough under U.S. Bancorp a party's voluntary action in causing mootness is one reason why a Court should deny vacatur, it is not the only reason.").

As to both NMFS and the lobstermen, the other factors strongly counsel against vacating the 2018–20 Opinions and Orders. First, neither party diligently sought appellate review of those decisions. See Mahoney, 113 F.3d at 221–22. While it is true that the Court denied NMFS's motion for the entry of final judgment, see Minute Order of Aug. 9, 2021, which would have terminated the case, the agency's ability to appeal the 2020 summary-judgment Order leading to remand did not depend upon it. See NAACP v. U.S. Sugar Corp., 84 F.3d 1432, 1436 (D.C. Cir. 1996) ("[W]hile 'a private party may not, in most cases, immediately appeal a district court order remanding a case for further agency proceedings, the agency may do so.'") (quoting Occidental Petroleum Corp. v. SEC, 873 F.2d 325, 331 (D.C. Cir. 1989)). NMFS, in any event, did not intimate any desire to appeal the Court's prior Orders in its briefing nor make any mention of such step at the August 5, 2021, hearing on such motion, which could have provided cause to grant it or at least enter a Federal Rule of Civil Procedure 54(b) certification. See generally ECF Nos. 136 (Mot. for Entry of Judgment) (no mention of appeal; seeking only to ensure any further

litigation "occur[s] in the context of a new lawsuit"); 148 (Fed. Def. Entry of Judgment Reply) at 10–20 (same). The lobstermen, for their part, did not file a motion for entry of final judgment to begin with. Rather, they urged the Court to grant the agency's motion. <u>See generally</u> ECF No. 150 (Lobstermen Entry of Judgment Response). And, in doing so, they did not express any desire of their own for appellate review. <u>Id.</u>

The preclusive effect of those decisions, furthermore, is relatively insignificant. While it is certainly conceivable that the conservation groups could sue NMFS again under the ESA and request discovery, the Court's discovery ruling was specific to the circumstances of the case and would not necessarily entitle them to the same relief in a subsequent action. <u>See</u> <u>CBD I</u>, 349 F. Supp. 3d at 42–43 (concluding that discovery is neither always appropriate nor always precluded in ESA citizen-suit cases and permitting discovery based on the "specific claims" at issue). The summary-judgment ruling, meanwhile, will have no claim-preclusive effect at all because it addressed a challenge to the 2014 BiOp, which is no longer in force. As Plaintiffs note, any subsequent challenge to the 2028 biological opinion will constitute a different claim. <u>See</u> Pl. Opp. at 38; <u>Brodie v. Burwell</u>, 2016 WL 3248197, at *6 (D.D.C. June 13, 2016) (noting <i>res judicata</i> requirement that "the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding") (emphasis and citation omitted). Both decisions, moreover, while not precedential in a binding sense, are of persuasive value to the legal community as a whole. <u>See</u> <u>Bancorp</u>, 513 U.S. at 26–27.

Finally, the parties never address the realities on the ground. Aside from NMFS's vague suggestion that the 2020 summary-judgment Opinion and Order "will limit the options available to [it] despite the agency's need for flexibility," the briefs are devoid of detail as to how the discovery or summary-judgment decisions prejudice them going forward. <u>See</u> Fed. Def. MTD at

18. Without more, they have not shown that they are entitled to the "extraordinary remedy" they seek. <u>Bancorp</u>, 513 U.S. at 26.

      2.    *2022 Opinions & Orders*

The 2022 Opinions and Orders, however, are a different story.  Once again, vacatur is normally appropriate when a case becomes moot by "happenstance," <u>Munsingwear</u>, 340 U.S. at 40, unless the party seeking that relief caused the mootness through its voluntary act.  <u>Bancorp</u>, 513 U.S. at 24.  The acts that mooted the claims addressed in these Opinions and Orders were the enactment of the CAA and the vacatur of the 2021 BiOp.  Neither constitutes a voluntary act attributable to NMFS or the lobstermen.

