**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 18-112 (JEB) |
| v. | ) ) | |
| GINA RAIMONDO, *et al.*, | ) ) | |
| *Federal Defendants*, | ) ) | |
| and | ) ) | |
| MAINE LOBSTERMEN'S ASSOCIATION, INC., *et al.*, | ) ) ) | |
| *Defendant-Intervenors*. | ) ) | |

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

**AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 1

LEGAL FRAMEWORK ...................................................................................... 6

ARGUMENT ...................................................................................................... 8

I.      Plaintiffs Are Entitled to Attorneys' Fees and Costs ............................... 8

        A.      Plaintiffs Are Entitled to Attorneys' Fees and Costs for All Four Claims ... 9

        B.      Plaintiffs Are Entitled to Attorneys' Fees Under the ESA Citizen-Suit's
                Fee-Shifting Provision ............................................................... 13

                1.      All Four Claims Are Interrelated Legally and Factually and
                        Properly Included in This Fee Request Under the
                        ESA Fee-Shifting Provision ............................................. 13

                2.      Plaintiffs Succeeded on the Merits and It Is Appropriate for the
                        Court to Award Fees Under the ESA ............................... 15

        C.      In the Alternative, Plaintiffs Are Entitled to Fees and Costs Under EAJA .. 16

                1.      Plaintiffs Are Prevailing Parties ..................................... 18

                2.      Three Plaintiffs Meet EAJA's Eligible Party Criteria .................... 18

                3.      Federal Defendants' Position Was Not Substantially Justified ........ 19

                4.      No Special Circumstances Exist That Would Make an Award
                        Unjust ................................................................... 20

II.     Plaintiffs' Proposed Fees Are Reasonable ............................................ 20

        A.      Plaintiffs' Hours Are Reasonable ............................................. 21

        B.      Plaintiffs' Requested Rates Are Reasonable ............................... 26

        C.      Plaintiffs' Lodestar Is Reasonable ........................................... 30

III.    Plaintiffs' Costs Are Reasonable ......................................................... 30

CONCLUSION ................................................................................................. 31

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Transp. Ass'n of Canada v. F.A.A.*,
   156 F.3d 1329 (D.C. Cir. 1998) ........................................................................20

*All. for the Wild Rockies v. Krueger*,
   No. 12-150-M-DLC, 2014 WL 46498 (D. Mont. Jan. 3, 2014) ...........................10

*Am. Lands All. v. Norton*,
   525 F. Supp. 2d 135 (D.D.C. 2007) ..................................................................27

*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................6

*Brackett v. Mayorkas*,
   No. 17-988 (JEB), 2023 WL 5094872 (D.D.C. Aug. 9, 2023)............................28

*Covington v. District of Columbia*,
   57 F.3d 1101 (D.C. Cir. 1995) ..........................................................................27

*Ctr. for Biological Diversity v. Raimondo*,
   610 F. Supp. 3d 252 (D.D.C. 2022), *vacated as moot*, No. 18-112, 2024 WL
   324103 (D.D.C. Jan. 29, 2024) ...........................................................................5

*Ctr. for Biological Diversity v. Ross*,
   349 F. Supp. 3d 38 (D.D.C. 2018) .....................................................................14

*Davis Cnty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. EPA*,
   169 F.3d 755 (D.C. Cir. 1999) ..........................................................................28

*Davis v. Kijakazi*,
   No. 20-2282 (CKK), 2023 WL 4234656 (D.D.C. June 28, 2023)...................29, 30

*F.J. Vollmer Co v. Magaw*,
   102 F.3d 591 (D.C. Cir. 1996) ..........................................................................19

*George Hyman Const. Co. v. Brooks*,
   963 F.2d 1532 (D.C. Cir. 1992) ......................................................................7, 10

*Goos v. Nat'l. Ass'n of Realtors* (*Goos I*),
   997 F.2d 1565 (D.C. Cir. 1993) ...........................................................................9

*Goos v. Nat'l Ass'n of Realtors* (*Goos II*),
   68 F.3d 1380 (D.C. Cir. 1995) .......................................................................7, 10

*Hensley v. Eckerhart,
    461 U.S. 424 (1983) ................................................................................................ passim

J.T. v. District of Columbia,
    652 F. Supp. 3d 11 (D.D.C. 2023) ....................................................................................28

Kennecott Corp. v. EPA,
    804 F.2d 763 (D.C. Cir. 1986) ....................................................................................7, 16

Mayo v. Jarvis,
    177 F. Supp. 3d 91 (D.D.C. 2016) .....................................................................................6

Murray v. Weinberger,
    741 F.2d 1423 (D.C. Cir. 1984) .......................................................................................21

Nat'l Ass'n of Mfrs. v. Dept. of Labor,
    159 F.3d 597 (D.C. Cir. 1998) .........................................................................................19

Nat'l Venture Cap. Ass'n v. Nielson,
    318 F. Supp. 3d 145 (D.D.C. 2018) .................................................................................19

Native Fish Soc'y v. NMFS,
    No. 3:12–cv–00431–HA, 2014 WL 7331039 (D. Or. Dec. 19, 2014) ........................ 8, 10, 14

Odima v. Westin Tucson Hotel,
    53 F.3d 1484 (9th Cir. 1995) ...........................................................................................10

Open Communities Alliance v. Carson,
    Civ. No. 17-2192, 2018 WL 8622230 (D.D.C. June 15, 2018)............................................25

Pierce v. Underwood,
    487 U.S. 552 (1988) ..................................................................................................19, 20

Pub. Employees for Env't Resp. v. Cruickshank,
    No. 10-1067 (RBW) (DAR), 2019 WL 6465088 (D.D.C. Dec. 2, 2019) .............................14

Role Models Am., Inc. v. Brownlee,
    353 F.3d 962 (D.C. Cir. 2004) .........................................................................................29

Ruckelshaus v. Sierra Club,
    463 U.S. 680 (1983) ....................................................................................................6, 15

Sai v. Dep't of Homeland Sec.,
    179 F. Supp. 3d 128 (D.D.C. 2016) ...................................................................................7

Salazar ex rel. Salazar v. District of Columbia,
    809 F.3d 58 (D.C. Cir. 2015)............................................................................................27

*SecurityPoint Holdings, Inc. v. TSA*,
836 F.3d 32 (D.C. Cir. 2016) ............................................................................................ 18

*Taucher v. Brown-Hruska*,
396 F.3d 1168 (D.C. Cir. 2005) ................................................................................ 19, 20

*Webb v. Sloan*,
330 F.3d 1158 (9th Cir. 2003) ............................................................................................ 9

*WildEarth Guardians v. Steele*,
No. 19-56-M-DWM, 2022 WL 17665569 (D. Mont. Dec. 14, 2022) ................................. 8

*Wishtoyo Found. v. United Water Conservation Dist.*,
No. CV 16-3869-DOC, 2019 WL 1109684 (C.D. Cal. Mar. 5, 2019) ............................... 25

**Statutes**

5 U.S.C. § 706 .................................................................................................................................. 2

16 U.S.C. § 1536(b)(4)(C) ............................................................................................................ 11

16 U.S.C. § 1540(g) ......................................................................................................................... 2

16 U.S.C. § 1540(g)(1) .............................................................................................................. 6, 14

16 U.S.C. § 1540(g)(2)(A)(i) ......................................................................................................... 2

16 U.S.C. § 1540(g)(4) .............................................................................................................. 6, 13

28 U.S.C. § 2412(d)(1)(A) ............................................................................................................. 7

28 U.S.C. § 2412(d)(2)(A) ........................................................................................................... 29

28 U.S.C. § 2412(d)(2)(B) ....................................................................................................... 7, 18

**Other Authorities**

*Payment of Attorney's Fees in Litigation Involving Successful Challenges to
Federal Agency Action Arising Under the Administrative Procedure Act and
Citizen-Suit Provisions of the Endangered Species Act*, 311 (Nov. 27, 2000),
https://www.justice.gov/file/19316/download ......................................................................... 8

United States Attorney's Office, Civil Division, *Fitzpatrick Matrix, 2013–2024*,
https://www.justice.gov/usao-dc/civil-division (last updated May 24, 2024) ....................... 27

**TABLE OF ACRONYMS & ABBREVIATIONS**

| | |
|---|---|
| 2014 BiOp | 2014 biological opinion on the fishery |
| APA | Administrative Procedure Act |
| CBD Plaintiffs | Plaintiffs Center for Biological Diversity, Defenders of Wildlife, and the Humane Society of the United States |
| DOJ | Department of Justice |
| EAJA | Equal Access to Justice Act |
| ESA | Endangered Species Act |
| ITS | Incidental take statement |
| MMPA | Marine Mammal Protection Act |

## INTRODUCTION

Plaintiffs Center for Biological Diversity, Conservation Law Foundation, Defenders of Wildlife, and the Humane Society of the United States move to recover their attorneys' fees and costs from Federal Defendants for their success in this case. Plaintiffs are entitled to their fees and costs in the amounts set forth in the table attached as Exhibit 1. The table presents a lodestar figure of $1,394,487.44 for attorneys' fees that reflects hourly rates comparable to rates commonly approved for federal litigation in this district. It reflects reasonable time expended to litigate this complex, multi-year litigation through August 5, 2021, and is submitted after the exercise of Plaintiffs' attorneys' billing judgment. Plaintiffs seek $5,761.64 in costs.