Start with the enactment of the CAA.  The D.C. Circuit recently noted that "[w]hen a legislative act moots a case," like the CAA here, the "established practice" is "to vacate the district court's decision" — *i.e.*, to treat the new legislation as happenstance, not as a voluntary act. <u>Friends of the Earth v. Haaland</u>, 2023 WL 3144203, at *2 (D.C. Cir. Apr. 28, 2023); <u>see also</u> <u>Am. Bar Ass'n</u>, 636 F.3d at 644.  True, the CAA's language was drafted in consultation with Defendants Gina Raimondo (Secretary of Commerce) and Janet Coit (Assistant Administrator for National Oceanic and Atmospheric Administration Fisheries), as well as Janet Mills (Governor of Maine) and Meredith Mendelson (Deputy Commissioner of the Maine Department of Marine Resources), all of whom reviewed or edited draft versions of the legislation.  <u>See</u> ECF Nos. 257-2 (Mendelson-Coit Email on Draft Legislation); 257-3 (Mendelson-Coit Email Thread); 257-4 (Mills-Raimondo Email Thread).  Notwithstanding NMFS's and Defendant-Intervenors' role in shaping the language, the law is still ultimately a product of bicameralism and presentment, which vests its authorship in Congress and the President.  Plaintiffs do not suggest otherwise.  <u>See</u> Pl. Opp. at 32–41.

To be sure, the Circuit in <u>Nat'l Black Police Ass'n</u>, explained that new legislation may potentially constitute a "voluntary action" activating <u>Bancorp</u>'s presumption against vacatur if there is some "evidence indicating that the legislation was enacted in order to overturn an unfavorable precedent."  108 F.3d at 351.  As noted earlier, the Court's 2022 Opinions and Orders were indeed a direct cause of the at-issue provision of the CAA.  Congressional action designed to reverse the <u>outcome</u> of a judicial decision, however, is not the same as action intended to void an opinion itself; here, Congress seems to have legislated anew because existing law had policy consequences it would not abide, as is its prerogative.  <u>See id.</u> at 352 (contemplating possibility that legislature may pass new legislation that moots a case "because the lawsuit has convinced it that the existing law is flawed").  The Court thus concludes that the "presumption of integrity that [normally] attaches to legislative action" applies here.  <u>Id.</u> at 354.

As to the vacatur of the 2021 BiOp, the Court need not spill much ink.  That was the result of court action, not Defendants' voluntary acts.  <u>See</u> <u>MELA</u>, 70 F.4th at 602; <u>Maine Lobstermen's Ass'n</u>, No. 21-2509 (D.D.C.), Minute Order of Oct. 30, 2023.

Turning to the other vacatur factors, the preclusive effect of the foregoing rulings is arguably no greater than the preclusive effect of the 2018–20 Opinions and Orders discussed earlier since the 2021 BiOp has also been vacated and claims against the 2028 Final Rule will constitute different claims from those raised in this case.  So, too, those rulings have inherent value to the legal community as persuasive precedent.  On the other hand, Defendants and Defendant-Intervenors have not slept on their rights here: the mootness of Plaintiffs' outstanding claims would preclude appellate review on the merits.  Vacatur could still serve the public interest insofar as it avoids conflict with the six-year regulatory project Congress has set forth in

the CAA.  See Clarke, 915 F.2d at 708 ("Vacatur appears particularly appropriate where retention of the precedent creates a gratuitous conflict with a co-equal branch of government.").

As things stand, NMFS will no longer proceed with the multi-phase Conservation Framework of which the 2021 Final Rule was a part but will instead pursue "a program of developing new technology, submitting annual reports [to Congress], and ultimately producing a new rule to take effect by December 31, 2028," as mandated by the CAA.  See Fed. Def. MTD at 7; ECF No. 255-2 (Michael Pentony Decl.), ¶ 6.  This supplants the December 2024 deadline and status-report schedule contained in the 2022 remedy Order.  See CBD V, 2022 WL 17039193, at *3.  And, as noted earlier, the provision deems the Final Rule "sufficient" under the ESA and MMPA for now, which displaces the Court's contrary conclusions in its 2022 Opinion on summary judgment.  The relief to which Plaintiffs are entitled (if any) should thus be revisited in light of the agency's forthcoming rule and whatever "new scientific and technological developments" exist at that time.  See Fed. Def. MTD at 16.

The Court is, accordingly, inclined to follow the "established practice" and vacate its 2022 Opinions and Orders.  Munsingwear, 340 U.S. at 39.

## III.    Conclusion

The Court will grant the Motions to Dismiss but vacate only its 2022 summary-judgment Opinion and Order (ECF Nos. 218 & 219) and its 2022 remedy Order (ECF No. 239).  An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  January 29, 2024