Plaintiffs submit this fee motion today in satisfaction of this Court's Minute Order of May 9, 2024, regarding Plaintiffs' deadline for this fee motion. Pursuant to Local Rule 7(m), counsel for Plaintiffs met and conferred with counsel for Federal Defendants. Federal Defendants oppose this motion. Because Plaintiffs seek only to recover fees and costs from Federal Defendants under federal law, Intervenor-Defendants have no interest in this matter and were not included in the Local Rule 7(m) conference. Plaintiffs and Federal Defendants will submit a joint motion to stay briefing on this fee motion to allow time for settlement negotiations. Plaintiffs may supplement their fee application if those settlement negotiations do not bear fruit, including with hours spent on preparing this fee application.

## BACKGROUND

On January 18, 2018, Plaintiffs Center for Biological Diversity, the Humane Society of the United States, and Defenders of Wildlife ("CBD Plaintiffs") filed their complaint challenging Federal Defendants' failure to comply with the Endangered Species Act (ESA) and Marine Mammal Protection Act (MMPA) in authorizing and managing the American lobster fishery given the fishery's ongoing harms to the critically endangered North Atlantic right whale. ECF

No. 1 ¶ 6. The first claim challenged the 2014 biological opinion on the fishery ("2014 BiOp") as arbitrary, capricious, and contrary to law. *Id.* ¶¶ 117–25. The second claim challenged Federal Defendants' ongoing reliance on the unlawful 2014 BiOp as violating its substantive obligation to ensure against jeopardy to the right whale under the ESA. *Id.* ¶¶ 126–29. The third claim challenged Federal Defendants' ongoing authorization and management of the lobster fishery as causing unauthorized take of right whales in violation of the ESA. *Id.* ¶¶ 130–34. The fourth claim challenged Federal Defendants' ongoing authorization and management of the lobster fishery under the MMPA without a lawful take authorization for the lobster fishery. *Id.* ¶¶ 135–39. Plaintiffs brought the second and third claims pursuant to the ESA citizen-suit provision, 16 U.S.C. § 1540(g), and their first and fourth claims pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 706. *See* ECF No. 1. ¶¶ 117–139.

On February 7, 2018, Plaintiff Conservation Law Foundation asserted the same four claims filed in a separate, later consolidated, case. *See* Civ. No. 1:18-cv-00283 ("CLF Compl."), ECF No. 1 ¶¶ 118–48[1]; May 2, 2018, Minute Order (consolidating cases). In their requests for relief, both the CBD Plaintiffs and Conservation Law Foundation requested "costs of litigation, including reasonable attorneys' fees." ECF No. 1 at 32; *see* CLF Compl. at 39.

Litigating this case required a significant investment of hours from Plaintiffs' counsel, due not only to the factual and legal complexity of the four claims on the merits but also to Federal Defendants' numerous non-dispositive motions and oppositions to motions, upon which Plaintiffs were nearly uniformly successful. Following commencement of the litigation, for

---

[1] More than 60 days before filing suit, on October 2, 2017, the CBD Plaintiffs sent a notice of intent letter to Federal Defendants alerting them to their ESA violations, as required by the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(2)(A)(i). ECF No. 1 ¶ 12. The CBD Plaintiffs began work related to that notice in August 2017. Conservation Law Foundation also complied with the ESA citizen-suit notice provision via letter of November 29, 2017. CLF Compl. ¶ 13.

example, Plaintiffs successfully opposed Federal Defendants' motion to transfer venue. ECF No. 21. Following consolidation, Plaintiffs engaged in multiple rounds of document review, communication with Federal Defendants, and status hearings before this Court aimed at ensuring that Federal Defendants produced a complete administrative record on Plaintiffs' APA claims and that Plaintiffs could pursue discovery on their ESA citizen-suit claims. This necessitated briefing a contested motion for discovery, upon which Plaintiffs succeeded. *See* ECF Nos. 27, 42.

The discovery process ran from November 2018 through mid-March 2019, during which Federal Defendants propounded extensive discovery requests requiring each of the four Plaintiff organizations separately to review thousands of internal documents, negotiate with Federal Defendants in an attempt to narrow overly broad or unreasonable requests, and produce discovery responses together with objections and privilege logs. Plaintiffs also propounded discovery requests upon Federal Defendants for facts relevant to the second and third claims and reviewed those responses carefully to establish undisputed material facts to support those claims.

Plaintiffs then moved for summary judgment on June 14, 2019. ECF No. 66. Instead of filing its opposition brief as per the court-ordered schedule, Federal Defendants moved for a stay of briefing, which Plaintiffs opposed and the Court denied. ECF Nos. 68, 71, 76. On November 15, 2019, Federal Defendants cross-moved for summary judgment. ECF No. 81. Plaintiffs filed their reply and opposition on December 17, 2019, ECF No. 83, and Federal Defendants filed their reply on January 28, 2020, ECF No. 86.

On April 9, 2020, the Court ruled in Plaintiffs' favor on part of their first claim, granting their motion for summary judgment and denying Federal Defendants' cross-motion. ECF Nos. 90, 91. Specifically, the Court ruled that Plaintiffs succeeded in demonstrating that the 2014

BiOp was unlawful for failing to include the required incidental take statement (ITS), holding that "[t]ake was anticipated here, and [Federal Defendants] did not produce an ITS," and that therefore "[t]he 2014 BiOp . . . violates the ESA." ECF No. 91 at 15. Regarding Plaintiffs' other claims, the Court found that once it had declared the 2014 BiOp invalid, it had "no need to engage in Plaintiffs' other arguments as to why the 2014 BiOp violated the ESA." *Id.* at 19. However, it cautioned Federal Defendants that, "just because the Court had no need to discuss other features of the 2014 BiOp does not mean that they complied with the ESA (or, for that matter, the MMPA) and should be repeated in future BiOps." *Id.*

Remedy briefing followed the Court's merits decision, which necessitated Plaintiffs' supporting their remedy request not only legally but also factually with an expert declaration. ECF No. 105. Plaintiffs' reply brief, ECF No. 108, responded not only to the opposition brief of Federal Defendants, ECF No. 111, but to opposition briefs from multiple defendant-intervenors, including Maine Lobstering Union Local 207, ECF No. 112, Little Bay Lobster LLC, ECF No. 114, and Maine Lobstermen's Association, Inc. and Massachusetts Lobstermen's Association, Inc., ECF No. 115, as well as an amicus brief from the State of Maine, ECF No. 118.

On August 19, 2020, the Court entered its remedy order and opinion, vacating and remanding the 2014 BiOp, with vacatur stayed through May 31, 2021. ECF Nos. 124, 125. The Court found that to issue a lawful ITS, Federal Defendants must (1) specify the impact of incidental take, (2) include measures to minimize such impacts, (3) provide measures to keep impact at a "negligible" level under the MMPA, and (4) set forth terms and conditions that the action agency must implement those measures. ECF No. 125 at 11. Notably, the Court denied Federal Defendants' request for remand without vacatur because of the seriousness of their legal error in issuing the defective 2014 BiOp without an ITS. *Id.* at 10–12.

Subsequently, on May 27, 2021, Federal Defendants issued a new biological opinion. Shortly thereafter, on June 2, 2021, Federal Defendants moved for final judgment on all claims based on their purported compliance with the Court's orders and opinions. ECF No. 136. Because Federal Defendants had again violated the ESA in issuing the 2021 biological opinion with an unlawful ITS rather than complying with the Court's orders and opinions,[2] Plaintiffs opposed Federal Defendants' motion for entry of final judgment and filed a motion to enforce on June 16, 2021. ECF No. 141. Plaintiffs' motion to enforce and Federal Defendants' motion for final judgment were the last substantive matters in the first phase of the case. Following an August 5, 2021, status hearing, the Court ordered the parties to submit a joint status report regarding the then-forthcoming final rule and Plaintiffs' timeline for filing a supplemental complaint. *See* August 5, 2021, Minute Entry. By minute order of August 9, 2021, the Court denied without prejudice both Federal Defendants' motion for entry of final judgment and Plaintiffs' motion to enforce. This concluded the first phase of the case.[3]

Federal Defendants issued a final rule under the MMPA amending the Atlantic Large Whale Take Reduction Plan on August 30, 2021. *See* ECF No. 167 at 2. In the second phase of the case, Plaintiffs Center for Biological Diversity, Conservation Law Foundation, and Defenders of Wildlife amended and supplemented their complaint to assert new ESA and

---

[2] Consistent with Plaintiffs' position in that motion, the Court went on to consider the issue and again found that Federal Defendants failed to meet the ESA's requirements for including a lawful ITS in issuing the 2021 BiOp. *See Ctr. for Biological Diversity v. Raimondo*, 610 F. Supp. 3d 252, 258 (D.D.C. 2022) ("[Plaintiffs] argue that the new BiOp still does not satisfy the ESA and MMPA's requirements. . . . [The Court] concurs that NMFS violated the ESA by failing to satisfy the MMPA's 'negligible impact' requirement before setting the authorized level of lethal take in its ITS."), *vacated as moot*, No. 18-112, 2024 WL 324103, at *11 (D.D.C. Jan. 29, 2024).

[3] The Humane Society of the United States was dismissed as a plaintiff via stipulation, with applicable deadlines for a motion for costs and attorneys' fees extended to the same deadlines as for the remaining Plaintiffs. ECF Nos. 165, 166.

MMPA claims against the 2021 BiOp and the 2021 Final Rule. ECF No. 171 ¶ 13. Following a

second phase of merits and remedy briefing, Plaintiffs' additional claims were ultimately

dismissed for mootness based on intervening legislation. ECF Nos. 260, 261.

Plaintiffs now seek reasonable costs and attorneys' fees for their success in the first phase

of this case. Plaintiffs do not seek any recovery for the second phase of the case.

## LEGAL FRAMEWORK

The ESA's citizen-suit provision allows "any person" to "commerce a civil suit . . . to

enjoin any person, including . . . any . . . agency . . . who is alleged to be in violation" of the ESA

or its implementing regulations. 16 U.S.C. § 1540(g)(1). ESA claims related to Federal

Defendants' violations of the ESA as action agency authorizing and managing the lobster fishery

are properly brought under the ESA citizen-suit provision. *Id.* § 1540(g)(1)(A); *see also Bennett

v. Spear*, 520 U.S. 154, 173 (1997) (agreeing that "§ 1540(g)(1)(A) is a means by which private

parties may enforce the substantive provisions of the ESA against regulated parties—both private

entities and Government agencies."); *Mayo v. Jarvis*, 177 F. Supp. 3d 91, 131 n.32 (D.D.C.

2016) (finding "the provision provides a cause of action against the agency conducting the action

which might jeopardize the species," even where that agency is one overseen by the Secretary

whose own actions administering the ESA are not covered by § 1540(g)(1)(A)). For purposes of

attorneys' fees, claims brought under the ESA's citizen-suit provision are governed by the ESA's

fee-shifting provision. 16 U.S.C. § 1540(g)(4). Under this provision, attorneys' fees are

appropriate where Plaintiffs achieve "some success." *Ruckelshaus v. Sierra Club*, 463 U.S. 680,

682, 682 n.1 (1983) (determining that the standard for fee-shifting statutes using the

"appropriate" language such as the ESA "requires the conclusion that some success on the merits

be obtained before a party becomes eligible for a fee award.").

As the Supreme Court has explained, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).[4] The entitlement to fully compensatory fees "[n]ormally . . . will encompass all hours reasonably expended on the litigation" including time spent on "good faith . . . alternative legal grounds for a desired outcome." *Id.* The Supreme Court advised that "the court's rejection of or failure to reach certain [alternative] grounds is not a sufficient reason for reducing a fee." *Id.*; *see also Kennecott Corp. v. EPA*, 804 F.2d 763, 766 (D.C. Cir. 1986) ("there would be no basis for reducing the fee" if "the court's conclusion in this regard [was] not . . . a 'loss,' but . . . a failure to reach the merits."). Under the prevailing party standard, "[t]he result is what matters," *Hensley*, 461 U.S. at 435, and "[i]t is a plaintiff's overall success, and not the number of counts she prevails on, that determines the amount of fees she is entitled to." *Goos v. Nat'l Ass'n of Realtors* (*Goos II*), 68 F.3d 1380, 1384 (D.C. Cir. 1995).

Separate from the ESA fee-shifting provision, fee awards for successful standalone APA challenges to federal agency actions are typically controlled by the Equal Access to Justice Act (EAJA). *See Sai v. Dep't of Homeland Sec.*, 179 F. Supp. 3d 128, 131–32 (D.D.C. 2016). Under EAJA, "a court shall award to a prevailing party" its attorneys' fees unless it finds that "the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). As relevant here, EAJA specifies that non-profit 501(c)(3) organizations with 500 or fewer employees are eligible for such awards. *Id.* § 2412(d)(2)(B). Prevailing parties may also recover costs under EAJA. *Id.* § 2412(a).

---

[4] *Hensley* has been read to apply to all federal statutes limiting fee awards to "prevailing parties." *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1535 (D.C. Cir. 1992).

However, when both ESA and APA claims are intertwined in a single case, EAJA should be "subordinate[d]" to the ESA such that "hours and costs necessary to both counts should be assigned to the ESA claim for attorney's fees purposes, leaving only the hours and costs necessary only to the APA claim to be paid under EAJA." Randolph D. Moss, Acting Assistant Attorney General, Office of Legal Counsel, *Payment of Attorney's Fees in Litigation Involving Successful Challenges to Federal Agency Action Arising Under the Administrative Procedure Act and Citizen-Suit Provisions of the Endangered Species Act*, 311 (Nov. 27, 2000), https://www.justice.gov/file/19316/download ("DOJ Memo").

The DOJ Memo directs Department of Justice attorneys responsible for settling fees in mixed ESA/EAJA cases to evaluate the intertwining nature or relatedness of ESA and non-ESA claims by, "in essence, apply[ing] the *Hensley* framework a second time," *id.* at 315. The DOJ Memo continues to represent official policy of the Department of Justice, which represents Federal Defendants here, on how it "believe[s] that a court . . . would apply EAJA" when APA and ESA claims are inextricably intertwined. *Id.* Indeed, some courts have explicitly adopted the DOJ Memo as the framework for allocating fees between the ESA and EAJA fee-shifting provisions where a case arises under both the ESA and APA. *See, e.g.*, *Native Fish Soc'y v. NMFS*, No. 3:12–cv–00431–HA, 2014 WL 7331039, at *1 (D. Or. Dec. 19, 2014) (adopting DOJ Memo framework and awarding fees for interrelated ESA and APA claims under the ESA's fee-shifting provision); *WildEarth Guardians v. Steele*, No. 19-56-M-DWM, 2022 WL 17665569, at *1 (D. Mont. Dec. 14, 2022) (same).

## ARGUMENT

## I.     Plaintiffs Are Entitled to Attorneys' Fees and Costs

Plaintiffs are entitled to recover market rates for all of the time their attorneys spent in the first phase of this case. Plaintiffs succeeded on the merits of their first claim regarding Federal

Defendants' failure to include an ITS in the 2014 BiOp. Plaintiffs achieved significant success and an opinion holding that Federal Defendants violated the ESA by failing to issue an ITS for the take of endangered right whales the lobster fishery would cause. As a matter of first impression, the Court held that Federal Defendants cannot rely on their failure to authorize that incidental take under the MMPA to excuse violating the ESA's plain-language requirement to include an ITS. Although the Court did not reach the merits of the other two ESA claims or the MMPA claim, fees are appropriate for all four related claims that arose out of the same factual predicate and the inextricably intertwined legal regime Congress established to govern incidental take authorizations for endangered marine mammals under the ESA and MMPA.

### A.      Plaintiffs Are Entitled to Attorneys' Fees and Costs for All Four Claims

In determining whether claims are interrelated for fee award purposes, courts consider whether claims are "based on different facts and legal theories." *Hensley*, 461 U.S. at 434. Successful plaintiffs can recover fees on interrelated claims where "the plaintiff's claims for relief . . . involve a common core of facts or [are] based on related legal theories," as "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435. Interpreting this standard, the Ninth Circuit has explained that claims are interrelated where they "arose out of a common course of conduct." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003).

Interrelated claims do not require "complete factual overlap between the counts." *Goos v. Nat'l. Ass'n of Realtors* (*Goos I*), 997 F.2d 1565, 1570 (D.C. Cir. 1993). Nor do they require identical legal claims. *Id.* ("*Hensley* mandates that distinct legal challenges based on essentially the same factual allegations be treated as related claims."). Either common facts or legal theories establish interrelated claims; courts do not require that both conditions be met. *See, e.g.*, *Webb*,

330 F.3d at 1168. Simply put, where "a lawsuit cannot be viewed as a series of discrete claims," as a practical matter, claims are related for *Hensley* purposes. *Hensley*, 461 U.S. at 435; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995) (interpreting the *Hensley* standard and defining "unrelated" claims as those that are "entirely distinct and separate" from the claims on which a plaintiff prevailed) (citation omitted).

Courts only separate claims into "successful" and "unsuccessful" categories under *Hensley*'s first step, 461 U.S. at 434–35, if they first determine that the claims are wholly distinct. *See, e.g.*, *George Hyman Const.*, 963 F.2d at 1537; *Goos II*, 68 F.3d at 1384. If multiple claims are related, success on each claim is not necessary and plaintiffs are "not to be penalized just because some, or even all but one [legally and factually plausible claims], are rejected, provided that the one or ones that succeed give him all that he reasonably could have asked for." *Goos II*, 68 F.3d at 1385 (quoting *Lenard v. Argento*, 808 F.2d 1242, 1245–46 (7th Cir. 1987)). Once it determines claims are related, the court's remaining analysis is under *Hensley*'s second question: "whether the work was reasonably done in pursuit of the ultimate result." *Id.* at 1386.

When considering related ESA and APA claims, courts have found them to be related under the *Hensley* analysis and have evaluated success in the case as a whole rather than on a claim-by-claim basis. *See, e.g.*, *Native Fish Soc'y*, 2014 WL 7331039, at *2 (finding that where "[e]ach of plaintiff's claims sought to correct a decade-long pattern of noncompliance with the ESA," ESA and APA claims were "related" because they "involved the same set of facts, similar legal theories, and sought relief for the same course of conduct."); *All. for the Wild Rockies v. Krueger*, No. 12-150-M-DLC, 2014 WL 46498, at *4 (D. Mont. Jan. 3, 2014) (finding mix of ESA and APA claims alleging violations of the National Environmental Policy Act and the National Forest Management Act "related" because, "although some of Plaintiffs' claims

involved different species and standards, all of the claims arose from the same timber project and sought the same relief of enjoining the Project.").

Here, all four of Plaintiffs' claims turned on one key legal issue and one key factual issue. Legally, to authorize incidental take of an endangered marine mammal via an ITS issued under the ESA, Federal Defendants must first authorize such take under the MMPA. *See* 16 U.S.C. § 1536(b)(4)(C) (citing *id.* § 1371(a)(5)); *see also* Pub. L. 99-659, title IV, § 411(b), Nov. 14, 1986, 100 Stat. 3741–42 (legislation amending ESA section 7(a)(2) to require take authorization under the MMPA as a condition precedent to issuing an ITS for an ESA-listed marine mammal with a biological opinion). Factually, Federal Defendants' failure to authorize right whale incidental take in the lobster fishery under the MMPA led directly to their decision not to include an ITS in the 2014 BiOp, a decision the Court rejected as contrary to law. ECF No. 91 at 16–18.

The relevant parts of Plaintiffs' first and second claims[5] as well as the entirety of their third claim were centered on Federal Defendants' failure to include an ITS in the 2014 BiOp, which led to: (1) their violations of their duties in administering the ESA in issuing an unlawful biological opinion; (2) their violation of the substantive duty under ESA section 7(a)(2), 16 U.S.C. § 1536(a)(2), to ensure against jeopardy by relying on an unlawful biological opinion in authorizing and managing the lobster fishery; and (3) their violation of the ESA's prohibition on causing unauthorized take. The three ESA claims shared the operative facts and all arose from

---

[5] Plaintiffs' first and second claims also challenged, respectively, Federal Defendants' issuance of the 2014 BiOp for failing to include a complete jeopardy analysis, *see, e.g.*, ECF No. 1, ¶¶ 120–122, and its violation of its ongoing mandate to avoid jeopardy by relying on this facially unlawful opinion. Even here, however, the Court did not find against Plaintiffs on these elements, so the hours expended on these aspects of the first and second claims cannot be excluded. *See* ECF No. 91 at 19 ("Put differently, just because the Court had no need to discuss other features of the 2014 BiOp does not mean that they complied with the ESA (or, for that matter, the MMPA) and should be repeated in future BiOps.").

the same unlawful action: Federal Defendants' decision not to include an ITS in the 2014 BiOp because of their failure to authorize incidental take under the MMPA. While each of Plaintiffs' first through third claims presented a separate legal theory for why Federal Defendants' action or inaction violated the ESA, each claim sought to correct the same violation and could be cured by the same relief: a new, legally valid BiOp providing the required incidental take authorization. Additionally, the legal theories for each of these three claims all arose under the ESA. Plaintiffs reasonably expended effort on all three interrelated claims in pursuit of the ultimate result.

Plaintiffs' fourth claim under the MMPA is also inextricably intertwined with their successful first claim and they are entitled to recovery for time spent on this claim based on their overall success in the case. Plaintiffs' fourth claim centered on the same factual course of conduct and same legal error that gave rise to their first three claims: Federal Defendants' failure to authorize right whale incidental take in the lobster fishery under the MMPA. This failure directly led to the agency's ESA violation as alleged in Plaintiffs' first claim. Plaintiffs' fourth claim could also have been cured by the same relief requested for their ESA claims, given that an MMPA incidental take authorization is a prerequisite to issuing a legally valid ITS for the incidental take of right whales by the lobster fishery. Additionally, while Plaintiffs' fourth claim offered a distinct legal theory for why Federal Defendants' actions violated the law, Plaintiffs' discussion of the interconnected incidental take scheme of the MMPA and ESA was a fundamental component of their ESA arguments and a core component of the Court's awarding summary judgment on their first claim. *See* ECF No. 91 at 16–18. Plaintiffs necessarily spent time researching, analyzing, and briefing the MMPA's incidental take requirements to succeed on their first claim. This time—and the resulting description of and legal argument concerning the interrelated ESA and MMPA legal regime in their pleadings and merits briefing—would

have been necessary to the success of their first claim, even if Plaintiffs had not pled or argued

their fourth claim at all. Time spent analyzing and briefing the MMPA cannot be solely

attributed to Plaintiffs' fourth claim as this claim is not wholly distinct either factually or legally

from Plaintiffs' other claims because of the way Congress structured the interdependent

incidental take requirements for endangered marine mammals under the MMPA and ESA.

      The related nature of the four claims and Plaintiffs' entitlement to full recovery at market

rates for their work is clearly evidenced by the Court's treatment of the claims in its merit

opinion. After finding for Plaintiffs on their first claim, the Court declined to review the

remaining claims because Plaintiffs had already achieved their desired result. *See* ECF No. 91 at

19. Notably, the Court did not reject any of Plaintiffs' other claims. None of these claims can

fairly be characterized as distinct, unsuccessful claims that must be excluded from a fee award.

**B.    Plaintiffs Are Entitled to Attorneys' Fees Under the ESA Citizen-Suit's Fee-Shifting Provision**

      The ESA allows a court to "award costs of litigation (including reasonable attorney and

expert witness fees) to any party, whenever the court determines such award is appropriate." 16

U.S.C. § 1540(g)(4). Plaintiffs' overall success in the case includes two claims brought under the

ESA citizen-suit provision subject to the ESA fee-shifting statute. Their fees and the use of

market rates in establishing those fees are appropriate for all four claims under the ESA's fee-

shifting provision.

**1.    All Four Claims Are Interrelated Legally and Factually and Properly Included in This Fee Request Under the ESA Fee-Shifting Provision**

      The DOJ Memo sets forth the same framework as *Hensley* to determine whether ESA and

APA claims are inextricably intertwined and whether hours must be allocated to the ESA rather

than EAJA fee-shifting provision. DOJ Memo at 315–16. When applying this framework for the

purpose of attributing hours between the ESA and APA rather than between successful and

13

unsuccessful claims, the question is "which of the hours and costs attributable to the successful claims were reasonably necessary to the litigation of the non-EAJA claim." *Id.* at 315.

There is no question that jurisdiction for Plaintiffs' second and third claims was proper under the ESA citizen-suit provision. In its order on discovery, the Court stated "[b]oth of these claims are brought pursuant to the 'citizen-suit provision' of the ESA." *Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d 38, 41 (D.D.C. 2018) (citing 16 U.S.C. § 1540(g)(1)); *see also* ECF No. 91 at 3 ("[i]t is under this provision [16 U.S.C. § 1540(g)(1)] that Plaintiffs in this case bring their first three[6] claims."). As explained above, while the Court had jurisdiction over Plaintiffs' first claim under the APA, the three ESA claims were based the same core operative facts and legal violation: Federal Defendants' decision not to issue an ITS for right whale take in the lobster fishery in the 2014 BiOp. Therefore, the ESA citizen-suit's fee-shifting provision is the appropriate source of fees for all three claims alleging ESA violations. *See* DOJ Memo at 314–16; *Native Fish Soc'y*, 2014 WL 7331039, at *1; *Pub. Employees for Env't Resp. v. Cruickshank*, No. 10-1067 (RBW) (DAR), 2019 WL 6465088, at *6 (D.D.C. Dec. 2, 2019).

While the Court's jurisdiction over Plaintiffs' fourth claim challenging Federal Defendants' failure to authorize right whale incidental take under the MMPA arose under the APA, as explained above, the three ESA claims were predicated in whole or in part on Federal Defendants' failure to authorize right whale incidental take in the lobster fishery under the MMPA as a condition precedent to authorizing it under the ESA. Plaintiffs' discussion of the MMPA's incidental take authorization process and Federal Defendants' failure to comply with it

---

[6] In its merits opinion, the Court inaccurately described its jurisdiction over Plaintiffs' first claim as arising under the ESA citizen-suit provision. ECF No. 91 at 3. However, as the Court correctly noted in its discovery order, "[t]heir first and fourth counts arise under the APA." *Ctr. for Biological Diversity v. Ross*, 349 F. Supp. 3d at 41.

14

were necessary components of the ESA citizen-suit claims. *See* ECF No. 1 ¶¶ 123, 126, 128, 130, 133.

As the Court recognized, Congress itself established the interrelated ESA and MMPA statutory scheme governing the incidental take of an endangered marine mammal such as the right whale. Congress expressly made an incidental take authorization under the MMPA the condition precedent for an incidental take authorization under the ESA:

> Here, the ESA and accompanying regulations plainly require an ITS, and they require that the ITS find that any take resulting from the proposed agency action will neither jeopardize the continued existence of the listed species nor run afoul of § 105(a)(5) of the MMPA. . . . The statutory text itself harmonizes the ESA and the MMPA quite clearly by requiring that both be satisfied in the case of marine mammals. . . . NMFS's finding that the lobster fishery would have more than the 'negligible impact' allowed by § 101(a)(5) of the MMPA meant that the fishery violated § 7(b)(4) of the ESA. This should have ended the agency's inquiry.

ECF No. 91 at 17–18 (citations omitted). The work Plaintiffs expended on their fourth claim was reasonably necessary for their ultimate success on their first claim. Plaintiffs are entitled to recover under the ESA fee-shifting provision for all work "reasonably necessary" for their success in the case. DOJ Memo at 315. Consequently, the ESA fee-shifting provision governs fees for the fourth claim as well.

### 2. Plaintiffs Succeeded on the Merits and It Is Appropriate for the Court to Award Fees Under the ESA

An award is appropriate where plaintiffs have had "some degree of success on the merits." *Ruckelshaus*, 463 U.S. at 694. Where plaintiffs achieve "excellent results" they are entitled to full compensation. *Hensley*, 461 U.S. at 435. A determination that plaintiffs achieved "excellent results" does not require them to receive all relief requested. *Id.* at 435, 435 n.11.

Plaintiffs prevailed in this lawsuit. The Court ruled that Federal Defendants' failure to include an ITS in the 2014 BiOp violated the ESA and granted Plaintiffs' requested relief by ordering a new biological opinion. After ruling in Plaintiffs' favor on the first claim, it found that

it did not need to reach the remaining claims. ECF No. 91 at 19. However, it did not rule against any of Plaintiffs' claims. Having achieved a significant portion of their requested relief, Plaintiffs are entitled to their full lodestar for these claims.

### C.    In the Alternative, Plaintiffs Are Entitled to Fees and Costs Under EAJA

If the Court disagrees that Plaintiffs' work on the interrelated ESA and APA claims cannot be divided, it must determine what portions of work on the case and Plaintiffs' ultimate success should be attributed to the ESA claims versus the APA claims and grant market rates and EAJA rates to those portions respectively. Under the DOJ Memo, this process is the same issue-by-issue approach described in *Hensley*, but applied to the division between ESA and APA claims rather than between successful and unsuccessful claims. DOJ Memo at 315. In making this division, the Court should only allocate to EAJA "residual hours and costs" that were not "reasonably necessary" to the litigation of the ESA claims. *Id.*

This case represents the situation where "counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435. Where the division of time between different arguments cannot be clearly discerned from timesheets, courts can allocate fees based on a percentage of the total that roughly reflects the division of attention in briefing. *See, e.g.*, *Kennecott Corp.*, 804 F.2d at 766.

Only part of Plaintiffs' first claim and their fourth claim arose under the APA and thus would be the only candidates for separation. Yet work for both claims on the interrelated ESA and MMPA statutory requirements for authorizing right whale incidental take was necessary for fully litigating Plaintiffs' second and third claims, and that shared work must be attributed to the ESA rather than EAJA. Plaintiffs' first claim challenged Federal Defendants' violations of their obligations as administrators of the ESA to issue a lawful biological opinion. As explained above, that element of Plaintiffs' first claim that the Court ultimately ruled on, the failure to

include an ITS in the 2014 BiOp, was premised on Federal Defendants' failures under both the

ESA *and the MMPA* to authorize incidental take as those statutes require. *See* ECF No. 91 at 17–

18. Development of Plaintiffs' MMPA argument was necessary to prosecute that claim.

Similarly, Plaintiffs' second claim challenged Federal Defendants' unlawful reliance on the

facially invalid 2014 BiOp that resulted in a failure to ensure against jeopardy, ECF No. 1 ¶ 128,

ECF No. 66-1 at 29–32. Their third claim challenged Federal Defendants' violation of ESA

section 9 for causing unauthorized incidental right whale take in the lobster fishery, ECF No. 1 ¶

133, ECF No. 66-1 at 31–41. Plaintiffs could not have brought either of these claims without

fully explaining Federal Defendants' violations of the interrelated MMPA and ESA incidental

take authorization provisions as described in the first and fourth claims. That work is fully

recoverable under the ESA.

Here, the only "residual hours and costs" that were not "reasonably necessary" to the

litigation of the interrelated ESA and MMPA claims, DOJ Memo at 315, are those elements of

Plaintiffs' first claim that arose solely out of Federal Defendants' violations of the ESA's

statutory and regulatory requirements in issuing the 2014 BiOp in their capacity as ESA

administrators, as alleged, *e.g.*, at ECF No. 1, ¶¶ 120–122. This included allegations and

arguments regarding how Federal Defendants' jeopardy analysis failed to fully analyze the

effects of the fishery or otherwise comply with the required analytical standards. *See id.*; *see also*

ECF No. 66-1 at 19–25; ECF No. 83 at 4–11. This is the only part of Plaintiffs' first claim that

did not directly arise out of Federal Defendants' core course of conduct and intertwined legal

violations in failing lawfully to authorize right whale incidental take in the lobster fishery first

under the MMPA and then under the ESA. To the extent that there may be work attributable

*solely* to the APA-only elements of Plaintiffs' first claim—such as the time drafting the

pleadings and merits arguments themselves, as opposed to the legal background and factual history—that time is minimal compared to the overall hours spent litigating this case. Should the Court determine to apply EAJA rates, only a minimal deduction from the lodestar is warranted.

### 1.  Plaintiffs Are Prevailing Parties

To be a prevailing party for EAJA purposes, Plaintiffs must show that "(1) there [has been] a court-ordered change in the legal relationship of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *SecurityPoint Holdings, Inc. v. TSA*, 836 F.3d 32, 36 (D.C. Cir. 2016) (cleaned up). In considering judicial relief, Plaintiffs need only achieve "some of the benefit . . . sought in bringing suit." *Id.* at 38 (citation omitted).

Plaintiffs have clearly met the prevailing party standard in this case. The Court ruled in Plaintiffs' favor on their motion for summary judgment and denied Federal Defendants' cross-motion. *See* ECF Nos. 90, 91. The Court provided judicial relief in the form of declaratory relief and remand and vacatur of the 2014 BiOp, with vacatur stayed. *See* ECF Nos. 124, 125. That relief encompassed the relief that Plaintiffs sought in bringing the case. ECF No. 1. The merits and remedy orders and opinions changed the legal relationship of the parties.

### 2.  Three Plaintiffs Meet EAJA's Eligible Party Criteria

To be eligible for fees under EAJA, a party must be "any . . . organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed" or "an organization described in section 501(c)(3)" regardless of net worth. 28 U.S.C. § 2412(d)(2)(B). The Center for Biological Diversity, the Conservation Law Foundation, and Defenders of Wildlife were at the time of filing and at all points throughout the litigation 501(c)(3) tax-exempt non-profit charitable organizations with fewer than 500 employees and are eligible under EAJA. *See* Ex. 2–4.

Under EAJA, fees and other expenses shall be awarded to a prevailing party in a proceeding for judicial review of agency action that meets the applicable size or net worth criteria, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." *Nat'l Ass'n of Mfrs. v. Dept. of Labor*, 159 F.3d 597, 599 (D.C. Cir. 1998) (citations omitted). To the extent EAJA applies at all, the prerequisites to an EAJA award are satisfied for all Plaintiffs except the Humane Society of the United States, which is not EAJA-eligible because it had more than 500 employees at time Plaintiffs filed this case. Should the Court determine to apply EAJA rates, only a de minimis exclusion for the Humane Society of the United States' attorney is warranted given the minimal amount of time she expended on the "residual" elements of Plaintiffs' first claim regarding Federal Defendants' failure to ensure a complete and lawful jeopardy analysis, especially compared to her overall expenditure of hours in the case not related to this claim. *See* Ex. 5.

### 3. Federal Defendants' Position Was Not Substantially Justified

Federal Defendants bear the burden of establishing that their position was substantially justified. *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1173 (D.C. Cir. 2005). To meet that burden, they must show that their position was "justified to a degree that could satisfy a reasonable person," or had a "reasonable basis both in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The standard must be met for *both* "(1) the underlying agency action and (2) the arguments defending that action in court." *Nat'l Venture Cap. Ass'n v. Nielson*, 318 F. Supp. 3d 145, 149 (D.D.C. 2018) (cleaned up). In evaluating the government's position, "the court's merits reasoning may be quite relevant to the resolution of the substantial justification question." *F.J. Vollmer Co v. Magaw*, 102 F.3d 591, 595 (D.C. Cir. 1996).

Federal Defendants cannot meet their burden of establishing that their position was substantially justified. First, Federal Defendants cannot show that their decision to issue the 2014

BiOp without an ITS in direct violation of mandatory ESA provisions was substantially justified. In evaluating Federal Defendants' arguments to the contrary, this Court concluded that their actions were "as straightforward a violation of the ESA as they come." ECF No. 91 at 19. The Court found that the ESA "*plainly* requires an ITS." *Id.* at 17 (emphasis added). Second, Federal Defendants cannot show that their litigation arguments were substantially justified. The Court expressly rejected their defense that, because they could not authorize take of right whales under the MMPA, they reasonably chose to issue the 2014 BiOp without an ITS rather than shut down the fishery. *See* ECF No. 91 at 18; *see also* ECF No. 79-1 at 3. The Court also rejected Federal Defendants' argument that the inclusion of a reinitiation trigger cured the ESA violation. ECF No. 91 at 18–19. Neither Federal Defendants' actions nor their litigation defenses can be considered substantially justified. *See Pierce*, 487 U.S. at 565 (requiring both the underlying action and the defense of that action be substantially justified).

### 4. No Special Circumstances Exist That Would Make an Award Unjust

Federal Defendants bear the burden of establishing that there are special circumstances that make an award unjust. *Taucher*, 396 F.3d at 1173. Courts apply "traditional equitable principles" to determine whether special circumstances prevent awarding fees under EAJA. *Air Transp. Ass'n of Canada v. F.A.A.*, 156 F.3d 1329, 1333 (D.C. Cir. 1998) (cleaned up). In the D.C. Circuit courts rarely find special circumstances exist outside of a showing of unclean hands or abuse of the judicial system to produce a windfall on the part of the prevailing party. *Id.* No such circumstances exist here.

## II. Plaintiffs' Proposed Fees Are Reasonable

The table filed as Exhibit 1 provides a summary of the amount sought by Plaintiffs as compensation for the reasonable attorneys' fees incurred in connection with the litigation of this case. The attachments to Exhibits 2 through 5 contain the detailed breakdowns of each attorney's

time expended and the work undertaken. To assess the reasonableness of those fees, "[t]he starting point . . . is the computation of the lodestar figure for each fee applicant." *Murray v. Weinberger*, 741 F.2d 1423, 1427 (D.C. Cir. 1984). Plaintiffs bear the initial burden of establishing the lodestar by "documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "The lodestar figure of reasonable hours times a reasonable market rate is presumptively a reasonable attorney's fee." *Murray*, 741 F.2d at 1428.

### A.    Plaintiffs' Hours Are Reasonable

Over the course of litigating these claims, Plaintiffs have documented 2,549.07 hours of work for which they request compensation at differing hourly rates. The number of hours claimed by Plaintiffs reflects efficient and effective expenditure of litigation resources. This case was time-consuming to prepare and litigate. As briefly explained above in the Background section, the first phase of the case was complex and time-consuming. In addition to merits- and remedy-related work, much of Plaintiffs' time is attributable to the Federal Defendants' litigation choices rather than any excessive hours on Plaintiffs' part, including but not limited to time spent responding to Federal Defendants' motions to transfer the cases to the District of Massachusetts, their opposition to Plaintiffs' discovery motion, their motion to stay merits briefing, and their burdensome discovery requests.

Preparation of the case required a scientific understanding of right whale population trends, the lobster fishing industry, and the impacts of entanglements on right whales. It also required an understanding of the complex regulatory framework for the lobster fishery that incorporates a take reduction plan originally promulgated in 1997, multiple subsequent amendments to that plan, and associated biological opinions. Extensive analysis was required to evaluate these documents for compliance with the ESA and MMPA before developing the claims asserted in the complaints.

Bringing this case required preparing "notice of intent to sue" letters, which required comprehensive analysis of Federal Defendants' statutory duties under the intertwined ESA and MMPA regulatory framework controlling the lobster fishery as well as significant factual investigation into the fishery's effects on right whales. Preparing the initial pleadings was also a major undertaking.

Before the cases were consolidated, CBD Plaintiffs and Plaintiff Conservation Law Foundation separately developed the factual and legal elements of their cases and prepared their complaints. The two sets of plaintiffs filed suit independent of one another, ECF No. 1, Civ. No. 1:18-cv-00112; CLF Compl., Civ. No. 1:18-cv-00283, and thus are independently entitled to recover for that work.

Plaintiffs were also separately required to defend against Federal Defendants' motions to transfer the case, ECF No. 10. *See* ECF No. 13; *see also* Civ. No. 1:18-cv-00283, ECF No. 17. Preparation of Plaintiffs' oppositions required research and argument on issues that otherwise were not germane to the case. The Court denied the motions, ECF No. 20, 21, finding that, "[i]n the end, it is Defendants' burden to show that the totality of circumstances warrants transfer [and] they have not done so here . . . ." ECF No. 21 at 11.

Following discussions to attempt to narrow points of disagreement, Plaintiffs had to file a motion for the discovery necessary to support their second and third claims arising under the ESA citizen-suit provision, for which review was not limited to the administrative record. ECF No. 27. Preparing this motion and the reply, ECF No. 29, required additional research and argument based on Federal Defendants' position that Plaintiffs had no right to take discovery for claims arising under the ESA's citizen-suit provision rather than the APA. *See* ECF No. 27 at 1. Ultimately, the Court rejected Federal Defendants' position. *See* ECF Nos. 41, 42.

Discovery and administrative record production and review required a major investment of time. As part of the administrative record, Plaintiffs reviewed and analyzed hundreds of documents—including technical scientific information—over multiple administrative record productions. *See* ECF Nos. 36, 37, 39, 46, 64, 65. Similarly, Federal Defendants' response to Plaintiffs' discovery required reviewing hundreds of documents to litigate the second and third claims, including by drafting a lengthy statement of undisputed material facts.

Importantly, Plaintiffs invested significant hours during the discovery process conducting exhaustive document searches and privilege reviews for each of the four organizations. This was necessitated by Federal Defendants' unduly burdensome discovery requests—the results of which did not appear in any of Federal Defendants' merits briefs or their statement of undisputed material facts. *See* ECF Nos. 81-1, 81-2, 86. The discovery process required extensive work over several months.

In June 2019, Plaintiffs filed their opening summary judgment brief and memorandum in support, together with standing declarations, a detailed statement of undisputed material facts, and supporting exhibits. Producing this motion and supporting documents necessitated explaining detailed scientific information, setting forth the factual and legal bases for Plaintiffs' arguments, and arguing four interrelated legal claims against a backdrop of a complex statutory and regulatory framework. *See* ECF Nos. 66, 66-1 to 66-16.

Instead of filing their responsive motion as per the agreed-upon summary judgment briefing schedule, Federal Defendants instead moved to stay the case. ECF No. 68. Plaintiffs had to expend additional time opposing this motion, including compiling and providing the court with ten exhibits' worth of technical and regulatory documents related to the right whale and the fishery. ECF No. 71-1. The Court denied the motion. ECF Nos. 75, 76.

23

Once Federal Defendants filed their opposition and cross-motion for summary judgment, ECF Nos. 81, 82, Plaintiffs undertook the time-intensive process of both supporting their arguments for summary judgment and rebutting Federal Defendants' arguments in their combined reply/opposition brief. ECF Nos. 83, 84. The work expended included a significant amount of time responding to and rebutting Federal Defendants' statement of undisputed material facts, ECF No. 81-2. *See* ECF No. 83-3.

Following Plaintiffs' success on summary judgment, ECF No. 90, 91, Maine Lobstering Union and Little Bay Lobster, Inc., moved to intervene on the side of Federal Defendants. ECF Nos. 98, 102. Plaintiffs were then forced to spend time opposing the addition of these parties more than two years into the case and following a merits opinion. ECF No. 107.

Plaintiffs filed their motion for order on remedy, ECF No. 105, which required additional research and argument development on complex issues regarding an adequate remedy in the context of the agency's ongoing authorization of operation of the fishery, as well as facilitating preparation of the expert declaration of Dr. Michael Moore, ECF No. 105-2. On reply, Plaintiffs were required to respond to opposition briefs from Federal Defendants, multiple defendant-intervenors, and amicus the State of Maine. ECF No. 119. Plaintiffs also prepared for and participated in oral argument on August 3, 2020. Minute Entry of Aug. 3, 2020.

Following resolution of remedy briefing, ECF Nos. 124, 125, Plaintiffs monitored Federal Defendants' compliance with the remedy order and the impact of entanglements on the right whale, both preparing and reviewing status reports, ECF Nos. 127, 128, 129, 130, 131, 132, 135. Following issuance of a new biological opinion on May 27, 2021, Federal Defendants moved for entry of final judgment. ECF No. 136. Plaintiffs not only had to review the lengthy new biological opinion to determine whether Federal Defendants had, in fact, complied with the

Court's opinions and orders, but had to expend time replying to Federal Defendants' motion. ECF No. 139. Additionally, based on Federal Defendants' failure to comply fully with the Court's opinions and orders, Plaintiffs prepared a motion to enforce judgment, ECF No. 141, and related reply, ECF No. 159. Plaintiffs prepared for and attended proceedings before the Court on August 5, 2021.

This case also necessitated significant coordination among Plaintiffs regarding strategy, discovery, legal research, drafting filings, and settlement discussions, including coordinating by conference calls. That coordination helped reduce duplication of effort in legal research and drafting. *See Open Communities Alliance v. Carson*, Civ. No. 17-2192, 2018 WL 8622230 at *5 (D.D.C. June 15, 2018) ("Indeed, the D.C. Circuit has held that attorneys' fees may be awarded for time spent by multiple attorneys conferring about a matter because such communication an 'ensure that a case is managed in an effective as well as efficient manner.'" (quoting *Nat'l Ass'n of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1337 (D.C. Cir. 1982)); *Wishtoyo Found. v. United Water Conservation Dist.*, No. CV 16-3869-DOC (PLAx), 2019 WL 1109684, at *7 (C.D. Cal. Mar. 5, 2019) ("[I]n a case stretching for more than two years, and including counsel from multiple nonprofit organizations, it is reasonable that the team of attorneys conferred relatively often so as to ensure proficiency and consistency in all pleadings before the Court."). The time Plaintiffs spent on conference calls enhanced communication efficiency and saved time that otherwise would have been billable to drafting and reviewing multiple rounds of emails.

Collectively, Plaintiffs expended significant time litigating complex issues and multiple procedural motions. The hours requested reflect the complexity of the issues and dogged opposition by Federal Defendants. This work would not have been possible if handled by just

one attorney. At most points during this case, Jane Davenport, Kristen Monsell, Erica Fuller, and Laura (Friend) Smythe served as lead counsel for their respective co-plaintiff organizations. Throughout the case and at particularly time-intensive junctures, other attorneys assisted with discrete tasks such as legal research and record review.

The time requested is reasonable. Excluded entirely is the time spent by a number of attorneys, including all attorneys who supervised Plaintiffs' lead counsel as well as all Earthjustice counsel (who drafted Conservation Law Foundation's notice of intent letter and helped draft the complaint and were co-counsel for a period of time thereafter). Any duplicative time among the attorneys, as well as time needed for new attorneys to get up to speed, has been omitted from this fee request.

Additionally, the hours request reflects the exercise of reasonable billing judgment, which resulted in the exclusion of considerable time spent on the matter. In addition to the exclusions detailed above, Plaintiffs omitted a significant number of hours that reflected paralegal or secretarial-type clerical work, internal processes, most time spent composing or reviewing emails, travel time to and from hearings, and excessive hours. Plaintiffs have also omitted all time spent preparing this motion and exhibits to date (though reserve their right to do so if settlement negotiations do not bear fruit). The remaining time calculated into the lodestar was reasonably necessary for litigating this case.

### B.    Plaintiffs' Requested Rates Are Reasonable

As discussed above, Plaintiffs are entitled to compensation for their attorneys' fees at market rates under the ESA. Plaintiffs' claimed rates are reasonable and consistent with the rates recoverable under the ESA. If this Court finds that some of Plaintiffs' work should be separated from that reasonably necessary for the ESA claims and are subject to the rates provided by EAJA, Plaintiffs request EAJA rates adjusted for cost-of-living updates.

In determining whether a rate is reasonable, courts look to the so-called *Covington* factors of "(1) 'the attorneys' billing practices'; (2) 'the attorneys' skills, experience, and reputation'; and (3) 'the prevailing market rates in the relevant community.'" *Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995)). For the first factor, the attorneys' supporting declarations explain that they do not have established billing rates as they represent their own and client organizations without billing them. *See* Exs. 2–5. For the second factor, the attorneys' supporting declarations establish the skill, experience, and expertise of the relevant attorneys in litigating complex environmental issues at the federal level. *See id.* For the third factor, Plaintiffs request rates under the Fitzpatrick matrix, or in the alternative enhanced EAJA rates, as explained more fully below.

### 1.   ESA Rates

Under the ESA citizen-suit provision, a successful party receives fees at reasonable hourly rates. *Am. Lands All. v. Norton*, 525 F. Supp. 2d 135, 142 (D.D.C. 2007). Matrices that "designate[] what are reasonable hourly rates for attorneys of varying experience, and [are] adjusted annually based on cost of living increases," have been affirmed by the D.C. Circuit as containing reasonable rates. *Id.* (discussing the "Laffey Matrix"). In recent years courts have moved from the "Laffey Matrix" to "the newly developed 'Fitzpatrick Matrix'"[7] as "a clear improvement over . . .the so-called LSI *Laffey* matrix, in its modelling (sic) of the prevailing market rates for complex federal litigation in the District of Columbia."[8] *J.T. v. District of*

---

[7] United States Attorney's Office, Civil Division, *Fitzpatrick Matrix, 2013–2024*, https://www.justice.gov/usao-dc/civil-division (last updated May 24, 2024).

[8] Some attorneys included in this request are physically located in Oakland, CA and Boston, MA, but DC rates set out in the Fitzpatrick matrix are properly applied to them under the forum rate rule. DC's market rates control for attorneys located outside of DC except for when (1) an

*Columbia*, 652 F. Supp. 3d 11, 16 (D.D.C. 2023); *see also Brackett v. Mayorkas*, No. 17-988 (JEB), 2023 WL 5094872, at *5 (D.D.C. Aug. 9, 2023) (adopting Fitzpatrick Matrix for award of fees, citing *J.T.*, 652 F. Supp. 3d at 23–28). In making that shift, the court found that the Fitzpatrick Matrix was an "appropriate measure of the prevailing market rates for complex federal litigation in the District of Columbia," and awarded fees in accordance with the rates set out in that matrix. *J.T.*, 652 F. Supp. 3d at 36.

The rates requested under the Fitzpatrick Matrix are lower than or comparable to local rates. The requested rates and the lawyers working on the matter are as follows:

**Center for Biological Diversity:**

- **Kristen Monsell**, Oceans Program Legal Director and Senior Attorney: Requested rates are $457 for 2017, $498 for 2018, $538 for 2019, $578 for 2020, and $594 for 2021. *See* Ex. 2.

- **Sarah Uhlemann**, International Program Director and Senior Attorney: Requested rates are $506 for 2017, $545 for 2018, $583 for 2019, and $621 for 2020. *See* Ex. 2.

**Conservation Law Foundation:**

- **Erica Fuller**, Senior Counsel: Requested rates are $510 for 2018, $550 for 2019, $590 for 2020, and $605 for 2021. *See* Ex. 3.

- **Emily Green**, Senior Counsel: Requested rates are $458 for 2018, $500 for 2019, and $541 for 2020. *See* Ex. 3.

---

attorney is retained for their "expertise on a particular" geographic area they work in or (2) "the bulk of the work is done outside the jurisdiction of the court *and* where there is a *very significant* difference in compensation favoring D.C." *Davis Cnty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999). There is not a "very significant difference" between DC, Boston, and Oakland market rates.

- **Annika Hellweg**, Paralegal: Requested rates are $199 for 2020. *See* Ex. 3.

**Defenders of Wildlife:**

- **Jane Davenport**, Senior Attorney: Requested rates are $527 for 2017, $566 for 2018, $603 for 2019, $640 for 2020, and $653 for 2021. *See* Ex. 4.

- **Lindsay Dubin**, Staff Attorney: Requested rates are $430 for 2018 and $472 for 2019. *See* Ex. 4.

**The Humane Society of the United States:**

- **Laura (Friend) Smythe**, Staff Attorney: Requested rates are $387 for 2017, $430 for 2018, $472 for 2019, $514 for 2020, and $532 for 2021. *See* Ex. 5.

### 2. EAJA Enhanced Rates

EAJA establishes a 1996 recovery rate of $125 per hour, but a court may award a higher rate based on "a special factor, such as the limited availability of qualified attorneys for the proceedings involved." 28 U.S.C. § 2412(d)(2)(A). Under the special factor adjustment, courts regularly provide a cost-of-living adjustment to the EAJA rate. *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) ("courts routinely approve cost-of-living adjustments" and the court "found no case where we denied one.") (citation omitted); *Davis v. Kijakazi*, No. 20-2282 (CKK), 2023 WL 4234656, at *2 (D.D.C. June 28, 2023) ("Attorney's fees above the statutory cap are frequently awarded to compensate for increases in the cost of living, with courts in this jurisdiction using the regional Consumer Price Index ('CPI') to make such adjustments."). Plaintiffs accordingly request a cost-of-living increase in the statutory rate using the method described in *Davis*, 2023 WL 4234656.

The calculations for the cost-of-living adjusted hourly rate are as follows:

2017: $125 * 256.22$^9$/159.6$^{10}$ = $200.67

2018: $125 * 261.45/159.6 = $204.77

2019: $125 * 264.78/159.6 = $207.38

2020: $125 * 267.16/159.6 = $209.24

2021: $125 * 277.73/159.6 = $217.52

These adjusted rates are reasonable and are well below market rates for attorneys with comparable skill and experience.

### C.     Plaintiffs' Lodestar Is Reasonable

Plaintiffs' overall lodestar of $1,394,487.44 is reasonable. The most critical factor in determining the reasonableness of the lodestar "is the degree of success obtained." *Hensley*, 461 U.S. at 436. Here the Court's remand of the 2014 BiOp granted Plaintiffs a substantial portion of the relief they sought. Plaintiffs' success in this matter, especially in light of the complexity and magnitude of the case, supports the conclusion that the lodestar amount set forth in Exhibit 1 is reasonable.

### III.    Plaintiffs' Costs Are Reasonable

As demonstrated in attachments to Exhibits 2 and 3, Plaintiffs seek recovery of $5,761.64 in reasonable costs of litigation, including filing fees for the two separate complaints, limited travel expenses, and Westlaw legal research costs.

---

[9] This figure represents the CPI for the indicated year. U.S. Bureau of Labor Statistics, *Consumer Price Index for All Urban Consumers (CPI-U)*, https://data.bls.gov/timeseries/CUURS35ASA0?amp%253bdata_tool=XGtable&output_view=data&include_graphs=true (last visited June 3, 2024).
[10] 159.6 represents the CPI for 1996. *See supra* fn. 9.

**CONCLUSION**

As the prevailing parties, Plaintiffs are entitled to recover attorneys' fees and costs.

Plaintiffs respectfully request that the Court award Plaintiffs the lodestar amount of

$1,394,487.44 in attorneys' fees and total costs of $5,761.64 as reflected in Exhibit 1.

Respectfully submitted this 3rd day of June, 2024,

/s/ *Kristen Monsell*
Kristen Monsell, DC Bar No. CA00060
Center for Biological Diversity
1212 Broadway, Ste. 800
Oakland, CA 94612
(510) 844-7137
kmonsell@biologicaldiversity.org

s/ *Jane P. Davenport*
Jane P. Davenport, DC Bar No. 474585
Defenders of Wildlife
 1130 17th Street, NW
 Washington, DC 20036
 (202) 722-3274
 jdavenport@defenders.org

*Attorneys for Plaintiffs Center for Biological*
*Diversity and Defenders of Wildlife*

/s/ *Erica A. Fuller*
Erica A. Fuller, DC Bar No. MA0001
Conservation Law Foundation
62 Summer St.
Boston, MA 02110
(617) 850-1754
efuller@clf.org
*Attorney for Plaintiff Conservation Law*
*Foundation*

/s/ *Nicholas Arrivo*
Nicholas Arrivo, DDC Bar No. CA00053
The Humane Society of the United States
1255 23rd Street NW, Ste 450
Washington, DC 20037
(202) 961-9446
narrivo@humanesociety.org

*Attorney for Plaintiff Humane Society of the*
*United States*